RECEIVED

JAN 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JAN 22  PM 7: 34

NANCY M.
MAYER-WHITTINGTON
CLERK

| | | |
|---|---|---|
| SCOTT D. PLUTA | ) | |
| | ) | |
| | ) | **Case No. 1:06CV01806 (RWR)** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITIMORTGAGE, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
### TO DEFENDANT CITIMORTGAGE'S MOTION TO DISMISS
### PLAINTIFF SCOTT D. PLUTA'S COMPLAINT

Scott D. Pluta
777 7th Street N.W. #414
Washington, D.C. 20001
(434)-242-1615

*Pro se*

DATED: JANUARY 22, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

STANDARD OF REVIEW ................................................................................................... 4

    **I.**    In Considering CitiMortgage's Motion to Dismiss, the Court Must Accept Plaintiffs' Allegations as True, and Grant CitiMortgage's Motion "Only If It Is Beyond A Reasonable Doubt That There Is No Set Of Facts That The Plaintiff Can Prove That Would Entitle The Plaintiff To Relief" .......................................................................... 4

ARGUMENT ......................................................................................................................... 5

    **I.**    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT I (FRAUD) ............................................................................................................................... 5

        **A.** Plaintiff Had Pled Fraud Claim With Sufficient Particularity ................................. 6

        **B.** Rule 9(b) Pleading Requirements are Relaxed Where Basis of the Fraud is Material Omission or Silence .................................................................................. 8

        **C.** Plaintiff's Fraud Claim Does not Rely Upon Non-Actionable Statements of Future Events ..................................................................................................................... 9

        **D.** Plaintiff Reasonably Relied on Osborne's Fraudulent Statements ....................... 11

            **1.**    The Sept. 26 GFE is Evidence of the Sept. 26 Loan ................................. 11

            **2.**    Given the Amount of Financial Information CitiMortgage Already Possessed, Plaintiff Reasonably Relied on Osborne's Fraudulent Statements ................................................................................................. 12

            **3.**    Plaintiff No Where Admits a Belief that He was at the "Very Beginning of the Loan Application Process" ................................................................. 13

            **4.**    The Oct. 7 GFE is Part of Osborne's ........................................................ 13

        **E.** Defendant Takes Two of Osborne's Fraudulent Statements Out of Context in Order to Label Them "True" ............................................................................... 14

    **II.**    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT II (NEGLIGENT MISREPRESENTAION) ................................................................... 15

        **A.** Plaintiff Pleads Facts With Sufficient Particularity ............................................. 15

        **B.** Plaintiff Alleges an Independent Duty of Care .................................................... 15

            **1.**    CitiMortgage is Vicariously Liable for Osborne's Torts .......................... 15

            **2.**    Osborne Violated the Duty of Care he Owed to Plaintiff .......................... 16

            **3.**    CitiMortgage Owed an Independent Duty of Care to Plaintiff ................. 18

     **C.** Plaintiff Demonstrates Reasonable Reliance on Defendant's Misrepresentations 20

**III.**  PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT IV (NEGLIGENT HIRING, TRAINING, SUPERVISION AND/OR RETENTION) ... 21

     **A.** CitiMortgage Has A Duty To Use Reasonable Care In The Selection, Retention, And Supervision Of Employees.......................................................................... 21

     **B.** CitiMortgage was on Notice of Osborne's Incompetent Behavior for a Showing of Negligent Supervision or Retention...................................................................... 21

**IV.**  PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT V (PROFESSIONAL MALPRACTICE) ........................................................................ 23

     **A.** Professional Malpractice....................................................................................... 23

     **B.** Professional Negligence......................................................................................... 24

          **1.** The Applicable Standard of Care is that Required from Members of Osborne's Profession.................................................................................. 24

          **2.** Osborne Deviated from the Applicable Standard of Care ........................ 24

          **3.** Osborne's Deviation from the Applicable Standard of Care Caused Injury to Plaintiff ................................................................................................. 25

**V.**  PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT VI (NEGLIGENCE)........................................................................................................ 25

**VI.**  PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT VII (CONVERSION) ....................................................................................................... 25

     **A.** Plaintiff Pleads an Actionable Claim.................................................................... 26

          **1.** Defendant CitiMortgage Possession of Plaintiff's Funds is Unlawful...... 26

          **2.** Even if Possession was Initially Lawful, Plaintiff Demanded Return of His Money ...................................................................................................... 27

     **B.** Plaintiff Pleads Facts with Sufficient Particularity .............................................. 28

**VII.**  PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT VIII (DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT ("CPPA")) ........ 29

     **A.** Plaintiff Adequately Alleges a Claim Under § 28-3904(a) ................................... 29

          **1.** "It shall be a violation of this chapter…for any person to…represent that…services have…*approval*…that they do not have" .......................... 29

          **2.** "It shall be a violation of this chapter…for any person to…represent that…services have…*characteristics*…they do not have" ....................... 30

          **3.** "It shall be a violation of this chapter…for any person to…represent that…services have…*benefits*…that they do not have" ........................... 30

     **B.** Plaintiff Adequately Alleges a Claim Under § 28-3904(b) ................................... 31

     **C.** Plaintiff Adequately Alleges a Claim Under § 28-3904(d) ................................... 31

**D.** Plaintiff Adequately Alleges a Claim Under § 28-3904(e) .................................. 32

**E.** Plaintiff Adequately Alleges a Claim Under § 28-3904(f).................................. 34

**F.** Plaintiff Adequately Alleges a Claim Under § 28-3904(k) ................................. 35

**G.** Plaintiff Adequately Alleges a Claim Under § 28-3904(u) ................................. 36

**H.** Plaintiff Adequately Alleges a Claim Under § 28-3904(v) ................................. 36

CONCLUSION............................................................................................................................. 38

## TABLE OF AUTHORITIES

*Andrx Pharms. v. Biovail Corp. Int'l,*
    256 F.3d 799 (D.C. Cir. 2001)………………………………………………5, 23
*Axman v. Washington Gaslight Co.,*
    38 App. D.C. 150 (1912)……………………………………………………..16
*Bennett v. Kiggins,*
    377 A.2d 57 (D.C. 1977)……………………………………………………..8
*Bowler v. Joyner,*
    562 A.2d 1210 (D.C. 1989)………………………………………...............27
*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002)…………………………………… ...4,18
*Ciralsky v. CIA,*
    355 F.3d 661 (D.C. Cir. 2003)……………………………………………….5
*Conley v. Gibson,*
    355 U.S. 41 (1957)………………………………………………………….4
*Conservative Club of Washington v. Finkelstein,*
    738 F. Supp. 6, 7-8 (D.D.C. 1990)………………………………………….5
*Cooper v. Hartford Financial Services Group, Inc.,*
    2005 U.S. Dist. Lexis 11434……………………………………………….19
*\*Daisley v. Riggs Bank,*
    372 F. Supp. 2d 61 (D.C. Cir.2005)………………………………...............7, 8
*Feltman v. Sarbov,*
    366 A.2d 137 (D.C. Cir. 1976)……………………………………...............9
*Fleming v. Bronfin,*
    80 A2d. 915 (D.C. 1951)……………………………………………...............18
*Giles v. Shell Oil Corp.,*
    487 A.2d 610 (D.C. 1985)…………………………………………...15, 22
*Haines v. Kerner,*
    404 U.S. 519 (1972)………………………………………………………….5
*Harrison, U.S. v. Westinghouse Savannah River Co.,*
    176 F.3d 776 (4th Cir. 1999)……………………………………………...…7
*High V. McLean Financial Corp.*
    659 F. Supp. 1561, (D.C.C. 1987) ...…………………………..18
*In re U.S. Office Products Co.,*
    251 F. Supp. 58 (D.C. Cir. 2003)…………………………………...............11
*In re Westinghouse Sec. Litig.,*
    90 F.3d 696 (3d Cir. 1996)………………………………………………….5
*Jackson v. Byrd,*
    2004 WL 3130653 (D.C. Sup. Ct. 2004)……………………………………7
*\*Kowal v. MCI Commc'n Corp.,*
    16 F.3d 1271 (D.C. Cir. 1994)………………………………………..4, 6, 23
*\*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163 (1993)……………………………………………….5, 28, 37
*Meek v. Shephard,*
    484 A.2d 579 (D.C.  1984)……………………………………………….25

*Murphy v. Army Distaff Found.*, Inc.,
    458 A.2d 61 (D.C. 1983)................................................................18
*National R.R. Passenger Corp. v. McDavitt*,
    804 A.2d 275 (D.C. 2002) .............................................................17
*O'Callaghan v. District of Columbia*,
    741 F. Supp. 273 (D.D.C. 1990).....................................................26
*One-On-One Enter v. Caruso*,
    668 F. Supp. 693, 699 (D.D.C. 1987)..............................................10
*Pannu v. Jacobson*, 909
    A.2d 178 (D.C 2006) ....................................................................17
*Penn Cent. Transp. Co. v. Reddick*,
    398 A.2d 27 (D.C. Cir. 1979)....................................................15, 16
*Perez v. Goldin*,
    360 F. Supp. 2d 12 (D.D.C. 2003)..................................................24
*\*Phelan v. City of Mount Rainier*,
    805 A.2d 610 (D.C. 1985)..............................................................22
*\*The Plan Committeev. PriceWaterHouseCoopers, LLP*,
    335 B.R. 234 (D.D.C. 2005)............................................... 5, 17, 24
*Pyne v. Jamaica Nutrition Holding, Ltd.*,
    497 A.2d 118 (D.C. Cir. 1985).........................................................9
*Sage v. Broadcasting Publ'ns, Inc.*,
    997 F. Supp. 49 (D.C. Cir. 1997).....................................................9
*Schecter v. Merchant's Home Delivery*,
    892 A.2d 415 (D.C. 2006)..........................................................15, 18
*S.E.C. v. Nacchio*,
    438 F. Supp. 2d 1266 (D. Colo. 2006)..............................................8
*\*Shea v. Fridley*,
    123 A.2d 358 (D.C. 1989).........................................................27, 28
*Shekoyan v. Sibley Int'l Corp.*,
    217 F. Supp. 2d 59 (D.D.C. 2002)....................................................7
*Silverman v. Weil*,
    662 F. Supp. 1195 (D.C. Cir. 1987)..................................................6
*\*Swierkiewicz v. Sorema N.A.*,
    434 U.S. 506 (2002)....................................................................4, 5
*Towers Fin. Corp. v. Solomon*,
    126 F.R.D. 531 (N.D.Ill. 1989).........................................................7
*Toy v. District of Columbia*,
    549 A.2d 1 (D.C. 1998)................................................................25
*United States ex rel. Fisher v. Network Software Assocs.*,
    227 F.R.D. 4 (D.C. Cir. 2005)..........................................................7
*United States ex rel. Joseph v. Cannon*,
    642 F.2d 1373 (D.C. Cir. 1981)........................................................6
*United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*,
    251 F. Supp. 2d 114 (D.C. Cir. 2003)............................................6, 7
*United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,
    389 F. 3d 1251 (D.C. Cir. 2004)......................................................6

- v -

*Warren v. District of Columbia,*
    359 U.S. App. D.C. 179 (D.C. Cir. 2004) .......................................................24


\* Cases designated as chiefly relied upon pursuant to LCvR 7(a)

## STATUTES AND RULES

### Table of Statutes and Rules

D.C. Law 11-155..................................................................................20
D.C. Code §§ 26-1101 et seq.........................................................19, 20
D.C. Code §§ 26-1101(a).....................................................................19
D.C. Code § 26-1113............................................................................20
D.C. Code § 26-1113(b)(1)..................................................................20
D.C. Code § 28-3301 et seq.................................................................19
D.C. Code § 28-3301(f)........................................................................19
D.C. Code § 28-3904............................................................................29
D.C. Code § 28-3904(a)..................................................................29-31
D.C. Code § 28-3904(b)........................................................................31
D.C. Code § 28-3904(d)...................................................................31, 32
D.C. Code § 28-3904(e)...................................................................32-34
D.C. Code § 28-3904(f)....................................................................34, 35
D.C. Code § 28-3904(k)...................................................................35, 36
D.C. Code § 28-3904(u)........................................................................36
D.C. Code § 28-3904(v)...................................................................36, 37

12 U.S.C. § 2604(c)..............................................................................19
15 U.S.C. § 1638(b)(2)..........................................................................19
12 C.F.R. § 226.19(a)(1)........................................................................19
12 U.S.C. § 2601 et seq.........................................................................19

Fed. R. of Civ. P. 8...........................................................................5, 6
Fed. R. of Civ. P. 8(a)............................................................................5
Fed. R. of Civ. P. 8(e)............................................................................5
Fed. R. of Civ. P. 9(b)........................................................................5, 6
Fed. R. of Civ. P. 12(b)(6)...................................................................4, 6

### Table of Other Authorities

18 Am. Jur. 3d Mortgage Broker Liability § 9...............................................17
12 Am. Jur. 2d, Brokers § 96......................................................................17
The American Heritage Dictionary of the English Language (4th ed. 2000) ...................29, 30
2A J. Moore, Federal Practice P. 9.03 (2d ed. 1998).......................................6
Banking Bureau of District of Columbia Department of Insurance, Securities and Banking,
    Banking Bureau website, http://dbfi.dc.ogv/dbfi/lib/initial_app_-
    _mortgage_lender_broker.pdf..................................................................20
CitiMortgage Web Site
    http://correspondent.citimortgage.com/SpecialPrograms/CorrespondentSpecialProgramsS
    ervlet?PageID=GetAboutTheCompany...........................................................32
Prosser and Keeton on the Law of Torts (5th ed.), Ch 33......................................17

RESTATEMENT (SECOND) OF AGENCY § 213, Cmt.g (1958)...................................18

Pursuant to Local Rule LCvR 7(b), Plaintiff Scott D. Pluta ("Pluta") submits this Memorandum of Points and Authorities in Opposition to Defendant CitiMortgage's Motion to Dismiss nine of eleven counts in the Complaint filed by Plaintiff Pluta.

## INTRODUCTION

Defendant CitiMortgage would have the Court believe that Plaintiff has a paranoid and litigious mind, turning small customer service gaffes into grandiose edifices built of tort law and imagination. Unfortunately for them, this is not the case.

Plaintiff put his trust and money into the "Citi" name – relying on one of their "mortgage consultants" to guide him through the purchase of his first home, a realization of the American dream. And because everyone has the dream of one day owning their own home, everyone, save apparently the Defendants, can understand why the Plaintiff has brought the parties together in this action. A plain reading of the Complaint reveals the very obvious fact that Plaintiff was wronged. Indeed, CitiMortgage does not contest in their motion violating the Truth in Lending Act nor the D.C. Usury Statute – that is, two statutes enacted to protect consumers against the very injustice that took place here.

Plaintiff was told by Osborne, a CitiMortgage employee, that he had secured the terms of a given loan, then through his own incompetence he failed to follow the procedure to actually secure terms of that loan. Instead of advising Plaintiff of his "sloppy servicing" so that if he wanted to, Plaintiff could take alternative action, Osborne spent the next three weeks scrambling to put the loan he lost back together, and of course to cover up his misdeeds and avoid punishment. Indeed, it is easy to imagine the Plaintiff's precarious state of mind when Osborne, a mere 24-hours from closing, called Plaintiff and required another $17,500 in cash to secure

financing Plaintiff had thought for three weeks he already had. Or the horror of actually sitting down to the closing table and finding that the terms of you're his were not those he had neither seen nor agreed to. CitiMortgage describes the $20,250 increase in the cost of the loan as being "moderately more expensive," and therein lies the problem of perspective that necessitates an opposition to Defendant CitiMortgage's motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff Pluta has been a Citigroup customer since 1999, so when it came time for him to seek financing for his mortgage, his natural first stop was CitiMortgage. Compl. at ¶ 11. In July 2005, and then again on September 12, 2005, Plaintiff filled out and submitted mortgage loan applications. *Id.* at ¶¶ 12, 24. In both applications, Plaintiff set out as a term of his loan a 5% down payment -- Plaintiff had recently graduated from school and had very limited savings. *Id.* at ¶ 14. On September 26, 2005, CitiMortgage lending agent Larry Osborne ("Osborne") and Plaintiff sat down to discuss CitiMortgage's offer to finance Plaintiff's Condo. *Id.* at ¶ 34. Osborne told Plaintiff that instead of a 5% down payment, if Plaintiff could put down 10%, CitiMortgage would finance the Condo with a traditional 30-year loan, 5.775% fixed rate of interest and without points on the loan principal ("Sept. 26 Loan"). *Id.* at ¶ 35. Plaintiff accepted these terms. *Id.* at ¶¶ 37-38, 40. When Plaintiff left the meeting, he took with him the Good Faith Estimate ("Sept. 26 GFE") Osborne had prepared and that reflected the terms discussed and agree upon. Id. at ¶ 34; Compl. Ex. 1.

From September 26, 2005 to October 18, 2005, Plaintiff proceeded normally towards his October 19, 2005, closing date. On numerous occasions Osborne confirmed to Plaintiff the terms of the Sept. 26 Loan and never indicated that anything might be amiss. *Id.* at ¶¶ 48, 49, 61.

On October 18, 2005, the day before closing, Osborne called Plaintiff and told him that Plaintiff needed to come up with an additional $17,500 for the down payment or CitiMortgage would not finance Plaintiff's Condo. *Id*. at ¶ 66. Plaintiff was in shock. If Plaintiff did not come up with the money, we would lose his $20,000 in earnest money. *Id*. at ¶ 68. Already stretched to the limit financially, Plaintiff was forced to clean out his requirement account in order to make good on Osborne's demand. *Id*. at ¶¶ 69-70.

At closing on the following day, Plaintiff was again ambushed by the terms of a loan he had neither seen nor ever agreed to. *Id*. at ¶¶ 76-82. The interest rate on his Primary Loan was one-eighth of a point higher[1] than he had agree to and there was an additional one-eighth of a point on the principal of loan. *Id*. at ¶¶ 78-79, 82, 84. When Plaintiff confronted Osborne and demanded an explanation, Osborne conceded, in front of everyone present at closing, that the terms were not what they should have been and indicated that post-closing, the loan would be revised to confirm to the terms of the Sept. 26 GFE. *Id*. at ¶¶ 79, 83

Several days after closing, Plaintiff had a meeting with Osborne to discuss what had happened. *Id*. at ¶¶ 87-89. Osborne admitted that he had failed to turn in Plaintiff's loan paperwork within the time allowed by CitiMortgage policy. *Id*. at ¶ 50, 90. Osborne stated that he spent the three weeks before closing trying to recover the terms of Plaintiff's loan, but was ultimately unsuccessful. *Id*. at ¶ 58-65. To show Plaintiff that he had in fact tried to fix the situation, Osborne printed from his computer a stack of internal CitiMortgage e-mails which detailed what had taken place behind the scenes, and without Plaintiff's knowledge. *Id*. at ¶ 91

---

[1] The one-eighth of a point difference in the Primary Loan interest rate is equal to $20,250 over the 30-year term of the loan.

Plaintiff spent the next six months attempting in good faith to resolve these issues with CitiMortgage, only to be repeatedly ignored and denied. On October 18, 2006, Plaintiff filed the action *sub judice*.

As shown below, Plaintiff has properly alleged the causes of action asserted in his complaint and therefore Defendant CitiMortgage's Motion to Dismiss should be denied.[2]

## STANDARD OF REVIEW

I.      **In Considering CitiMortgage's Motion to Dismiss, the Court Must Accept Plaintiffs' Allegations as True, and Grant CitiMortgage's Motion "Only If It Is Beyond A Reasonable Doubt That There Is No Set Of Facts That The Plaintiff Can Prove That Would Entitle The Plaintiff To Relief"**

The Court may dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") only if it is beyond a reasonable doubt that there is no set of facts that the plaintiff can prove that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. See *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). It does not test whether the plaintiff will ultimately prevail on a claim. *Swierkiewicz v, Sorema N.A.*, 434 U.S. 506, 511 (2002) (holding plaintiff not required to establish a prima facie case in a complaint).

In evaluating the motion, the Court must assume the truth of the facts alleged in the complaint. *Browning*, 292 F.3d at 242 (citations omitted) (noting that at the Rule 12(b)(6) stage, the court does not assess the truth of what is asserted or determine whether a plaintiff has any evidence to support what is in the complaint). The Court should also liberally construe the facts in the plaintiff's favor, and grant the plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. See *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1276 (D.C.

Cir. 1994); accord *Andrx Pharms. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C. Cir. 2001). When the plaintiff is *pro se*, as in this case, the complaint should be afforded an even greater latitude. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

In order to satisfy the Rules, a plaintiff's complaint need only allege a short and plain statement of the claim, sufficient to give the defendant notice of the claim. See Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (observing that a complaint does not need detailed facts); *Conley*, 355 U.S. at 47 (noting that a plaintiff need not set out in detail the facts upon which he bases his claims) Together, Rules 8(a) and 8(e)(1), "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. CIA*, 355 F.3d 661, 668-69 (D.C. Cir. 2003) quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). Indeed, the simplified notice pleading standard contained in Rule 8, "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 434 U.S. at 512 (citations omitted). In addition, any "ambiguities or uncertainties concerning the sufficiency of the claims must be resolved in favor of the plaintiff." *The Plan Committee v. PriceWaterHouseCoopers, LLP*, 335 B.R. 234 (D.C.C. 2005) quoting *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 7-8 (D.D.C. 1990).

## ARGUMENT

### I.    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT I (FRAUD)

Defendant CitiMortgage argues that Plaintiff's Complaint fails to allege fraud with the required particularity of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and improperly relies

---

[2] Plaintiff does not oppose the motion with respect to Counts III, VIII(r), VIII(x), and XI.

on "statements of future intentions" and is thus subject to dismissal under Rule 12(b)(6). CitiMortgage is twice incorrect.

### A.    Plaintiff Had Pled Fraud Claim With Sufficient Particularity

Rule 9(b) states that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus a complaint sounding in fraud must state time, place and content of false misrepresentation, fact misrepresented and what was obtained or given up as consequence of the fraud. *Silverman v. Weil*, D.D.C.1987, 662 F. Supp. 1195, affirmed 839 F.2d 824, 268 U.S.App.D.C. 145. However, this does not mean that Plaintiff need present elaborate factual details to support claims containing fraud. See *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). Furthermore, Rule 9(b) is not to be read in isolation from other procedural canons and the requirement of particularity does not abrogate Rule 8. See *id.*; *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981) quoting 2A J. Moore, Federal Practice P. 9.03, at 9-28 (2d ed. 1998). The heightened pleading requirements of Rule 9(b) are mitigated by the procedural rule requiring a short and plain statement of claim, and the simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for particularity. *U.S. ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F.Supp.2d 114 (D.D.C. 2003). Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," should be read "in conjunction" with Rule 9(b). *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C.Cir.1994). Rule 9(b)'s requirements ensure that defendants have notice of a fraud claim sufficient to provide a meaningfully

Defendants' motion should be denied in all other respects.

response. *United States ex rel. Fisher v. Network Software Assocs.*, 227 F.R.D. 4, 9 (D.D.C. 2005)

"[W]hen a plaintiff 'describe[s] the nature of the alleged misrepresentations, the general time frame in which they were made, and the parties involved,'" as Plaintiff does here, his failure to "'specify the exact time and particular place of each misrepresentation or omission' will not mandate dismissal of his claim." *Daisley v. Riggs Bank*, 372 F.Supp.2d 61 (D.D.C. 2005) quoting *Towers Fin. Corp. v. Solomon*, 126 F.R.D. 531, 535 (N.D.Ill. 1989). Throughout the Complaint, Plaintiff alleges that Osborne made false representations regarding Plaintiff's loan. Indeed, the Court need hardly look any further than Paragraph 98 of the Complaint for a laundry list of Osborne's false representations. Each of these summary allegations is rooted in the "Background" section of the Complaint, *e.g.* Paragraph 98(a) states that "[b]eginning on September 26, 2005, and again on many instances up until closing, Osborne represented that the terms of the Sept. 26. Loan were secure and the loan was in processing" -- this allegation encompasses the particularly plead allegation of Paragraph 49, "On September 29, 2005....Osborne confirmed that the terms of the Sept. 26 Loan had been secured and represented to Plaintiff that the loan was processing normally."

In *Daisley v. Riggs Bank*, the court held that it was enough that "Daisley's complaint includes the subject matter of the alleged misrepresentation, identifies which defendant allegedly made the misrepresentation, and attributes the misrepresentation to a particular period of time,: and that Defendants had "adequate notice of the specifics" of plaintiff's fraud claim. *Daisley*, 372 F.Supp.2d at 79 quoting *Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 74 (D.D.C. 2002). Indeed, the trial court "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which

she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts. *U.S. ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F.Supp.2d 114 (D.D.C. 2003) quoting *Harrison, U.S. v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Here, Plaintiff's allegations are plain and precise and adequately put CitiMortgage on notice for purposes of their defense. Plaintiff's Complaint lays out the prediscovery evidence he has to support his fraud claim and therefore there is no mystery.

**B.    Rule 9(b) Pleading Requirements are Relaxed Where Basis of the Fraud is Material Omission or Silence**

More importantly, CitiMortgage fails to consider each of these allegations, sufficient in of themselves, against the backdrop of Plaintiff's overarching allegations of Osborne's nondisclosures, omissions and continuous silence throughout the process. "Nondisclosure or silence, as well as active misrepresentation, may constitute fraud." *Jackson v. Bryd*, 2004 WL 3130653, n. 45 (D.C. Sup. Ct. 2004) citing *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). As the court in *S.E.C. v. Nacchio*, 438 F.Supp.2d 1266 (D.Colo.2006):

> The pleading with particularity requirements are relaxed somewhat when the alleged fraud arises from the speaker's omission of material facts, as one cannot allege with particularity the time, place, and contents of something that was never said; in these circumstances, the particularity requirements are satisfied if the complaint alleges the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.

From the time Osborne lost Plaintiff's loan on October 3, 2005, to the date of closing, Osborne was aware at all times that Plaintiff was acting in reliance on the terms of the Sept. 26 Loan and that that loan had been lost. Compl. at ¶¶ 50-51, 68. Yet Osborne was silent throughout, failing to disclose the fact that the loan had been lost and the reasons why until after the October 19, 2005 closing. *Id.* at ¶ 53, 90. As the Court noted in *Daisely*, "'[t]he concealment of a fact that should have been disclosed' may also constitute fraud," *Daisley*, 372 F.Supp.2d. at 78 quoting

- 8 -

*Sage v. Broadcasting Publ'ns, Inc.*, 997 F. Supp. 49, 52 (D.D.C.1997) citing *Feltman v. Sarbov*, 366 A.2d 137, 140-41 (D.C.1976). "Where a Court finds that a party had a duty to disclose material information, and failed to do so, there is an even greater likelihood that the nondisclosure will constitute fraud." *Sage v. Broad. Publ'n Inc.*, 997 F. Supp. 49, 52 (D.D.C.1998); see also *Pyne v. Jamaica Nutrition Holdings Ltd.*, 497 A.2d 118, 131 (D.C.1985) (internal citations omitted). As discussed in Section II.(B)(2), *infra*, Osborne's silence was particularly glaring given his duty to disclose such things to Plaintiff.

The Plaintiff provides several specific instances in his Complaint of opportunities Osborne had to tell the truth but instead chose to remain silent. For example, when Osborne called Pluta at his work (place) the morning of October 18, 2005 (time) and told Plaintiff that would have to put an additional 2.5% down payment towards the purchase of the Condominium (content), Osborne was silent as to the actual reason for the additional 2.5%. Compl. at ¶ 66; Def. Mot at 4. "Osborne told Plaintiff that CitiMortgage was 'no longer willing' to do the financing with a 10% down payment" but did not disclose the fact that the additional 2.5% was needed to secure a loan Plaintiff had never seen and to replace the one Osborne had lost. Compl. at ¶ 66.

### C.    Plaintiff's Fraud Claim Does not Rely Upon Non-Actionable Statements of Future Events

CitiMortgage seeks to disqualify two allegations in the complaint on the grounds that the allegations allegedly rely on misrepresentations involving future events which may or may not have occurred. Def. Mot. at 5.

The first is the allegation that Osborne misrepresented to Plaintiff at their September 26, 2005, meeting that if Plaintiff put down 10% of the purchase price (up from 5%), that the loan would be secured. Def. Mot. at 6; Compl. at ¶ 35. CitiMortgage links its argument to Plaintiffs

use of the word "could" to indicate the future uncertainty of Osborne's representation. *Id.*
However, as a full reading of Paragraph 35 reveals, Osborne presented the increased down
payment as a condition precedent to "get[ting] the deal done," transforming the "could" into a
"would" -- and therefore a certain event. *Id.* at ¶ 35. In other words, Osborne represented that if
Plaintiff agreed to a 10% down payment, then CitiMortgage "would" finance the Condo at the
terms offered. It is therefore a misrepresentation of *existing fact* and thus perfectly reasonable as
a basis to allege fraud. Def. Mot. at 6 (citing *One-On-One Enter v. Caruso*, 668 F. Supp. 693,
699 (D.D.C. 1987))

The second allegation CitiMortgage seeks to attack is that at closing, Osborne stated that
he "would" correct the discrepancies found in the closing documents. Def. Mot. at 6; Compl. at
¶¶ 83, 98(f). Because Osborne did not "guarantee such adjustments would be made or that he
had sole authority to make them," CitiMortgage contends, his statements can not be the basis of
fraud. Def. Mot. at 7. To the contrary, given that closing took place only after Osborne made
this misrepresentation, Osborne's guarantee and authority can be implied. The Complaint makes
it clear that only after Osborne made the representation that "there was a period of time after
closing in which adjustments could be made to the Primary and Secondary Loans and that
Osborne would correct the discrepancies on both loans," did Plaintiff close on the Condominium.
Compl. at ¶ 83. Worried about mitigating damages and with Osborne's representations of what
he would do to remedy the closing documents still hanging in the air, Plaintiff went through with
closing. Compl. at ¶¶ 68, 83. As the sole representative of CitiMortgage at the closing it is
reasonable to believe that Osborne had the authority to make such changes if he represented as
such.

- 10 -

### D.    Plaintiff Reasonably Relied on Osborne's Fraudulent Statements

In order to establish a claim for fraud, a plaintiff must show that he acted in reliance on defendant's misrepresentation and that such reliance was reasonable. *In re U.S. Office Products Co.*, 251 F.Supp.2d 58, 74 (D.D.C. 2003);  generally, eee Compl. at ¶ 106.

### 1.    The Sept. 26 GFE is Evidence of the Sept. 26 Loan

CitiMortgage contends that Plaintiff's reliance was not objectively reasonable for several reasons, for one, no reasonable consumer would look to the Sept. 26 GFE, by itself, as a binding commitment to lend money. Def. Mot at 7.  That, however, is not what Plaintiff is contending. Osborne stated that if Plaintiff agreed to make a down payment of 10% that CitiMortgage would finance his Condo at the terms contained in the Sept. 26 GFE. Compl. at ¶ 35.  Plaintiff agreed to a 10% down payment. *Id.* at ¶ 37.  Osborne represented to Plaintiff that the terms contained within the Sept. 26 GFE were secured. *Id.* at ¶ 38.  Osborne continued to represent as much to Plaintiff and Plaintiff's Real Estate Agent over the next three weeks until closing. *Id.* at ¶¶ 40, 48-50, 60-61.

No where in his complaint does Plaintiff contend that the Sept. 26 GFE by itself gives him the enforceable right to financing at those terms, instead the Sept. 26 GFE is but single piece of evidence (of many) to support Plaintiff's allegation that Osborne fraudulently represented that Plaintiff had secured the terms of the Sept 26 GFE at their September 26, 2006, meeting and continued to represent as such until literally the moment of closing.  Therefore, for CitiMortgage to state the unremarkable proposition that the GFE disclaimer makes clear that the GFE is not a "COMMITMENT TO LEND" is, well, unremarkable. Def. Mot. at 7.

> 2. **Given the Amount of Financial Information CitiMortgage Already Possessed, Plaintiff Reasonably Relied on Osborne's Fraudulent Statements**

CitiMortgage then goes on to attack the reasonableness of Plaintiff's reliance on Osborne's misrepresentations and omissions by stating that he could not have possibly thought that he had secured the Sept. 26 GFE given the "critical financial information" Plaintiff had yet to provide to Osborne. Def. Mot at 7-8. A full reading of the Complaint belies this argument -- as early as September 12, 2005, CitiMortgage had a complete picture of Plaintiff's financial situation (and Plaintiff was aware of this). Compl. at ¶¶ 11-12, 20, 24, 27.

Plaintiff has been a long time customer of Citigroup -- a banking relationship with Citibank, an equities brokerage and retirement account relationship with Citicorp Investment Services, and a student loan relationship with CitiAssist. Compl. at ¶ 11. Plaintiff filled out loan applications with CitiMortgage in July 2005 and then again two months later on September 12, 2005, each application filled with personal financial information.[3] Compl. at ¶¶ 12, 24, Ex. 5. As part of those loan applications, CitiMortgage ran a credit check on Plaintiff though Equifax Mortgage Services which provided them a complete and objective assessment of Plaintiff's financial situation.[4] The Equifax Mortgage Services report calculated Plaintiff's credit score, a very important and predictive measure of an individual's creditworthiness. Therefore, as of September 12, 2005, CitiMortgage knew Plaintiff's income ($125k/year), assets, liabilities, credit history, and credit score. To say that Plaintiff did not act in reasonable reliance on

---

[3] The CitiMortgage Uniform Residential Loan Application includes applicant's social security number, date of birth, current address, previous addresses, current employer, previous employers, present income, previous income, present assets (bank account with balances and account numbers, brokerage accounts with balances and account numbers, and retirement accounts with account numbers) and liabilities (student loan balances and account numbers), and automobiles owned (with market value). See Compl. Ex 5.
[4] The Equifax Mortgages Services report combined information from each of the three main reporting agencies (Equifax, TransUnion and Experian), yielding a credit score, and detailing past and present liabilities (real estate, installment, revolving, collections), as well as records of any liens, judgments, foreclosures, or bankruptcies.

Osborne's misrepresentations given all that HE KNEW that THEY KNEW about his financial situation, is a non sequitur.

### 3. Plaintiff No Where Admits a Belief that He was at the "Very Beginning of the Loan Application Process"

CitiMortgage also contends that Plaintiff *admits* that he was at the "very beginning of the loan application process" and thus could not have expected the terms of the Sept. 26 GFE to be the final terms of his loan. Def. Mot. at 8. And yet, because they cannot, CitiMortgage does not provide a citation for this assertion. Indeed, in the Complaint, Plaintiff specifically alleges that on September 26, 2005, "Osborne...indicated that he would begin processing the loan and that nothing further was required to be done on Plaintiff's end." Compl. at ¶ 38. This allegation would imply that Plaintiff believed that he was at the *end* of the process, at least as far as he was concerned.

### 4. The Oct. 7 GFE is Part of Osborne's

CitiMortgage next turns the spotlight on the Oct. 7 GFE, stating that it cannot be the basis for fraud because Plaintiff never saw the document before closing. This is true, he did not. However, the Oct. 7 GFE is certainly a part of the overall web of fraud that Plaintiff alleges. For one, the Oct. 7 GFE is evidence of an attempt by Osborne to cover up his misdeeds. Upon examination of the Oct. 7 GFE, the Court will note that the terms of the GFE do no resemble those of the Sept. 26 GFE nor the final terms of the Primary Loan. Compl. Ex. 5. Likewise, the Oct. 7 GFE indicates that a "face-to-face" interview took place between Osborne and Plaintiff to discuss the terms contained therein. *Id.* This "interview" <u>never</u> happened. *Id.* Indeed, upon information and belief, Osborne included the Oct. 7 GFE in the Closing Documents to exclude the Sept 26 GFE. The very fact that a GFE is included at all in the Closing Documents would belie CitiMortgage's argument that the GFE is document devoid of significance.

- 13 -

**E.    Defendant Takes Two of Osborne's Fraudulent Statements Out of
Context in Order to Label Them "True"**

Taking two allegations of the Complaint completely out of context, CitiMortgage argues

that they are "true and thus cannot form a basis for relief." Def. Mot. at 8.

First, CitiMortgage contends that when Osborne told Plaintiff that his loan was in

"processing" on October 13, 2005 that he was telling the truth. Def. Mot. at 8; Compl. at ¶¶ 48,

49, 60, 61. This statement, however, was not made in a vacuum. At the time Osborne made this

statement, he had been working for three weeks to fix the mess he had caused though his own

incompetence. While representing to Plaintiff that the terms of the Sept 26 GFE had been

secured and that everything was progressing normally towards the October 19th closing date,

unbeknownst to Plaintiff and as evidenced by internal CitiMortgage e-mails, Osborne knew the

Sept 26 loan had been lost. *Id.* at ¶¶ 53-58, 61. CitiMortgage can label Osborne's scrambling

around behind the scenes as "processing" if they wish, but that doesn't make their argument

valid. If, on the other hand, Osborne, when promoted about the status of the loan, had replied,

"Mr. Pluta, I forgot to send in the loan paperwork, lost your loan, and I've been lying to you for

the past two weeks," then Plaintiff would have little room to contest CitiMortgage's definition of

"processing."

The same logic exposes CitiMortgage's argument that Osborne's reasoning for the

additional 2.5% down payment on October 18, 2005 was "true" and thus ineligible as the basis

for fraud. Def. Mot. at 8-9. Again, Osborne omitted the fact that the reason CitiMortgage

required a higher down payment was because he was only then finalizing the terms of a loan that

Plaintiff had neither seen nor agreed to. Plaintiff's allegation is based on a material omission of

fact, thus CitiMortgage's argument fails.

Accordingly, the Court should deny CitiMortgage's motion to dismiss Count I of Plaintiffs' complaint.

## II.    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT II (NEGLIGENT MISREPRESENTAION)

### A.    Plaintiff Pleads Facts With Sufficient Particularity

CitiMortgage's attacks on Plaintiff's negligent misrepresentation claim suffer from the same frailties detailed in Section I, *supra*, and thus should be brushed aside as such.

### B.    Plaintiff Alleges an Independent Duty of Care

CitiMortgage makes the truly incredible argument that it does not owe a duty of care to the Plaintiff.  They are in error.  CitiMortgage owes Plaintiff a duty of care through two independent avenues, vicarious liability for Osborne's torts and direct liability for their own.

#### 1.    CitiMortgage is Vicariously Liable for Osborne's Torts

Vicarious liability is a form of strict, secondary liability that arises under the common law doctrine of agency -- respondeat superior -- the responsibility of the superior for the acts of their subordinate, or, in a broader sense, the responsibility of any third party that had the "right, ability or duty to control" the activities of a violator. See *Giles v. Shell Oil Corp.*, 487 A.2d 610, 611 (D.C. 1985); *Schecter v. Merchants Home Delivery*, 892 A.2d 415, 427 (D.C. 2006).

Under the doctrine of respondeat superior, CitiMortgage, as Osborne's employer, is vicariously liable for any and all of his tortious activity, including negligent misrepresentation. Compl. at ¶ 5. "Respondeat superior is a doctrine of vicarious liability and allows the employer to be held liable for the acts of his employees committed within the scope of their employment." *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C.1979) (citations omitted).    The

- 15 -

boundaries of the term "scope of employment" were well articulated almost a century ago in

*Axman v. Washington Gaslight Co.*, 38 App. D.C. 150 (1912), as follows:

> [W]e conceive the true test in measuring the principal's responsibility, to be whether the act of the agent was done in the prosecution of the business either impliedly or expressly intrusted to the agent by the principal.   If it was, the principal is responsible for the manner in which the agent executed his commission, even if he acted wantonly, recklessly, or against orders. He represented his principal, and what he did was for the benefit of his principal.   If his recklessness or lack of judgment caused loss or damage, it is only just that the one who selected and commissioned him should be held accountable therefor.   Of course, the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable.   The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends.

Id. at 158 (emphasis added).

In the present case, it cannot reasonably be disputed that Osborne's actions were not

within the scope of his employment.  Indeed, each of the allegations against Osborne implicate

his employment as a CitiMortgage lending agent.  Compl. at ¶¶ 5, 19.  Likewise, CitiMortgage

was the direct financial beneficiary of Osborne's tortious activity.  *Id.*  Given that Osborne was a

CitiMortgage employee acting within the scope of his employment at the time of Plaintiff's

injuries, CitiMortgage is vicariously liable for his tortious acts.

### 2.    Osborne Violated the Duty of Care he Owed to Plaintiff

In tort law, a duty of care is a legal obligation imposed on an individual requiring that

they exercise a reasonable standard of care while performing any acts that could forseeably harm

others.  For an action in negligence, there must be an identified duty of care in law.  Duty of care

is a formalization of the implicit responsibilities held by an individual towards another

individuals within society.  Individuals who are considered to be professionals within society are

often held to a higher standard of care than those who are not.

Professionals are held to reasonable standards for members of their profession, rather than those of the general public in cases related to their fields. *Pannu v. Jacobson*, 909 A.2d 178 (D.C 2006); *National R.R. Passenger Corp. v. McDavitt*, 804 A.2d 275 (D.C. 2002); *The Plan Committee*, 335 B.R. at 247; see, generally, Prosser and Keeton on the Law of Torts (5th ed.), Ch 33. 18 Am. Jur. 3d, Mortgage Broker Liability § 9. Because professionals are presumed to possess superior knowledge, skill, and intelligence, the law demands that professionals conduct their professional activities in concert with that higher level of attainment. *Id.* Stated another way, professionals in general, and those who undertake any work or services that call for special skills or training, are required to not only exercise reasonable care in what they do, but also to possess a minimum standard of proficiency, special knowledge, and ability consistent with the expectations of the general public, and the law's demands for expert or professional practitioners. *Id.*

Osborne is a professional, a mortgage lending agent/broker, and therefore he is tasked with an additional duty to exercise that degree of care and diligence commonly exercised by other members of his profession under similar circumstances. See, generally, Prosser and Keeton on the Law of Torts (5th ed.), Ch 33; 12 Am. Jur. 2d, Brokers § 96. Osborne is also tasked with a statutory duty to disclose, as discussed in Section II.(B)(2)(ii), *infra*. Plaintiff alleges that "Osborne's false statement and/or omissions were in violation of his duty to exercise reasonable care. The duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes. Osborne was a CitiMortgage Lending Agent with special training and experience in the mortgage lending industry." Compl. at ¶ 109. (emphasis added). This allegation is sufficient to overcome a

- 17 -

motion to dismiss were the court must assume the truth of the facts alleged. *Browning*, 292 F.3d 242.

### 3.    CitiMortgage Owed an Independent Duty of Care to Plaintiff

#### i.    Common Law Duty of Care to Plaintiff

CitiMortgage, as all employers do, has a duty to the public to use reasonable care in the selection, supervision, and retention of its employees. As the court noted in *Schecter v. Merchant's Home Delivery*, 892 A.2d 415, 431 (D.C. 2006) quoting *Fleming v. Bronfin*, 80 A.2d 915, 917 (D.C. 1951):

> One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment. This principle has been applied in a variety of cases dealing with innkeepers, carriers, stores, apartment houses, and other businesses.

Accord, *Murphy v. Army Distaff Found.*, Inc., 458 A.2d 61, 64 (D.C.1983); Restatement (Second) of Agency § 213 & cmt. g (1957). Potential recovery in tort for negligent supervision or hiring of an employee is not based on the doctrine of respondeat superior, but rather on proof of negligence on the part of the employer himself. *Schecter*, 892 A.2d at 431 quoting *Fleming*, 80 A.2d at 917. Plaintiff's claim for negligent hiring, training, supervision, and/or retention is discussed *infra*, Section III.

The court in *High V. McLean Financial Corp.*, 659 F. Supp. 1561, (D.C.C. 1987), held that lenders also can have a duty to process a loan application with reasonable care. "The Court believes that defendant incurred an obligation to process the application with reasonable care when it accepted the application, but it also finds that defendant's alleged acknowledgement of the application, and alleged attention to the application, show that defendant understood itself to have a duty to plaintiffs." *Id*. at 26-27.

- 18 -

### ii. Statutory Duty of Care

Each of the Truth in Lending Act ("TILA"),[5] Real Estate Settlement Procedures Act ("RESPA"),[6] D.C. Usury Statute,[7] and the D.C. Mortgage Lender and/or Broker Act of 1996 ("MLBA")[8] enhances the duty of care for mortgage professionals. These statutes all greatly expand a mortgage lenders duty to disclose. Under RESPA and TILA, a creditor or broker must provide a good faith estimate of costs, fees, and other terms of a mortgage before the earlier of: (1) the extension of credit, or (2) three business days after the creditor receives the consumer's written application for a residential mortgage loan. 12 U.S.C. § 2604(c); 15 U.S.C. § 1638(b)(2); 12 C.F.R. § 226.19(a)(1). The D.C. Usury Statute effectively incorporates the provisions of TILA. D.C.Code § 28-3301(f). Defendants violated several provisions of TILA and RESPA as detailed, and uncontested by CitiMortgage, in ¶¶ 145-149 of Plaintiff's Complaint.

The MLBA further highlights Defendants enhanced duty of care by adding a licensing requirement to all mortgage lenders and brokers. See D.C.Code § 26-1103(a) ("[a]nyone engaging in business as a mortgage lender or broker must be licensed under MLBA, D.C.Code § 26-1103(a)"); *Cooper v. Hartford Financial Services Group, Inc.*, 2005 U.S. Dist. Lexis 11434. The license is obtained though the D.C. Department of Insurance, Securities, and Banking and requires the mortgage professional to subject themselves to, *inter alia*, bonding, a background

---

[5] TILA is a United States federal law designed to protect consumers in credit transactions by requiring clear disclosure of key terms of the lending arrangement and all costs. 15 USC 1601 et seq., see also regulations codified as "Regulation Z" at 12 CFR Part 226. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling. 15 U.S.C. § 1638.
[6] RESPA prohibits kickbacks between lenders and third-party settlement service agents in the real estate settlement process, requires lenders to provide a good faith estimate for all the approximate costs of a particular loan and finally a HUD-1 (for purchase real estate loans) or a HUD-1A (for refinances of real estate loans) at the closing of the real estate loan. The final HUD-1 or HUD-1A allows the borrower to know specifically the costs of the loan and to whom the fees are being allotted. 12 U.S.C. 2601 et seq.
[7] D.C. Code § 28-3301, et seq.
[8] D.C. Code § 26-1101, et seq.

check, an oath[9] and an affidavit.[10] http://dbfi.dc.gov/dbfi/lib/dbfi/pdf /initial_app_-_mortgage_lender_broker.pdf ("License Application"). The license itself, through the oath and affidavit, gives rise to additional duties owed by mortgage brokers and lenders. Namely, CitiMortgage[11] agreed to follow the "provisions of the District of Columbia Code 26-1101 *et seq.*" License Application, Attachment D. CitiMortgage further swears that "all employees of the applicant will be made aware of such laws and regulations." License Application, Attachment D. CitiMortgage violated this Oath when he failed to abide by D.C.Code 26-1113(b)(1) which requires that the "financing agreement executed by the lender shall be delivered to the borrower at least 72 hours before the time of settlement...and shall include...(A) The effective fixed interest rate or initial interest rate that will be applied to the loan." See Compl. at ¶¶ 76, 84.

### C.    Plaintiff Demonstrates Reasonable Reliance on Defendant's Misrepresentations

CitiMortgage again claims that, "there is no factual basis for establishing objectively reasonable reliance," because "Plaintiff's critical allegation for his reliance is Osborne's alleged representations that CitiMortgage 'could' finance the Plaintiff's Condominium at those terms with a 10% down payment," and yet Plaintiff "had not yet submitted detailed financial

---

[9] "I hereby swear and affirm that the information contained herein and attachments hereto are true and correct to the best of my knowledge. Further, the provisions of the District of Columbia Code 26-1101 et seq. have been reviewed by the principals of the applicant as listed herein and all employees of the applicant will be made aware of such laws and regulations and changes enacted hereafter. It is the purpose of this application to permit the District of Columbia Department of Bank and Financial Institutions, its officials, and examiners to grant a license to engage in the business or businesses indicated herein and any false statement or omission of material information is connection with this application shall be punishable as provided by law." License Application, Attachment D.

[10] The applicant "certifies or agrees" that the "mortgage professional is of good moral character and has sufficient financial responsibility, business experience, and general fitness to: (a) Engage in business as a mortgage lender or broker as defined under the District of Columbia Mortgage Lender and Broker Act of 1996 (DC Law 11-155; DC Official Code §§ 26-1100 et seq.); (b) warrant the belief that the business will be conducted lawfully, honestly, fairly, and efficiently, and (c) Command the confidence of the public." License Application, Attachment E.

[11] D.C. Department of Insurance, Securities, and Banking holds a license for "Citi Financial Mortgage Co."

information." Def. Mot. at 12.  Therefore, Plaintiff's reliance could not have been objectively reasonable.

This argument fails.  As outlined in detail in Section I.(D), *supra*, two full weeks before the September 26, 2005, meeting between Osborne and Plaintiff, CitiMortgage had a complete picture of Plaintiff's financial situation -- a fact Plaintiff was aware of given than he had supplied most of the information.   These facts combined with Osborne's representations as a CitiMortgage lending agent are sufficient to overcome a motion to dismiss.

Accordingly, the Court should deny CitiMortgage's motion to dismiss Count II of Plaintiffs' complaint.

III.     **PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT IV (NEGLIGENT HIRING, TRAINING, SUPERVISION AND/OR RETENTION)**

CitiMortgage challenges Plaintiff's negligent hiring, training, supervision and/or retention claim on two grounds, the first, which is a reoccurring theme in Defendant's motion, is that CitiMortgage did not owe a duty to Plaintiff and thus cannot breach what does not exist, and two, that CitiMortgage was not on notice of Osborne's incompetence.

A.     **CitiMortgage Has A Duty To Use Reasonable Care In The Selection, Retention, And Supervision Of Employees**

As discussed in Section II.(B), *supra*, Defendant CitiMortgage owed both a direct and vicarious duty to Plaintiff, both of which it breached.

B.     **CitiMortgage was on Notice of Osborne's Incompetent Behavior for a Showing of Negligent Supervision or Retention**

In order to establish a cause of action for negligent supervision or retention in the District of Columbia, a Plaintiff must show: (1) that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and (2) that the employer,

- 21 -

armed with that actual or constructive knowledge, failed to adequately supervise the employee."
*Phelan v. City of Mount Rainier*, 805 A.2d 930, 937-938 (D.C. Ct. App. 2002) quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985).

Defendant's only contention with this cause of action is what they describe as a "woefully inadequate" allegation of notice on behalf of CitiMortgage as to Osborne's "incompetent" behavior. Def. Mot. at 15; *Phelan*, 805 A.2d at 937. In the Complaint, Plaintiff alleges at least three facts that each independently lead to a logical inference of notice.

The first is the telephone conversation Plaintiff had with Osborne's then boss, Reginald Moore ("Moore") on or about December 13, 2005. Compl. at ¶ 94. Plaintiff called Moore to discuss Osborne's incompetence as well as to pursue the promised revision of Plaintiff's Primary Loan. In the context of discussing Mr. Osborne's poor performance Moore revealed to Plaintiff that Moore had "inherited that headache," referring to Osborne. Compl. at ¶ 94. This admission alone allows the fact finder to draw the reasonable inference that Plaintiff's issues with Osborne's performance were not the first CitiMortgage had been aware of. Indeed, there had been enough of them to cause a proverbial "headache" for his past and then current manager.

The second set of facts that demonstrate notice are the internal CitiMortgage e-mails Osborne produced to Plaintiff on November 7, 2005. Compl. at ¶ 91. The e-mails demonstrate definitively that Osborne's superiors were on notice that he had lost Plaintiff's Sept. 26 Loan through his knowing violation of CitiMortgage policy.[12]  Compl. at ¶ 55. At this point

---

[12] Formosa sent Osborne an e-mail on October 6, 2005: "This loan is declined. Tony should have advised you that you have 3-business days to respond to counter/noia's on a go [sic] forward bais [sic]. For future reference, if you do not respond by the end of day 3, the loan will be moved into uw by me for decline. If there are special circumstances, you need to undate in the notes. This is a change in procedure that was communicated by my boss to all of the regional managers. in addition, Tami [Vaughan] sent you an email on 9/26 that you did not respond to. I sent an email to you on 10/3 that went without response. That's why the loan has been declied. Lack of response effects my CIAPPR speed which I am measured by." Compl. at ¶ 55.

CitiMortgage had concrete evidence of Osborne's incompetent behavior and yet they chose not to do anything about it – not to intervene nor otherwise discipline Osborne.

The third fact is that Osborne was, upon information and belief, fired within months of Plaintiff's closing date. Compl. at ¶ 95. Giving the context of this litigation, the admission of Mr. Moore, and timing of his release, Osborne's termination is itself a strong circumstantial fact that supports the allegation of notice.

At this stage in the litigation, the previous three examples provide a sufficient factual basis to allege that CitiMortgage was on notice of Osborne's incompetence. The Court should liberally construe the facts in the plaintiff's favor, and grant the plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. See *Kowal*, 16 F.3d at 1276 (D.C. Cir. 1994); accord *Andrx Pharms.*, 256 F.3d at 805.

Accordingly, the Court should deny CitiMortgage's motion to dismiss Count IV of Plaintiffs' complaint.

## IV.    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT V (PROFESSIONAL MALPRACTICE)

### A.    Professional Malpractice

In law, malpractice is type of tort in which the misfeasance, malfeasance or nonfeasance of a professional, under a duty to act, fails to follow generally accepted professional standards, and that breach of duty is the proximate cause of injury to a plaintiff who suffers damages.

In order to establish a claim for professional malpractice in the District of Columbia, a party must allege facts that establish (1) that the professional had a duty to use such skill, prudence, and diligence as other members of this profession commonly possess and exercise, (2) a breach of that duty, (3) a proximate causal connection between the negligent conduct and the

- 23 -

resulting injury, and (4) actual loss of damage resulting from the professional malpractice. *Perez v. Goldin*, 360 F.Supp.2d 12, 16 [D.D.C. 2003). Each of these elements is sufficiently alleged in the Complaint and CitiMortgage does not dispute otherwise.

### B.    Professional Negligence

CitiMortgage attempts to recast Plaintiff's claim with its own set of elements. Def. Mot. 15. ("In order to establish a *professional negligence* claim, plaintiff must establish (1) the applicable standard of care; (2) defendant's deviation from that standard; and (3) causal connection between the two.") (citation omitted) (emphasis added). Under what is simply a derivative of a simple negligence claim (discussed in Section V, *infra*), Plaintiff has pled the required elements.

#### 1.    The Applicable Standard of Care is that Required from Members of Osborne's Profession

The heightened standard of care required of members of Osborne's profession is discussed in detail in Section II.(B)(2), *supra*. The alleged fact that Osborne is a mortgage broker with "skill, prudence, and diligence that other members of his profession commonly possess and exercise" (Compl. at ¶ 126) establishes a prima facie standard of care, and is sufficient to overcome a motion to dismiss. *The Plan Committee*, 335 B.R. at 247 (noting that 'many well-pleaded complaint are conclusory," that specific facts are not required to survive a motion to dismiss under Rule 12(b)(6), and that Rule 9 permits conclusory allegations of negligence) quoting *Warren v. District of Columbia*, 359 U.S. App. D.C. 179 (D.C. Cir. 2004).

#### 2.    Osborne Deviated from the Applicable Standard of Care

As Plaintiff alleges in his complaint, "Osborne breached that duty to Plaintiff by defrauding, negligently misrepresenting, and omitting material facts relevant to Plaintiff's financing to purchase the Condominium." Compl. at ¶ 127; see, generally, *Id.* at ¶¶ 98, 100.

### 3.    Osborne's Deviation from the Applicable Standard of Care Caused Injury to Plaintiff

As for the last required element, curiously, CitiMortgage completely misquotes the third element of professional negligence from the very case it chose to cite. Def. Mot at 15.  In D.C., "the plaintiff in a negligence action bears the burden of proof on three issues: 'the applicable standard of care, a deviation from that standard by the defendant, *and a causal relationship between that deviation and the plaintiff's injury.*" *Toy v. D.C.*, 549 A.2d 1, 6 (D.C. 1988) quoting *Meek v Shepard*, 484 A.2d 579, 581 (D.C. 1984) (emphasis added).  In any event, the Complaint is unambiguous regarding the causal connection between Osborne's breach of his heightened standard of care and plaintiff's injury. See Compl. at ¶ 114.

Accordingly, the Court should deny CitiMortgage's motion to dismiss Count V of Plaintiffs' complaint.

### V.    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT VI (NEGLIGENCE)

Defendant CitiMortgage once again makes the contention that Plaintiff fails to sufficiently allege in his complaint the "basis for a duty of care between Plaintiff and CitiMortgage." Def. Mot. at 16; but see Compl. at ¶ 131.  As discussed in Section II.(B) and IV, *supra*, this argument fails as a matter of law and thus the Court should deny CitiMortgage's motion to dismiss Count VI of Plaintiff's Complaint.

### VI.    PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT VII (CONVERSION)

Defendant CitiMortgage avers that the Complaint fails to allege an adequate claim for conversion because the Plaintiff "voluntarily turned over the funds to the Defendant

CitiMortgage at closing and did not subsequently make a demand for the return of those fund. Consequently, Defendant CitiMortgage claims, Plaintiff is unable to establish a claim for conversion.[13]

### A.    Plaintiff Pleads an Actionable Claim

In a claim for conversion, the Plaintiff must establish the Defendant (1) unlawfully exercised, (2) ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto.  See *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 279-80 (D.D.C 1990).  Defendant CitiMortgage's attack on the validity of the conversion claim focuses solely on the first element.

### 1.    Defendant CitiMortgage Possession of Plaintiff's Funds is Unlawful

Defendant CitiMortgage claims that it lawfully possesses the Plaintiff's funds.  The entirety of its argument supporting this allegation stems from Defendant's assertion that its possession is lawful because the Plaintiff "voluntarily" transferred money to Defendant CitiMortgage.  Unfortunately, Defendant's rhetoric alone fails to establish that Plaintiff did not address this element in his Complaint.

In the Complaint, Plaintiff clearly sets forth a number of facts that support his claim of conversion.    See Compl. at ¶¶ 136-137.    Specifically, Plaintiff stated that Defendant CitiMortgage's illegal acts include surprising Plaintiff the day of closing to extract a larger down payment when it knew "Plaintiff lacked meaningful choice or bargaining power" and "extracting fees for the sale of securities that were necessitated by their own unlawful acts." *Id.* at ¶¶ 127(a)-

---

[13]       In support of their position, Defendant CitiMortgage cites two cases involving summary judgment motions. See Def. Mot. at 16-17.  In fact, throughout their Motion to Dismiss, Defendant CitiMortgage cites cases involving summary judgment.  As stated in the Standards of Review, see Section I, *supra*, the Plaintiff's Complaint is subject to the liberal pleadings requirements of the Federal Rules of Civil Procedure.  At this earlier stage in the proceeding, Plaintiff cannot be expected to meet, nor is it appropriate for him to be subjected to, the higher legal and evidentiary standard that would be applied at summary judgment.

(b). Further, Defendant CitiMortgage continues to convert Plaintiff's funds through "its failure to refund, amend, or revise Plaintiff's Primary Loan" and by "[c]ollecting interest or fees not contracted for under the terms of the Sept. 26 Loan". *Id.* at ¶ 137(d).

In response to CitiMortgage's demand of an additional $17,500 24-hours from closing and then at closing to offer Plaintiff a vastly more expensive loan, Plaintiff found himself with no real choice. He could either not meet CitiMortgage's demands, in which case he would lose $20,000 in earnest money and be sued by the Condo Seller, or he could close under the unconscionable terms thrust upon him by CitiMortgage in the 11th hour an with Osborne's reassurances. Compl. at ¶¶ 68, 85.

## 2. Even if Possession was Initially Lawful, Plaintiff Demanded Return of His Money

Even assuming Defendant CitiMortgage initial possession of Plaintiff's funds was lawful, Plaintiff's Complaint nonetheless establishes a valid conversion claim. Generally, when the defendant's initial possession is lawful, then, *in the absence of other facts and circumstances independently establishing conversion*, a demand for its return is necessary to render the possession unlawful and adverse in nature. *See Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1989) (emphasis added); *see also Bowler v. Joyner*, 562 A.2d 1210, 1212 (D.C. 1989) (noting a demand is only necessary is there are no other facts and circumstances to establish a claim of conversion). Defendant CitiMortgage argues that Plaintiff "has never demanded the return of his funds" and Plaintiff "cannot show the adverse nature of CitiMortgage's possession." Def. Mot. at 17.

Defendant CitiMortgage's assertion is patently untrue -- it is indisputable that CitiMortgage was aware, from the point of closing through the commencement of litigation, that Plaintiff considered Defendant CitiMortgage's possession adverse. Compl. at ¶ 96. While a

demand for return may be necessary to establish a claim for conversion, it is only needed "in the absence of other facts and circumstances independently establishing conversion." See *Shea v. Fridley*, 123 A.2d at 361. The demand serves to put the defendant on notice that its possession of a plaintiff's property is being disputed. In the present proceeding, and as outlined clearly in the Complaint, the Defendant was on notice, from the time of closing, that its possession was adverse. Indeed, Plaintiff asked the dispute to be referenced on the face of the closing documents. Compl. at ¶ 85. When this was refused, he immediately contacted CitiMortgage and demanded the return of his funds, and the revision of this loan terms to reflect those he had previous agreed to. *Id.* at ¶¶ 86-95. These communications serve as a "demand" for Plaintiff's funds, and alternatively, at a minimum these communications establish the "other facts and circumstances" that make a demand unnecessary.

### B.    Plaintiff Pleads Facts with Sufficient Particularity

As stated above, in order to satisfy the rules, a plaintiff's complaint need only allege a short and plain statement of the claim, sufficient to give the defendant notice of the claim. See Rule 8(a); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Plaintiff's claim will survive a motion to dismiss if this Court is satisfied that the Plaintiff alleges facts that go to the first element of conversion regarding the unlawfulness of Defendant Citibank's possession of Plaintiff's money. It is clear that the Complaint, on its face, addresses this element, and therefore dismissal of Plaintiff's conversion claim is inappropriate.

Accordingly, the Court should deny CitiMortgage's motion to dismiss Count VII of Plaintiffs' complaint.

## VII.  PLAINTIFF ADEQUATELY ALLEGES THE ELEMENTS OF COUNT VIII (DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT ("CPPA"))

### A.  Plaintiff Adequately Alleges a Claim Under § 28-3904(a)

D. C. Code § 28-3904 states:

"It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have"

CitiMortgage makes a very straightforward argument that because Plaintiff was aware of the terms of the Primary and Secondary[14] Loans at the time of closing, that he is now precluded from complaining about the loans he actually received that day.

Section (a) can be read three distinct ways, each of which independently states a valid claim.

### 1.  "It shall be a violation of this chapter...for any person to...represent that...services have...*approval*...that they do not have"

It is a violation of the CPPA to represent that services have *approval* that they do not have. In the instant case, Plaintiff alleges that Osborne represented that the terms of the Sept. 26 Loan had been approved by CitiMortgage. Compl. at ¶¶ 35, 48-49. When Osborne approached Plaintiff with the 10% down payment offer on September 26, 2005, Osborne spoke in terms of "CitiMortgage" offering to finance the Condo, therefore the reasonable inference is that CitiMortgage approved of the Sept. 26 Loan. *Id.* at ¶ 35.

As the statute does not define the word "approval" this Court may reply on common usage to determine the meaning of this word.[15]  Assuming the truth of the facts alleged in the

---

[14] See Compl. at ¶ 76
[15] "An official approbation; a sanction" The American Heritage Dictionary of the English Language (4th ed. 2000).

Complaint, a trier of fact could reasonably conclude that Osborne had indeed represented to Plaintiff that CitiMortgage officially sanctioned the terms of the Sept. 26 Loan, therefore § 28-3904(a) should not be dismissed.

> **2.    "It shall be a violation of this chapter...for any person to...represent that...services have...*characteristics*...they do not have"**

It is a violation of the CPPA to represent that services have *characteristics* that they do not have. In the instant matter, Plaintiff alleges that Osborne represented that his Primary and Secondary Loans had very specific characteristics that they in fact did not have. Compl. at ¶ 35. As the statute does not define the word "characteristics" this Court may rely on common usage to determine the meaning of this word.[16]

Assuming the truth of the facts alleged in the Complaint, a trier of fact could reasonably conclude that Osborne had indeed misrepresented to Plaintiff that his Primary and Secondary Loans had features that helped to identify, tell apart, or describe recognizably the terms of the loans. The loans did not in fact have those characteristics, and therefore § 28-3904(a) should not be dismissed.

> **3.    "It shall be a violation of this chapter...for any person to...represent that...services have...*benefits*...that they do not have"**

It is a violation of the CPPA to represent that services have *benefits* that they do not have. In the case at hand, Plaintiff alleges that Osborne represented that his Primary and Secondary Loans had very specific benefits -- the terms of the loan -- that in fact it did not have. Compl. at ¶ 35.

---

[16] "A feature that helps to identify, tell apart, or describe recognizably; a distinguishing mark or trait." The American Heritage Dictionary of the English Language (4th ed. 2000).

Assuming the truth of the facts alleged in the Complaint, a trier of fact could reasonably conclude that Osborne had indeed represented to Plaintiff that his Primary and Secondary Loans had benefits -- the terms of the loans -- that they did not, and therefore § 28-3904(a) should not be dismissed.

### B.    Plaintiff Adequately Alleges a Claim Under § 28-3904(b)

D. C. Code § 28-3904 states:

> "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
> (b) represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have"

CitiMortgage contends that Plaintiff "does not allege that CitiMortgage represented that the loan, Osborne, or CitiMortgage possessed a 'sponsorship, approval, status, affiliation, certification, or connection that they person does not have.'" Def. Mot. at 18.

It is a violation of the CPPA to represent that the person [representing the goods or services] has *approval* that they do not have. Plaintiff alleges that Osborne represented that he had the approval of CitiMortgage to bind CitiMortgage to the terms of the Sept. 26 Loan, when in fact he did not have. Compl. at ¶35. Assuming the truth of the facts alleged in the Complaint, a trier of fact could reasonably conclude that Osborne had in fact misrepresented his authority to the Plaintiff, and therefore § 28-3904(b) should not be dismissed.

### C.    Plaintiff Adequately Alleges a Claim Under § 28-3904(d)

D. C. Code § 28-3904(d) states:

> "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
> (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another"

CitiMortgage makes the argument that because Plaintiff takes issue with the "terms of the loan" and the word "terms" is not an exact synonym of either "standard, grade, style, or model,"

- 31 -

the claim must fail. Def. Mot at 18-19. The logical failings of this argument are illustrated by CitiMortgage's own admission that § 28-3904(d) "protects against a merchant changing the type of product." *Id.* at 19. Indeed, Plaintiff's overarching allegation against CitiMortgage and Osborne is that Plaintiff was the victim of a high stakes bait-and-switch, the terms of his Sept. 26 Loan (and a HELOC) for the Primary and Secondary Loan that was forced upon him at closing. Compl. at ¶ 13, 35, 76-82. Even using CitiMortgage's own definition for "mode" ("a type or design of product"), a trier of fact could reasonably conclude that, assuming the truth of the facts alleged in the Complaint, that the type of "financial" product[17] promised to Plaintiff was of another grade and/or model than the one promised, and therefore § 28-3904(d) should not be dismissed.

### D.    Plaintiff Adequately Alleges a Claim Under § 28-3904(e)

D. C. Code § 28-3904(e) states:

"It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
(e) misrepresent as to a material fact which has a tendency to mislead"

CitiMortgage seems to concede in its motion to dismiss, though its silence, that if taken as true Plaintiff's allegations concern material facts, the misrepresentation or omission of which misled the Plaintiff. This is, of course, because they cannot challenge these elements. Instead, CitiMortgage focuses on a revival of the argument from Section I.(C) of their motion to dismiss – that "Plaintiff cannot show that Osborne's alleged misrepresentations or omissions had a

---

[17] Defendant itself considers itself a dealer in "financial products." From their website, "CitiMortgage is a member of the Citigroup (NYSE: C), the preeminent global financial services company with some 200 million customer accounts in more than 100 countries. Citigroup provides consumers, corporations, governments and institutions with a broad range of <u>financial products</u> and services, including consumer banking and credit, corporate and investment banking, insurance, securities brokerage, and asset management."
http://correspondent.citimortgage.com/SpecialPrograms/CorrespondentSpecialProgramsServlet?PageID=GetAboutTheCompany (emphasis added)

tendency to mislead a *reasonable consumer*." Def. Mot. at 20. (emphasis added).  As already

discussed in detail in Section I.(D), *supra*, this argument is of no moment.

    CitiMortgage contends that no reasonable consumer could look to the Sept. 26 GFE as a

contract to lend at the terms contained therein.  This, however, is not what the Plaintiff is

asserting.  The Sept. 26 GFE is evidence of the loan Osborne told Plaintiff he had secured on

September 26, 2005.  Compl. at ¶ 35.  The Sept 26 GFE is evidence of the loan that Osborne

continued to represent, for the next three weeks and until the very moment of closing, that

Plaintiff had secured.  Id. at ¶¶ 48-49, 61, 66, 78, 82.

    CitiMortgage then revisits the word "could" -- stating that "could" and "would" are two

different words, "could" indicating that it was physically possible to loan at those terms, and

"would" indicating something more than "could," though likely still not enough to support

Plaintiff's claim.  Def. Mot. at 20.  In any event, the simple fact is that Osborne told Plaintiff that

if Plaintiff put down 10% instead of 5% that CitiMortgage would finance Plaintiff's Condo

pursuant to the terms of the Sept. 26 GFE.  Compl. at ¶ 35.  Osborne continued to advise Plaintiff

that CitiMortgage would finance his Condo as such until closing.  Id. at ¶¶ 48-49, 61.  The facts

and the pleadings bear this out.

    Lastly, CitiMortgage again submits that as of September 26, 2005, that CitiMortgage had

so little financial information about Plaintiff that no reasonable consumer could have been

misled by "Osborne's alleged misrepresentations and omissions."  Def. Mot. at 20.  As discussed

in Section I.(D)(2), *supra*, this argument is without merit given the vast amount of financial data

CitiMortgage in fact possessed.  Compl. at ¶¶ 11-12, 20, 24, 27.  This information included, *inter*

*alia*, an Equifax Mortgage Credit Evaluation, two mortgage applications, checking and savings

account balances, a brokerage account inventory, student loans balances, a retirement account

balance, Plaintiff's letter of employment with salary ($125,000/year), and a copy of Plaintiff's earnest money check. If the reasonable consumer has knowledge that his mortgage lender has the consumer's complete financial picture, it is reasonable to conclude that CitiMortgage was prepared to make a binding offer to finance Plaintiff's Condo on September 25, 2006.

### E.    Plaintiff Adequately Alleges a Claim Under § 28-3904(f)

D. C. Code § 28-3904(f) states:

> "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
> (f) fail to state a material fact if such failure tends to mislead"

As the allegations of the Complaint bear out, Osborne's long silence is perhaps the most distressing aspect of this unfortunate series of events. From the date Osborne learned that he had lost Plaintiff's Sept. 26 Loan, October 3, 2005, to the very moment of closing, October 19, 2005, Osborne failed to inform Plaintiff that, despite what he had told him previously and what he had subsequently misrepresented, that Osborne had lost the Sept. 26 Loan. Compl. at ¶¶ 53, 48, 49, 61. As the internal CitiMortgage e-mails evidence, Osborne and his superiors, were well aware that the Sept. 26 Loan had been lost. *Id.* ¶¶ at 53-59, 62-65. Osborne should have immediately informed Plaintiff of the circumstances and yet utterly failed to do so.

Additionally, as previous discussed in Section II.(B)(3)(ii), *supra*, Defendants many violations of various mortgage loan disclosure statutes further strengthen Plaintiff's claim under § 28-3904(f). CitiMortgage has not, nor can they, contradict this.

Indeed, other courts have found that violations of the disclosure statutes amount to *per se* violations of their jurisdiction's consumer protection act. See *Anderson v. Wells Fargo Home Mortgage*, 259 F. Supp.2d 1143 (W.D. Wash. 2003). In *Anderson*, the U.S. District Court for the Western District of Washington held that the lender's failure to make RESPA-required disclosures was a deceptive act and therefore a *per se* violation of Washington's Consumer

Protection Act. *Id.* at 1147-1148; Wash. Rev. Code § 19.86. Here, Plaintiff alleges and CitiMortgage does not dispute in their motion that TILA and D.C. Usury Statute violations occurred. Def. Mot. at 4. Assuming the truth of the facts alleged in the Complaint, a trier of fact could reasonably conclude that Defendants failed to state material facts and therefore had a tendency to mislead, thus § 28-3904(f) should not be dismissed.

### F.    Plaintiff Adequately Alleges a Claim Under § 28-3904(k)

D. C. Code § 28-3904(k) state:

"It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
(k) falsely state that services, replacements, or repairs are needed"

CitiMortgage argues that Plaintiff does not allege that points and title insurance were not necessary, therefore his claim under § 28-3904(k) fails. Def. Mot. at 21.

Plaintiff's allegation, however, is that Osborne falsely represented the cost of Plaintiff's title insurance (services), representing a knowingly low ball estimate of $1,195.00. Compl. at ¶ 36, 80. In fact, Title Insurance was $2,246.20, a full 88% higher than Osborne had represented. *Id.*

Furthermore, Plaintiff also alleges that Osborne falsely stated that repairs were needed, when in fact they were not.

On the morning of October 18, 2005, approximately 24-hours to closing on the Condominium, Osborne called Plaintiff at work. Osborne told Plaintiff that CitiMortgage was "no longer willing" to do the financing with a 10% down payment. Osborne stated that Plaintiff would have to put down an additional 2.5% of the purchase price ($17,500) to get CitiMortgage to finance the purchase of the Condominium.

Compl. ¶ 66. Osborne represented to Plaintiff that he needed to infuse an additional $17,500 in cash to repair his Sept. 26 Loan. *Id.* This additional cash outlay was in fact not necessary because the Sept. 26 Loan did not need to be repaired -- Osborne had lost the loan several weeks

previous. *Id.* at ¶ 53. This repair was also not needed in the sense that the 12.5% down payment was part of a new loan that was not in need of repair or rehabilitation at all.

### G.    Plaintiff Adequately Alleges a Claim Under § 28-3904(u)

D. C. Code § 28-3904(u) states:

"It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
(u) represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not"

Though CitiMortgage states that, "by Plaintiff's own admission, [Osborne] did submit the loan application to CitiMortgage to attempt to obtain the loan terms referred to in the GFE" (Def. Mot. at 23.), CitiMortgage fails to provide a citation to Plaintiff's brief for this admission, largely because they cannot -- Plaintiff admits no such thing.

Osborne represented to Plaintiff that he had secured the terms of the Sept. 26 GFE -- he did this on several occasions and over several weeks time. Compl. at ¶¶ 35, 38, 48, 49, 61. Only after closing took place did Mr. Osborne confess to Plaintiff that "he had failed to turn in Plaintiff's loan paperwork within the time allowed by CitiMortgage to secure the terms of the loan." *Id.* at ¶ 50, 90. Osborne also made misrepresentations that Plaintiff's *Sept 26 Loan* was in "processing" and "underwriting" – omitting that Osborne had lost the loan and was acting behind the scenes to cover up the mistake.

### H.    Plaintiff Adequately Alleges a Claim Under § 28-3904(v)

D. C. Code § 28-3904(v) states:

"It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
(v) misrepresent the authority of a salesman, representative or an agent to negotiate the final terms of a transaction"

CitiMortgage argues that Plaintiff has not alleged "that Osborne purported to negotiate the final terms of a transaction." In ¶ 142(h) Plaintiff alleges that "Osborne made representations

to Plaintiff on which Plaintiff relied that Osborne had the authority to extend the terms of the Sept. 26 Loan to Plaintiff and register acceptance of that offer." Furthermore, a complete reading of the Complaint demonstrates that Osborne accepted Plaintiff application on September 19, 2006, and then a week later offered the terms of the Sept 26 GFE conditioned on a 10% down payment. Compl. at ¶ 35. Osborne's words and actions on and after September 26, 2005 misrepresented his authority to negotiate the finals terms of Plaintiff's mortgage.

As stated above, in order to satisfy the rules, a plaintiff's complaint need only allege a short and plain statement of the claim, sufficient to give the defendant notice of the claim. See Rule 8(a); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Accordingly, the Court should deny CitiMortgage's motion to dismiss Count VII of Plaintiffs' complaint.

## **CONCLUSION**

The question before this Court is whether Plaintiff's allegations are sufficient to state a claim. For the foregoing reasons, the allegations, taken as true, are sufficient to state a claim. Defendant CitiMortgage's motion to dismiss should therefore be denied.

DEMAND FOR A HEARING ON DEFENDANT CITIMORTGAGE'S MOTION TO DISMISS

DATE:  JANUARY 22, 2007

Respectfully submitted,

By: _____

Scott D. Pluta
777 7th Street N.W. #414
Washington, D.C. 20001
(434)-242-1615

*Pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2007, a copy of the foregoing document was served by first class mail, postage prepaid, and email upon the following:

Alec W. Farr (D.C. Bar No. 440046)
Kristin A. Hird (D.C. Bar. No. 497800)
BRYAN CAVE LLP
700 Thirteenth Street, NW, Suite 700
Washington, D.C. 20005

*Counsel for CitiMortgage, Inc.*

Scott D. Pluta