IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SCOTT D. PLUTA** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Case No. 1:06CV01806 (RWR)** |
| ) | |
| **CITIMORTGAGE, INC.**, *et al.,* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITIMORTGAGE'S  MOTION TO DISMISS**


Alec W. Farr (D.C. Bar No. 440046)
Kristin A. Hird (D.C. Bar No. 497800)
BRYAN CAVE LLP
700 Thirteenth Street, N.W.
Washington, D.C.  20005
Tel:  (202) 508-6000
Fax:  (202) 508-6200

Counsel for Defendant CitiMortgage, Inc.


Dated:  February 5, 2007

# TABLE OF CONTENTS

**Page**

SUMMARY OF REPLY ................................................................................1

ARGUMENT ................................................................................................3

I.    PLAINTIFF HAS NOT OPPOSED DEFENDANT'S MOTION WITH RESPECT
      TO COUNT III, SUBSECTIONS (R) AND (X) OF COUNT VIII AND COUNT XI
      AND THOSE COUNTS MUST BE THEREFORE BE DISMISSED ...........................3

II.   PLAINTIFF'S FRAUD CLAIM (COUNT I) MUST BE DISMISSED FOR FAILURE
      TO PLEAD THE ALLEGATIONS OF FRAUD WITH PARTICULARITY AND
      FAILURE TO STATE A CLAIM .................................................................3

      A   Plaintiff Fails to Plead His Claim With Sufficient Particularity. ...............................4

      B.  Plaintiff Must Plead Allegations of Omission or Silence with Particularity
          as Well. ........................................................................................5

      C.  Plaintiff Bases His Claim on Impermissible Future Statements. ...............................6

      D.  The Alleged Fraudulent Misstatements Did Not Cause Reasonable Reliance. .........7

          1.  It Was Not Objectively Reasonable to Believe the Sept. 26 GFE Constituted a
              Loan ........................................................................................7

          2.  Plaintiff Does Not Allege that he Relied on the October 7 GFE .........................10

          3.  Plaintiff Cannot Show That Two of the Allegedly Fraudulent Statement Are Not
              True ........................................................................................10

III.  PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT II)
      MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM. ..............................11

      A.  Plaintiff Fails to Plead Facts With Sufficient Particularity ....................................11

      B.  Defendant CitiMortgage Did Not Owe Plaintiff a Duty of Care that can Form
          the Basis for a Negligent Misrepresentation Claim. ...........................................11

      C.  Plaintiff Cannot Show Reasonable Reliance on the Alleged Misrepresentations ...15

IV.   PLAINTIFF'S NEGLIGENT HIRING, TRAINING, SUPERVISION AND
      RETENTION CLAIM (COUNT IV) FAILS BECAUSE DEFENDANT DID
      NOT OWE A DUTY TO PLAINTIFF AND WAS NOT ON NOTICE OF THE
      ALLEGED VIOLATIONS. .......................................................................15

A.  Defendant Does Not Owe a Duty to Plaintiff. ............................................................ 15

B.  Defendant Was Not On Notice of the Alleged Violations....................................... 15

V.    PLAINTIFF'S PROFESSIONAL MALPRACTICE CLAIM (COUNT V) FAILS BECAUSE OSBORNE WAS NOT A MORTGAGE BROKER.................................. 17

VI.   PLAINTIFF'S NEGLIGENCE CLAIM (COUNT VI) FAILS BECAUSE CITIMORTGAGE DOES NOT OWE PLAINTIFF A DUTY OF CARE.................... 17

VII.  PLAINTIFF'S CONVERSION CLAIM (COUNT VII) FAILS BECAUSE CITIMORTGAGE DID NOT UNLAWFULLY POSSESS PLAINTIFF'S FUNDS... 18

VIII. PLAINTIFF'S CLAIMS UNDER THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT ("CPPA") MUST BE DISMISSED ............................................ 19

A.  Plaintiff Fails to State a Claim under § 28-3904(a) and (b)..................................... 19

B.  Plaintiff Fails to State a Claim Under § 28-3904(d)................................................. 21

C.  Plaintiff Fails to State a Claim Under § 28-3904(e) ................................................ 21

D.  Plaintiff Fails to State a Claim Under § 28-3904(f)................................................. 21

E.  Plaintiff Fails to State a Claim under § 28-3904(k).................................................. 22

F.  Plaintiff Fails to State a Claim under § 28-3904(u)................................................. 23

G.  Plaintiff Fails to State a Claim under § 28-3904(v)................................................. 24

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Alexis v. District of Columbia,*
   44 F. Supp. 2d 331 (D.D.C. 1999) ...............................................................12

*Anderson v. Wells Fargo Home Mortgage, Inc.,*
   259 F. Supp. 2d 1143 (W.D. Wash. 2003).................................................22

*College Sports Council v. Government Accountability Office,*
   421 F. Supp. 2d 59 (D.D.C. 2006) ...........................................................10

*Curaflex Health Services, Inc. v. Bruni,*
   877 F. Supp. 30 (D.D.C. 1995) ................................................................19

*Giles v. Shell Oil Corp.,*
   487 A.2d 610 (D.C. 1985) .......................................................................16

*High v. McLean Financial Corp.,*
   659 F. Supp. 1561 (D.D.C. 1987) .............................................................13

*Hite v. Leeds Weld Equity Partners, IV, LP,*
   429 F. Supp. 2d 110 (D.D.C. 2006) ............................................................5

*Jacques v. First National Bank of Maryland,*
   515 A.2d 756 (Md. 1986) ........................................................................13

*Kowal v. MCI Communications Corp.,*
   16 F.3d 1271 (D.C. Cir. 1994) .................................................................12

*National R.R. Passenger Corp. v. McDavitt,*
   804 A.2d 275 (D.C. 2002) .......................................................................13

*One-O-One Enterprise v. Caruso,*
   668 F. Supp. 693 (D.D.C. 1987), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988) .....................6

*Pannu v. Jacobson,*
   909 A.2d 178 (D.C. 2006) .......................................................................13

*Papasan v. Allain,*
   478 U.S. 265 (1986).................................................................................12

*Parker v. Columbia Bank,*
   604 A.2d 521 (Md. Ct. Spec. App.1992) ....................................................14

*S.E.C. v. Nacchio*,
    438 F. Supp. 2d 1266 (D.Colo. 2006).........................................................5

*Tokarz v. Frontier Federal Savings & Loan Association*,
    656 P.2d 1089 (Wash. Ct. App. 1982)......................................................14

### STATUTES AND RULES

D.C. Code § 28-3904 ............................................................................. passim

Wash.. Rev. Code § 19.86.020...................................................................22

### MISCELLANEOUS

12 Am. Jur. 2d § 1.....................................................................................12

18 Am. Jur. Proof of Facts 3d Mortgage Broker Liability § 9...........................................12

Defendant CitiMortgage, Inc. ("CitiMortgage") files this Reply Memorandum in further support of its Motion Dismiss Counts I through VIII and Count XI of the Complaint filed by Plaintiff Scott D. Pluta ("Plaintiff" or "Pluta").

## SUMMARY OF REPLY

Plaintiff's case rests entirely on his contention that the Good Faith Estimate issued on September 26, 2005 ("Sept. 26 GFE") actually constituted a "loan" or a binding commitment to issue a loan on precisely those terms. The facts, even as styled by the Plaintiff in his Complaint and Opposition, are clear that no such "loan" or commitment was created and, even assuming Plaintiff relied on any vaguely alleged statements by Mr. Osborne to the contrary, such reliance was facially unreasonable given the circumstances Plaintiff himself alleges. It is through this prism that all of Pluta's allegations and arguments must be viewed.

Pluta sought and received a Primary and Secondary loan in an arms-length business transaction between himself and CitiMortgage. Despite Pluta's lengthy detailing of his prior relationship with "Citi" businesses and his position as a first time homebuyer, Pluta prudently does not claim that these facts have any bearing on his legal position as a *customer* in an arms-length transaction. Pluta does not allege that a fiduciary relationship existed between Defendants and himself. Pluta does not allege that Osborne was acting as Pluta's agent. Indeed, Pluta specifically concedes that at all times, Osborne was working for CitiMortgage, stating that Osborne's desk was in a Citigroup branch office and "[a]t all times Osborne represented himself as an agent of CitiMortgage." (Compl. ¶ 19.) Pluta was aware, at all times, that Osborne worked for CitiMortgage and that CitiMortgage and Pluta were in an arms-length relationship in which Pluta sought financing for his $675,000 condominium of choice.

Pluta, in fact, received mortgage financing from CitiMortgage and closed on his condominium on schedule. Pluta does not allege that he was pressured by CitiMortgage or any

of its employees to close on the loan at the terms offered on the day of closing. Pluta does not allege that he ever sought to cancel the loan or postpone the property closing. Additionally, although Pluta feigns outrage at CitiMortgage's statement that the $20,250 increase (over 30 years) in the cost of his loan was "moderately more expensive" than the GFE terms, this amount represents a mere 3.4% increase in the loan's cost[1], and by all rational measurements, is only "moderately more expensive" when compared to the total cost of the transaction. (Opp'n at 2.)

Moreover, Pluta's Opposition does nothing to support his cornerstone contention that a "loan" or commitment to lend on the precise September 26, 2005 GFE terms was created in the September 26 meeting with Osborne. Plaintiff maintains that Osborne's vaguely alleged representation that a loan "could" be made on such terms constituted a binding commitment that such a loan was, at that time, already "secured." (Compl. ¶¶ 35, 49, Opp'n at 1.) At the same time, however, Pluta acknowledges that he possessed the Truth in Lending Disclosure attached to the Sept. 26, 2005 GFE, which clearly stated in bold that "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." (Compl. Ex. 1.) Pluta also acknowledges (1) that he needed to submit, and did submit, significant additional financial information on September 28, 2005 and (2) that he knew that CitiMortgage would have to underwrite and process the loan – which obviously included the possibility that the September 26 GFE terms would be declined. (Compl. ¶ 46.) Additionally, the internal emails cited by Pluta show that CitiMortgage issued a *counteroffer* to the Sept. 26 GFE terms. (Compl. ¶ 53.) Even assuming, as Pluta claims, that some "terms" were allegedly "lost" by Osborne's actions or inactions, Pluta's own allegations confirm that it would have to have been the *counteroffer* terms that were purportedly lost, not the Sept. 26 GFE terms. Nothing Osborne is alleged to have done (or failed to do) "lost" the Sept.

---

[1] Plaintiff's loan, at the alleged 5.775% rate, would cost $594,467.68 in interest over the 30-year term of the loan. The increased cost of $20,250 represents an increase of 3.4%.

26 GFE terms because, according to Pluta's own allegations, CitiMortgage's underwriters "countered" those terms. (Compl. ¶ 53.)

Pluta and CitiMortgage engaged in an arms-length business transaction which created no greater duties than were created by the terms of the contract. At the time Pluta claims he believed a "loan" existed, he possessed a document clearly stating that the terms therein constituted neither a contract nor a commitment to lend. Pluta ultimately closed on financing that was only moderately more expensive on the expected date of the closing and under no duress from CitiMortgage employees. Even assuming that Plaintiff's allegations of poor customer service are true, such allegations are insufficient to support Plaintiff's grandiose claims of fraud, negligence, and "predatory lending," all of which must be dismissed.

## ARGUMENT

**I. PLAINTIFF HAS NOT OPPOSED DEFENDANT'S MOTION WITH RESPECT TO COUNT III, SUBSECTIONS (R) AND (X) OF COUNT VIII AND COUNT XI AND THOSE COUNTS MUST BE THEREFORE BE DISMISSED.**

Plaintiff does not oppose Defendant's Motion to Dismiss Count III, Negligent Infliction of Emotional Distress, sections § 28-3904(r) and § 28-3904(x) in Count VIII, District of Columbia Consumer Protection Act Claims, and Count XI, Unconscionability. Accordingly, these counts and claims must be dismissed.

**II. PLAINTIFF'S FRAUD CLAIM (COUNT I) MUST BE DISMISSED FOR FAILURE TO PLEAD THE ALLEGATIONS OF FRAUD WITH PARTICULARITY AND FAILURE TO STATE A CLAIM.**

The crux of Plaintiff's entire case is his alleged belief that a "loan" or commitment to lend on the precise terms stated in the Sept. 26 GFE was somehow created in Pluta's September 26 meeting with Osborne. (Compl. ¶ 35.) If no "loan" or commitment to lend on precisely those terms was created in that meeting – which it was not – then Plaintiff's fraud claim has no basis

whatsoever because Plaintiff concedes he ultimately received the loan for which he qualified, albeit on terms moderately less advantageous than those set forth in the Sept. 26 GFE.[2/] Plaintiff's claims therefore depend entirely upon his ability to allege that some specific oral representation by Osborne regarding the Sept. 26 GFE was somehow sufficient to supercede the clearly written statement on the Truth in Lending Disclosure attached to the Sept. 26, 2005 GFE, stating in bold that "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." (Compl. Ex. 1.) It is precisely these alleged statements which are not pled with particularity and it is precisely this logical gap in his case that Plaintiff attempts to bridge by reference to statements of future intent that are not actionable. Plaintiff's fraud claim must fail.

### A. Plaintiff Fails to Plead His Claim With Sufficient Particularity.

Plaintiff erroneously claims that he has provided enough detail to alert Defendant CitiMortgage to the "particular circumstances" against which CitiMortgage will need to prepare a defense. (Opp'n at 7-8.) In support of this contention, Plaintiff cites such allegations as "Osborne confirmed that the terms of the Sept. 26 Loan had been secured and represented to Plaintiff that the loan was processing normally." (Compl. ¶ 49.) In light of the fact that the very existence of a so-called Sept. 26 "loan" is in dispute and forms the crux of Plaintiff's claims, it is insufficient for Plaintiff to rely solely on his own general summary of the content of Osborne's alleged representations, particularly in light of the clear written disclaimer in the documents Plaintiff relies upon. Plaintiff does not detail what Osborne said to "confirm" (to use Pluta's words, not Osborne's alleged words) that it was the Sept. 26 GFE terms under discussion rather than a loan with terms to be confirmed through underwriting. Nor does Plaintiff provide the context in which the term "processing" was purportedly used. Likewise, vague allegations that Osborne "represent[ed] to Plaintiff and Plaintiff's Real Estate Agent on multiple occasions that

---

[2/] All of Plaintiff's other tort and statutory claims would fall away on that basis as well.

the loan was secured and in process" provides only a general summary of Plaintiff's complaint and does not provide the requisite details to sustain a fraud claim. In short, CitiMortgage is not asking for "elaborate factual details," (Opp'n at 6) but is merely asking for enough specific information to defend against Plaintiff's claim. If, as appears to be the case, Plaintiff cannot provide more specific allegations in good faith on this absolutely critical matter, then Plaintiff's claim must be dismissed.

### B.    Plaintiff Must Plead Allegations of Omission or Silence with Particularity as Well.

Plaintiff also claims that he need not detail alleged instances of nondisclosure due to relaxed pleading requirements for omissions and silence, citing a District Court of Colorado case, *S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006) as support. This argument is without merit. This Court has stated that "[f]raud claims alleging omissions rather than affirmative misstatements also must meet the standard of Rule 9(b)." *Hite v. Leeds Weld Equity Partners, IV, LP*, 429 F. Supp. 2d 110, 115 (D.D.C. 2006). The court takes each allegation of fraud – whether one of omission or affirmative misstatement – individually, and under Rule 9(b) the plaintiff must plead with particularity the circumstances such as the "'time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.'" *Id.* (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996)).

Moreover, Plaintiff's argument that he provides specific instances in which Osborne allegedly should have spoken but did not is baseless. In Plaintiff's own cited example, he asserts that Osborne allegedly did not "tell the truth" (Opp'g at 9) but cannot allege that Osborne's statement was false without relying on the premise – not pled with particularity – that a commitment to lend on the September 26 GFE terms had already been created by Osborne's

previous alleged misrepresentations.    Plaintiff alleges that Osborne told Plaintiff that CitiMortgage was "no longer willing" to do the financing with a 10% down payment. (Compl. ¶ 66.)  Plaintiff's own allegations confirm that this was, in fact, true: CitiMortgage was not willing to provide the financing with a 10% down payment based on Plaintiff's financial profile.    As Plaintiff's complaint shows, CitiMortgage set the loan terms in order "to keep DTI [debt-to-income ratio] under 55%."  (Compl. ¶ 65.)  Plaintiff then alleges in his Opposition that the additional 2.5% down payment was required to "secure a loan Plaintiff had never seen and to replace the one Osborne had lost."  (Opp'n at 9.)  This representation – that Osborne "lost" a "loan" – underscores that it is crucial to Plaintiff's case that the Sept. 26 GFE was actually a "loan," not simply what the GFE stated it was on its face.  In fact, the 2.5% down payment was required to secure a large enough loan to finance Plaintiff's chosen condominium.

### C.    Plaintiff Bases His Claim on Impermissible Future Statements.

Plaintiff argues that Osborne's alleged statement that CitiMortgage "could" finance Plaintiff's chosen condominium with an annual rate of 5.775% and that Plaintiff would have to provide a 10% down-payment to "get the deal done" constitute a misrepresentation of an existing fact. (Compl. ¶ 35; Opp'n at 10.)  Plaintiff confuses an allegedly certain future event with a past or existing fact.  "An action based on fraud 'can only be predicated on misrepresentation of past or existing fact; breach of future promises lies in the realm of the contract.'"  *One-O-One Enter v. Caruso*, 668 F. Supp. 693, 699 (D.D.C. 1987), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988).

Osborne's alleged promise – even if it had been alleged with sufficient particularity – involves a future act, *i.e.* that CitiMortgage – not Osborne personally – could provide financing at a certain rate, but that option would not even be available unless Plaintiff provided a 10% down payment.  The caveat that the 10% down payment was necessary in order "get the deal

done," however, does nothing to transform this statement into a statement of existing fact. In fact, Plaintiff implicitly acknowledges as much by arguing that the statement is "transform[ed]" into a "certain event" in which CitiMortgage "would" finance the condominium. (Opp'n at 10.) Plaintiff's own allegations show that the condominium was not presently financed at the allegedly offered terms, and thus any representations in this regard are a future promise. Plaintiff does not allege that Osborne knew on September 26, 2005 that CitiMortgage would *not* make the loan at the Sept. 26 GFE rates. Thus, there can be no argument that Osborne had definite knowledge at the time of the statement that the event would not occur.

Plaintiff's contention concerning Osborne's alleged statements at the closing suffers from the same problem. Again, Plaintiff seeks to show that Osborne represented, with certainty, that he "would correct the discrepancies." This alleged statement is clearly one involving a future event and not a past or existing fact. Plaintiff does not allege that Osborne had definite knowledge at the time that an adjustment would *not* be made, nor does Plaintiff allege that Osborne had definite knowledge that there was *not* a time during which an adjustment *could* be made. Thus, neither of these alleged representations, even if accepted as true, are actionable misrepresentations.

### D.    The Alleged Fraudulent Misstatements Did Not Cause Reasonable Reliance.

#### 1.    It Was Not Objectively Reasonable to Believe the Sept. 26 GFE Constituted a Loan.

Plaintiff cannot show that his alleged reliance on Osborne's purported statements was objectively reasonable for several reasons.

First, Plaintiff's attempt to downplay the significance of the Sept. 26 GFE is unavailing. The GFE and attached Truth in Lending Disclosure are the only proof of the rates that Plaintiff is

trying to enforce against CitiMortgage. Plaintiff attaches the Sept. 26 GFE to his Complaint and uses it as the basis for Osborne's alleged representation that CitiMortgage could provide such financing. (Compl. ¶¶ 34-35.) Plaintiff alleges that it is the terms contained in the Sept. 26 GFE that constitute his "Sept. 26 Loan offered by CitiMortgage and Osborne." (Compl. ¶ 37.) Plaintiff is seeking to enforce the terms contained in the Sept. 26 GFE, and not contained anywhere else, against CitiMortgage in this lawsuit.

It is understandable that Plaintiff would like to minimize his reliance on the Sept. 26 GFE in light of its clear disclaimer that "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." (Compl. Ex. 1.) Plaintiff's claims depend wholly on the premise that it was reasonable to rely on Osborne's alleged oral representations that Plaintiff needed only to offer a 10% down payment to "get the deal done" (Compl. ¶ 35), that Plaintiff could "get locked in" (Compl. ¶ 37), or that the terms were secured (Compl. ¶¶ 49, 50) despite the clear written warning in the GFE that no such commitment existed. Simply put, Plaintiff, currently a sophisticated attorney practicing at a big law firm, cannot show that it was objectively reasonable to rely on these purported oral representations, particularly when Plaintiff does not allege that Osborne advised Plaintiff to disregard the clear written statement on the GFE, a document Plaintiff concedes he possessed.

Second, Plaintiff's attempt to bolster his reasonable reliance claim by asserting that he was not aware that he was at the beginning of the loan process when he received the Sept. 26 GFE is baseless. Again, Plaintiff's own Complaint belies his argument. Plaintiff acknowledges that he provided additional financial information after September 26, 2005. (Compl. ¶ 46.) Plaintiff acknowledges that the loan was being submitted to the CitiMortgage underwriters. (Id.) Plaintiff acknowledges – indeed makes much of – the fact that Osborne represented through the

following few weeks that the loan was in processing and, alternatively, in underwriting. (Compl. ¶¶ 49, 50, 60, 98.) Plaintiff acknowledges that his own Real Estate Agent stated that the loan was in underwriting "so that's a good sign" (a clear recognition on her part and another warning to Plaintiff that the loan was not in fact "secure"). (Compl. ¶ 60.) In the face of Plaintiff's knowledge, as established in his own Complaint, and the clear warning on the GFE, it would not have been objectively reasonable for Plaintiff to rely on Osborne's vaguely alleged misrepresentations that the GFE terms issued on September 26, 2005 were enforceable as a loan commitment.

Third, Plaintiff's argument that CitiMortgage possessed sufficient information to make a loan of the magnitude Plaintiff sought based on information already in their possession is disproved by the allegations in the Complaint. Plaintiff readily concedes that on September 28, 2005, he provided "a large stack of documents to the Farragut North Citigroup Branch that Osborne had instructed Plaintiff to collect for the CitiMortgage 'underwriters' at their September 26, 2005, meeting." (Compl. ¶ 46.) Plaintiff acknowledges in this statement that his so-called "loan" had not even gone into underwriting at that time. Furthermore, Plaintiff never alleges that he could obtain financing had he not provided those documents – documents that Plaintiff himself refers to as the "Closing Documents". Despite Plaintiff's attempt to represent that CitiMortgage had sufficient financial information to provide him with nearly $600,000 in financing as of September 26, 2005, Plaintiff's own Complaint reveals that it would not have been reasonable to expect CitiMortgage to do so in the absence of the additional financial information and the opportunity to underwrite and process the loan application.[3]

---

[3] Plaintiff rests some of his argument on the notion that as a customer of Citibank, Citicorp Investment Services, and CitiAssist, CitiMortgage would possess additional or unique information about his financial profile. Plaintiff has not, however, alleged that these separate corporations share information about their customers.

**2.  Plaintiff Does Not Allege that he Relied on the October 7 GFE.**

Plaintiff shows a fundamental misunderstanding of reasonable reliance in arguing that the October 7 GFE is in any way significant to his fraud claims. A misrepresentation that does not induce action in reliance cannot form the basis for a fraud claim. *College Sports Council v. Government Accountability Office*, 421 F. Supp. 2d 59, 70 (D.D.C. 2006) (dismissing plaintiff's fraud claim because plaintiff failed to allege that plaintiff relied to its detriment on the alleged misstatements). Plaintiff concedes in the Complaint that he never saw the October 7 GFE until the date of closing. (Compl. ¶ 84). Plaintiff therefore cannot have taken any action in reliance upon the October 7 GFE. CitiMortgage does not, as Plaintiff suggests, argue that "the GFE is [a] document devoid of significance." (Opp'n at 13.) CitiMortgage simply points out that the October 7 GFE cannot have induced Plaintiff to close on the loan when Plaintiff himself states that he never saw the document prior to closing. Consequently, as a matter of law, this document – whether a misrepresentation or not – is wholly irrelevant to Plaintiff's fraud claims.

**3.  Plaintiff Cannot Show That Two of the Allegedly Fraudulent Statements Are Not True.**

Plaintiff disputes CitiMortgage's showing that two of Osborne's alleged misstatements were true, arguing that Osborne's alleged misrepresentations that Plaintiff's loan was in processing and that CitiMortgage needed an additional 2.5% down payment in order to issue the loan were untrue because Osborne allegedly "knew the Sept. 26 loan had been lost." (Opp'n at 14.) Again, Plaintiff's argument rests on the premise that a loan, capable of being enforced on precisely those terms, existed as of Sept. 26. In reality, Plaintiff's own Complaint shows that Osborne was processing Plaintiff's application at the time (Compl. ¶ 59, Def.'s Br. at 8) and that CitiMortgage required an additional down payment in order to keep Plaintiff's debt-to-income

("DTI") ratio within basic lending guidelines. (Compl. ¶ 65, Def.'s Br. at 9.) Because these allegations are true, they cannot form the basis for a fraud claim.

### III. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM (COUNT II) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

#### A. Plaintiff Fails to Plead Facts With Sufficient Particularity.

As detailed in Section I.A., *supra*, Plaintiff fails to plead the facts underlying his negligent misrepresentation and fraud claims with sufficient particularity and improperly relies on predictive statements about future events. Plaintiff's negligent misrepresentation claims must be dismissed for the same reasons discussed above in connection with his fraud claim.

#### B. Defendant CitiMortgage Did Not Owe Plaintiff a Duty of Care that can Form the Basis for a Negligent Misrepresentation Claim.

There is no dispute that the mortgage transaction at issue was an arms-length business deal. Plaintiff prudently does not allege that any special or fiduciary relationship was formed with Osborne or with CitiMortgage by his mere application for a loan. Rather, Plaintiff argues that Defendant CitiMortgage's duty arises on three grounds – vicarious liability through its agent, Osborne, an independent duty in selecting, supervising, and retaining its employees and/or through statutory provisions. None of these doctrines establish a duty of care and thus Plaintiff's negligence claims must fail on this separate ground as well.

First, Plaintiff's Complaint and Opposition are clear that Osborne acted, at all times, as an employee of CitiMortgage involved in processing a loan application for a potential borrower. Despite Plaintiff's disingenuous attempt to now characterize Osborne in his Opposition as a "mortgage lending agent/broker," it is clear from Plaintiff's Complaint that Osborne was not acting as a mortgage broker, but was instead a "CitiMortgage employee" and a "CitiMortgage Lending Agent" (Opp'n at 17; Compl. ¶¶ 5, 19.) In fact, just as Plaintiff does not assert that he

had a fiduciary relationship with Osborne, neither does he assert that Osborne was a mortgage broker working for Plaintiff and tasked with finding and negotiating a deal among lenders. It is also uncontested that Osborne only worked for CitiMortgage as its lending agent. Thus, any tort duty that Osborne may have to Plaintiff can only arise from the general relationship between a lender and its borrowing customer. As discussed below, no such tort duty exists.

Perhaps recognizing the absence of a duty between a lender and borrower, Plaintiff attempts to impose a heightened duty of care by incorrectly characterizing Osborne as a broker.[4] Plaintiff relies generally on Prosser and Keeton and American Jurisprudence[5] to establish that "brokers" have a heightened duty of care. This may be true, but these very authorities establish that Osborne is not a broker. As described in American Jurisprudence, "a broker is an agent who, for a commission or brokerage free, bargains or carries on negotiations on behalf of a principal as an intermediary between the latter and third persons in transacting business…" 12 Am. Jur. 2d, Brokers § 1. Osborne was not Plaintiff's broker, independently negotiating a deal between Plaintiff and a third party. Plaintiff does not assert that Osborne could or did solicit any other mortgage companies, nor does Plaintiff assert that he expected Osborne to engage in such solicitation. To the contrary, Plaintiff contacted Osborne because Plaintiff sought a CitiMortgage loan and he knew Osborne was a CitiMortgage employee, capable of offering only CitiMortgage products. (Compl. ¶¶ 5, 18, 19.) Thus, it is unsurprising that even where Plaintiff specifically cites case law, it is only for the general proposition that certain professionals – such

---

[4] In addition to the facts alleged in the Complaint, Plaintiff's argument relies heavily on his own legal conclusions. It bears repeating that while the Court accepts facts pled in the complaint at the motion to dismiss stage, the Court need not accept legal conclusions cast in the form of factual allegations, nor must the Court accept inferences drawn by the plaintiff if the inferences are unsupported by the facts set out in the complaint. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)); *Alexis v. District of Columbia,* 44 F. Supp. 2d 331, 337 (D.D.C. 1999) ("the court need not accept as true the plaintiffs' legal conclusions").

[5] While Plaintiff cites 18 Am. Jur. 3d, Mortgage Broker Liability § 9, the correct cite is 18 Am. Jur. Proof of Facts 3d, Mortgage Broker Liability § 9.

as the neurosurgeon in *Pannu v. Jacobson*, 909 A.2d 178, 192 (D.C. 2006) – are held to the

standards of their profession.[6]  Plaintiff, however, offers no legal support for the proposition that

an employee of a lender is subject to a heightened or special standard of care *to the customers of*

*the bank*.  The fact that Plaintiff repeats his legal conclusion in his Complaint and Opposition –

that "[t]he duty of reasonable care requires that those with special training and experience adhere

to a standard of conduct commensurate with such attributes" and "Osborne was a CitiMortgage

Lending Agent with special training and experience in the mortgage lending industry" – does not

make it true.  As it is conceded in the Complaint that Osborne was not a broker working for

Plaintiff, Plaintiff's argument that Osborne's position carries an independent duty of care cannot

stand.

      Plaintiff next alleges that CitiMortgage owes Plaintiff an independent common law duty

of care, citing *High v. McLean Financial Corp.*, 659 F. Supp. 1561 (D.D.C. 1987) as his only

support.  The *High* case, however, does not establish any such black-letter law principle.  First,

the *High* Court recognized that whether a bank owes a duty of care in processing a loan

application was a question of first impression and one that the Court would certify to the D.C.

Court of Appeals if permitted.  *Id.* at 1570.  Noting that the District of Columbia traditionally

looks to the State of Maryland for its common law, the Court then adopted the reasoning of

*Jacques v. First National Bank of Maryland*, 515 A.2d 756 (Md. 1986), a case which itself rested

upon the fact that a contract equivalent, with consideration in the form of processing fees, was

established between the parties.  *Id.* at 761.  Unlike in the *High* and *Jacques* cases, no such

consideration or contractual equivalent is alleged to exist in this case.  Rather, as in another

---

[6]  Plaintiff's only other cited case, *National R.R. Passenger Corp. v. McDavitt*, 804 A.2d 275, 285 (D.C. 2002), does not stand for this proposition.  Indeed, *National Railroad* found that the railroad personnel responsible for overseeing the trains were subject to the standard of what "'reasonable and prudent [persons] would ordinarily have done under the circumstances of the situation.'" (citations omitted).

Maryland case, *Parker v. Columbia Bank*, 604 A.2d 521 (Md. Ct. Spec. App. 1992), there is no contractual premise to provide a predicate for a tort duty of reasonable care. As in *Parker*, in the absence of allegations creating "special circumstances"[7] such as existed in *Jacques*, a customer – even a residential borrower claiming to be unsophisticated in real estate matters – cannot "'abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a *conscious assumption* of such duties by the one sought to be held to be liable as a fiduciary.'" *Id.* at 533 (quoting *Denison State Bank v. Maderia*, 640 P.2d 1235, 1243 (Kan. 1982)). In short, "a lender owes no duty of care to its borrower" and tort claims dependent upon a duty of care must be dismissed. *Id.* at 535.

Lastly, Plaintiff's contention that four statutes create a duty of care between a lender and a customer are groundless. Plaintiff cites two statutes, the Real Estate Settlement Procedures Act ("RESPA") and the D.C. Mortgage Lender and/or Broker Act of 1996 ("MLBA"), that he did not plead as a basis for any claim in his Complaint. Moreover, Plaintiff does not cite a single authority for the proposition that any one of these statutes creates a duty of care sufficient to support a negligence claim. Instead, Plaintiff falls back on the position that the statutes "enhance[] the duty of care for mortgage professionals" "greatly expand a mortgage lenders [sic] duty to disclose" and confer an "enhanced duty of care." (Opp'n at 19). In fact, much of this section is consumed by Plaintiff's allegation that CitiMortgage violated the oath accompanying its license application under the MLBA. This tangent, and Plaintiff's claims of an "enhanced" duty of care, have no legal bearing, and Plaintiff cites no case law for the proposition that the

---

[7] The *Parker* Court looked to the case *Tokarz v. Frontier Federal Savings & Loan Ass'n*, 656 P.2d 1089 (Wash. Ct. App. 1982) for its enunciation of four "special circumstances" which might create an additional duty between a lender and borrower. These four factors are: (1) the lender's assumption of extra services on behalf of the borrower other than furnishing loan money, (2) the lender's receipt of greater economic benefit from the transaction in addition to the mortgage itself, (3) the lender's exercise of control over the construction or sales contract, or (4) direct questions from the borrower regarding a specific matter other than the loan itself. *Id.* at 1094. Notably, Plaintiff does not allege any facts sufficient to support an argument that any of these factors apply in the case at hand.

MLBA, or any of the other three statutes, establish a tort duty of care between a lender and a borrower.

**C.    Plaintiff Cannot Show Reasonable Reliance on the Alleged Misrepresentations.**

As detailed in Part I.C., *supra*, it was not objectively reasonable for Plaintiff to rely on the alleged misrepresentations.  Plaintiff claims that CitiMortgage had Plaintiff's "complete" financial profile prior to Sept. 26, 2005 and thus Plaintiff reasonably relied on the Sept. 26 GFE. This claim cannot stand.  Plaintiff was asked to submit, and did submit, a "large stack" of financial documents for the CitiMortgage underwriters after Sept. 26, 2005.  (Compl. ¶ 46.)  For Plaintiff's argument to stand, those documents would be unnecessary and the underwriters absolutely irrelevant.  Consequently, Plaintiff cannot show that his reliance on the Sept. 26 GFE was objectively reasonable and thus cannot meet the second element of his negligent misrepresentation claim.

**IV.    PLAINTIFF'S NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION CLAIM (COUNT IV) FAILS BECAUSE DEFENDANT DID NOT OWE A DUTY TO PLAINTIFF AND WAS NOT ON NOTICE OF THE ALLEGED VIOLATIONS.**

**A.    Defendant Does Not Owe a Duty to Plaintiff.**

As discussed in Section II.B., *supra*, Defendant does not owe a tort duty of care to Plaintiff.  Thus, Plaintiff cannot establish a negligent hiring, training, supervision or retention claim as a matter of law.

**B.    Defendant Was Not On Notice of the Alleged Violations.**

Plaintiff claims that he alleges three facts that lead to a "logical inference of notice." None do.

First, Plaintiff claims that on or about December 13, 2005, Plaintiff spoke to Osborne's manager, Reginald Moore and "recounted to Moore his experience with Osborne and the discrepancies with his loans." (Compl. ¶ 94.)  Plaintiff claims Moore then stated that he had "inherited that headache." *Id.*  Even assuming this allegation is true, Moore's statement that he "inherited that headache," without more, cannot show that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner." *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985).  Plaintiff takes this alleged statement and presumes that it must mean that Osborne has a history of serious problems, rising to the level of dangerous or incompetent behavior, of which Moore was aware.  In fact, the alleged comment has no such import on its face.

Plaintiff's other allegations do nothing to support his claim that CitiMortgage knew or should have known that Osborne was allegedly behaving in a dangerous or otherwise incompetent manner.  Plaintiff identifies the internal emails and claims that they "demonstrate definitively that Osborne's superiors were on notice that he had lost Plaintiff's Sept. 26 Loan through his knowing violation of CitiMortgage policy." (Opp'n at 22.)  Again, this email does not, in any way, show that Osborne acted in a dangerous or incompetent manner.  First, the email cited by Plaintiff is in reference to a counter-offer – not an alleged Sept. 26 loan – made by CitiMortgage.  (Compl. ¶ 53.)  Thus, there is no implication that CitiMortgage knew that a "loan" had been "lost" because none was.  Second, according to the email chain cited by Plaintiff, CitiMortgage advised Osborne to resubmit the loan application. (Compl. ¶ 57.)  There is no indication that any terms had been lost, or that Plaintiff would not subsequently receive the terms for which his application qualified him.  The best Plaintiff can show, even assuming all his allegations are true, is that CitiMortgage knew Osborne did not accept the counteroffer within

the standard time and that Osborne would have to resubmit the loan application for reprocessing, which he did. Under Plaintiff's theory, any deviation by any employee from any policy would constitute employer knowledge of "dangerous or otherwise incompetent" behavior. This is not the law.

Lastly, Plaintiff states, upon information and belief, that Osborne was fired "within months of Plaintiff's Condominium closing [date]." (Compl. ¶ 95.) Again, even assuming *arguendo* for the purpose of this motion only that Osborne was fired, this allegation carries no legal significance. Plaintiff does not even allege a reason for Plaintiff's alleged termination. Osborne was an employee at will. Employees at will are terminated or resign for reasons too numerous to detail here. The mere fact that an employee is no longer with a company cannot serve as a sufficient allegation that an employer knew or should have known an employee was acting in a dangerous or incompetent manner.

## V.  PLAINTIFF'S PROFESSIONAL MALPRACTICE CLAIM (COUNT V) FAILS BECAUSE OSBORNE WAS NOT A MORTGAGE BROKER.

As detailed above in Section II.B., *supra*, Osborne is not a mortgage broker. He is not an independent intermediary between Plaintiff and third parties, and as such, does not owe the duty of a mortgage broker to Plaintiff. Thus, Plaintiff cannot establish that Osborne was required to act or failed to act with the "skill, prudence, and diligence" that other mortgage brokers may possess. Accordingly, Plaintiff also cannot show that his alleged injury had any causal relationship to Osborne's nonexistent deviation.

## VI.  PLAINTIFF'S NEGLIGENCE CLAIM (COUNT VI) FAILS BECAUSE CITIMORTGAGE DOES NOT OWE PLAINTIFF A DUTY OF CARE

As discussed in Section II.B., *supra*, CitiMortgage does not owe Plaintiff a duty of care. Thus, his negligence claim cannot stand as a matter of law.

**VII.    PLAINTIFF'S CONVERSION CLAIM (COUNT VII) FAILS BECAUSE CITIMORTGAGE DID NOT UNLAWFULLY POSSESS PLAINTIFF'S FUNDS**

Plaintiff claims that CitiMortgage's possession of the funds transferred to execute a mortgage loan and close on his condominium is unlawful because he learned he needed to bring more money to the closing a day in advance of the scheduled closing (Compl. ¶ 66), had to pay fees to Citigroup (not CitiMortgage) (Compl. ¶ 70), and CitiMortgage has failed to change the terms of his loan and is collecting fees and interest not contracted for under the Sept. 26 "loan." As a matter of law, none of these allegations, even if true, can support a claim for conversion.

Plaintiff claims that his lack of "meaningful choice" (Compl. ¶ 137(a)) renders CitiMortgage's possession of the additional $17,500 as part of a down payment unlawful. Plaintiff does not, however, plead facts sufficient to show that he did not act freely in bringing the requested down payment to the closing and executing the loan documents. In fact, Plaintiff's Complaint reveals a purchaser determined to close on the condominium of his choice even after learning of the alleged change in terms and additional necessary down payment. Plaintiff does not allege that he expressed a desire not to close on the terms of the loan after he learned of the offered terms. Plaintiff does not allege that he was forced by any CitiMortgage employee to close on the loan at the offered terms. In short, Plaintiff, even by his own allegations, learned of the offered terms twenty-four hours in advance and subsequently took actions to ensure that the closing occurred, including executing financial transactions and providing additional documentation to CitiMortgage. (Compl. ¶¶ 70, 72, 74.) These actions are inconsistent with a claim that Plaintiff did not provide the funds voluntarily.

Plaintiff then claims that he demanded the return of his additional down payment funds and cites paragraphs 86 to 95. A review of these paragraphs shows no such demand. Plaintiff

does not allege that he ever sought to rescind the loan and recover his down payment (and give up his condominium). Plaintiff merely alleges that he attempted to "resolve the issues," asked Osborne to "explain" the differences in his terms, and "attempt[ed] to settle" the matter. (Compl. ¶¶ 87, 89, 96.) At best, these allegations show that Plaintiff was unhappy with the loan terms on which he closed. None of these allegations are sufficient to show a demand for return of the additional down payment funds.

Lastly, Plaintiff claims that he has a claim for conversion for the interest or fees collected under the terms of the executed loan. Plaintiff's claim fails as a matter of law. "Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money." *Curaflex Health Servs., Inc. v. Bruni*, 877 F. Supp. 30, 32 (D.D.C. 1995). Where the plaintiff has only a contract right to the money, but no property right, a conversion claim cannot be sustained. *Id.* In *Curaflex*, for example, plaintiff claimed that it was owed a specific and identifiable fund of money where defendants collected revenues and failed to segregate the funds or transfer the allotted percentage to plaintiff under a contract agreement. The *Curaflex* Court held on summary judgment that plaintiffs had a contract right to the funds owed, but that the agreement did not create a property right in a specific and identifiable fund of money. *Id.* In a similar situation here, Plaintiff cannot show that he has a property interest in the interest or fees collected under the loan agreement. He may have a contract dispute for the fees and interest, but he does not have a conversion claim.

## VIII. PLAINTIFF'S CLAIMS UNDER THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT ("CPPA") MUST BE DISMISSED.

### A. Plaintiff Fails to State a Claim under § 28-3904(a) and (b).

In an attempt to salvage his claim under § 28-3904(a), Plaintiff overreaches in his description of his own allegations. First, Plaintiff argues that he has pled that CitiMortgage

approved the terms of the Sept. 26, 2005 "loan." Plaintiff alleges no such thing. Plaintiff's Complaint merely states that Osborne represented that CitiMortgage "could" finance the condominium, and "in order to qualify for these terms," Plaintiff would have to offer a 10% down payment to "get the deal done." (Compl. ¶ 35.) Even assuming this statement is true, it does not constitute an allegation that the Sept. 26 GFE carries with it an "approval" that it did not have.

Second, Plaintiff uses the same allegation in his Complaint to suggest that he has alleged that the services have "characteristics" that they do not have. Again, Plaintiff's allegations in paragraph 35 say nothing more than that Plaintiff had to offer to put down a 10% down payment in order to qualify for the terms offered in the Sept. 26 GFE. This allegation is insufficient to support a claim that CitiMortgage represented that the services offered had characteristics that they did not have.

Lastly, Plaintiff states that he alleges that the services have "benefits" that they do not have, again citing this same paragraph 35. The Sept. 26 GFE stated terms for which Plaintiff might qualify if he agreed to offer a 10% down payment. Plaintiff cannot show that CitiMortgage represented that the services had any benefit that they did not actually possess on the basis of this allegation.

Plaintiff's claim under § 28-3904(b) rests again on this overburdened paragraph 35. Plaintiff's allegation that Osborne stated Plaintiff would need to increase his down payment to 10% to "get the deal done" does not show, as Plaintiff argues, that Osborne represented that he had the approval authority to bind CitiMortgage into a loan. As the Sept. 26 GFE issued by Osborne clearly states, the GFE is not a loan or a commitment to lend. Thus, this allegation cannot support Plaintiff's claims under § 28-3904(b).

### B.    Plaintiff Fails to State a Claim Under § 28-3904(d).

Plaintiff applied for and received a Primary and Secondary loan to use in purchasing a condominium of his choice and Plaintiff did, in fact, receive a Primary and Secondary loan and closed on that condominium. That the rates for which Plaintiff qualified increased the costs on the Primary loan by 3.4% does not make for a "high stakes bait-and-switch." Rather, Plaintiff received the products he requested in order to complete the sale he desired.

### C.    Plaintiff Fails to State a Claim Under § 28-3904(e).

As detailed above in Section I.D., *supra*, Plaintiff cannot show that he reasonably relied on the alleged misstatements. Plaintiff turns to his same arguments here as in his fraud claim, arguing that the Sept. 26 GFE was actually a "loan" when, by the very terms of the GFE incorporated into the Complaint, it clearly was not. For the reasons detailed extensively above, Plaintiff's claim is unavailing. He cannot show that it was reasonable to rely on a document that stated it was neither a commitment nor a loan and a statement that CitiMortgage could finance the loan but would require a 10% down payment to qualify for the terms and "get the deal done," made by an agent requesting a "large stack" of additional financial information that Plaintiff submitted two days later. (Compl. ¶¶ 35, 46).

### D.    Plaintiff Fails to State a Claim Under § 28-3904(f).

Plaintiff argues to this Court that "Osborne and his superiors, were well aware that the Sept. 26 Loan had been lost." (Opp'n at 34.) In fact, even accepting Plaintiff's conclusory statement in argument as true, Plaintiff still cannot allege that an enforceable loan existed as of Sept. 26, 2005. Plaintiff also does not allege facts showing that such loan "had been lost." As of Sept. 26, 2005, Plaintiff had submitted an application and some supporting documents. Osborne allegedly stated that Plaintiff needed to offer at least a 10% down payment in order to "get the

deal done" and qualify for the offered rates. (Compl. ¶ 35.) Plaintiff received and admittedly possessed a document stating in bold that "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." (Compl. Ex. 1.) Plaintiff argues that Osborne's failure to inform Plaintiff that the Sept. 26 "loan" had been lost cannot be sustained in light of the fact that a "loan" was not created on Sept. 26.

Plaintiff urges the Court to overlook this problem and adopt a *per se* rule that violations of disclosure statutes amount to *per se* violations of the CPPA. In support, Plaintiff cites a case out of the U.S. District Court for the Western District of Washington, *Anderson v. Wells Fargo Home Mortgage, Inc.*, 259 F. Supp. 2d 1143 (W.D. Wash. 2003), applying a Washington state consumer protection act. That consumer protection act more generally states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.020. The *Anderson* Court simply ruled on the "unfair or deceptive act" element of the Washington state consumer protection act claim. The CPPA, in contrast, enumerates twenty-six specific violations. Plaintiff attempts to shoehorn his allegations into at least one of these subsections, then falls back on another state's case involving a more broadly written statute. Plaintiff's argument must fail.

**E.    Plaintiff Fails to State a Claim under § 28-3904(k).**

Plaintiff's argument under § 28-3904(k) again shows that his allegations simply do not fit under the CPPA. Plaintiff argues that his allegations show that Osborne "falsely state[d] that services, replacements, or repairs are needed" because Plaintiff had to pay a price higher than a clearly identified estimate for title insurance and had to increase his down payment in order to secure financing. Plaintiff's allegations do not support his argument.

Plaintiff does not allege that Osborne falsely stated that title insurance was needed. Certainly, the title insurance ultimately cost more than stated on the Good Faith Estimate of Settlement Costs – a document that clearly states "[t]he fees listed are estimates – the actual charges may be more or less." (Compl. Ex. 1.)  But Plaintiff cannot claim or show that title insurance to cover his $675,000 property was not needed at all or that Osborne falsely represented that it was needed.

Furthermore, Plaintiff claims that Osborne falsely stated that "repairs" were necessary when they were not, pointing to the need for an additional down payment to secure financing. First, Plaintiff's own documents show that CitiMortgage set the loan terms in order "to keep DTI [debt-to-income ratio] under 55%." (Compl. ¶ 65.)  Thus, Plaintiff cannot show that the additional down payment was not needed.  Additionally, Plaintiff claims that the additional down payment was an unnecessary "repair" of the Sept. 26 "loan."  As extensively discussed throughout this memorandum, no "loan" existed on Sept. 26, 2005.  After reviewing Plaintiff's financial information, Plaintiff needed to provide an additional amount of down payment to keep his debt-to-income ratio within lending guidelines.  This is not a "repair" of a prior "loan" but simply an assessment of Plaintiff's financial situation.  Thus, despite Plaintiff's best efforts to make his allegations fit the statute, this claim must also fail.

**F.    Plaintiff Fails to State a Claim under § 28-3904(u).**

Plaintiff takes issue with CitiMortgage's claim that Osborne submitted the loan application to attempt to obtain the loan terms referred to in the GFE. (Opp'n at 36.)  Plaintiff's Complaint states that on October 3, 2005, Dan Formosa emailed Osborne that "Counter has not been accepted within standard." (Compl. ¶ 53.)  Clearly, Osborne did submit Plaintiff's loan application and received a counter-offer in return.  Assuming all of Plaintiff's allegations are

true, Osborne then resubmitted the loan application, it went through underwriting and processing and terms were ultimately offered.  (Compl. ¶¶ 57, 58, 59, 62, 65.)  Osborne's previous representation was that he submitted the loan application and, according to the facts alleged in the Complaint, he must have done so as he received a counter-offer.  Additionally, Plaintiff's application was in processing and underwriting during the time Osborne allegedly represented it was.  Thus, Plaintiff fails to state a claim under § 28-3904(u).

### G.    Plaintiff Fails to State a Claim under § 28-3904(v).

Plaintiff argues throughout his Opposition and again here that he had a fully formed and enforceable loan as of September 26, 2005, but Plaintiff does not allege that Osborne represented that he had final authority to approve a loan.  Instead, Plaintiff's Complaint shows that Osborne issued a GFE with a clear disclaimer and stated that the loan application and Plaintiff's documents were being sent to CitiMortgage underwriters.  (Compl. ¶¶ 35, 46, 60.)  Even accepting Plaintiff's allegations as true, Plaintiff cannot show that Osborne misrepresented that he was solely able to create a fully formed and enforceable loan.  This claim must fail.

## CONCLUSION

For the foregoing reasons, Counts 1 through 8 and Count 11 must be dismissed for failure to state a claim.

Respectfully submitted,

_/s/_____

Alec W. Farr (D.C. Bar No. 440046)
Kristin A. Hird (D.C. Bar No. 497800)
BRYAN CAVE LLP
700 Thirteenth Street, NW, Suite 700
Washington, DC 20005
Tel: (202) 508-6000
Fax: (202) 508-6200

Dated: February 5, 2007          *Counsel for Defendant CitiMortgage, Inc.*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was sent via Federal

Express this 5th day of February, 2007, to:

      Scott D. Pluta
      777 7th Street, N.W.
      Apartment #414
      Washington, D.C. 20001
      PLAINTIFF

                Kristin A. Hird
                ATTORNEY FOR DEFENDANT