## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SCOTT D. PLUTA** | ) | |
| **777 7TH STREET, N.W. #414** | ) | |
| **WASHINGTON, D.C. 20001** | ) | |
| **(434)-242-1615** | ) | |
| | ) | |
| | ) | **Case No. 1:06CV01806 (RWR)** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITIMORTGAGE, INC.** | ) | |
| **1000 TECHNOLOGY DRIVE** | ) | |
| **O'FALLON, MO 63368** | ) | |
| | ) | |
| **LARRY OSBORNE** | ) | |
| **2031 BROOKS DRIVE** | ) | |
| **DISTRICT HEIGHTS, MD 20747** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

Scott D. Pluta, by his counsel Thomas C. Willcox, files this Amended Complaint against

defendants CitiMortgage, Inc. ("CitiMortgage"), and Larry C. Osborne ("Osborne") (collectively

"Defendants"), and, in support hereby states as follows:

## Nature of the Case

1.      This is a case of predatory lending and outright consumer fraud.  CitiMortgage created and maintained an atmosphere that allowed one of their lending agents, Osborne, to violate several federal and District statutes governing mortgage lending and consumer protection laws, and several common law torts.  Mr. Pluta, a first time homeowner, put his trust in the "Citi" name and reputation, only to experience a personal and financial nightmare at the hands of Defendants' fraud and incompetence.  In brief, Osborne failed through his own inaction to secure financing that Mr. Pluta definitively contracted for on September 26, 2005, then misrepresented to Mr. Pluta for the three weeks until closing that the terms of Mr. Pluta's mortgage had been secured knowing full well that they had not.  Osborne's lies were not revealed until the actual day of closing, at which time a stunned Mr. Pluta was left with no choice but to mitigate his damages and accept loan terms he had never seen nor agreed to.

## Parties

2.      Plaintiff Scott D. Pluta is an individual residing at 777 7th Street N.W. #414, Washington, D.C. 20001.

3.      Defendant CitiMortgage is a mortgage banking subsidiary of Citigroup and is one of the nation's largest residential mortgage originators and servicers.  CitiMortgage's parent company, Citigroup, is a diversified global financial services holding company whose businesses provide a broad range of financial services to consumer and corporate clients.  CitiMortgage is organized under the laws of the State of New York, with its principal place of business at 1000 Technology Dr., O'Fallon, MO 63368.

4.    Defendant Osborne is a former CitiMortgage employee residing at 2031 Brooks Drive, District Heights, MD 20747. CitiMortgage, as Osborne's employer, is vicariously liable for any of Osborne's tortious acts.

## Jurisdiction and Venue

5.    This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states, and 28 U.S.C. § 1331 in that this Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

6.    This Court has supplemental jurisdiction over the pendent state claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claims occurred in this judicial district.

8.    This Court has personal jurisdiction over all of the Defendants because each Defendant has done one or more of the following actions, any one of which would submit said Defendant to the lawful exercise of personal jurisdiction in the District of Columbia, pursuant to D.C. Code § 13-423 (a):

(1)    Transacts any business in the District of Columbia;

(2)    Contracts to supply services in the District of Columbia;

(3)    Causes tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4)    Causes tortious injury in the District of Columbia by an act or omission outside the District of Columbia, when the Defendant regularly does or business engages in any

3

residential course of conduct or derives substantial revenue from goods used or consumed or services rendered in the District of Columbia; and/or

(5)    Has an interest in real property in the District of Columbia.

9.    In addition, because each Defendant's activities would lead it to reasonably expect to be haled into a District of Columbia Court, such exercise of in personam jurisdiction is in keeping with the Due Process requirements of the U.S. Constitution.

## Background

10.    Mr. Pluta has been a customer of Citigroup and its various affiliates since 1999. This relationship began while Mr. Pluta was an undergraduate student and has evolved to include various checking, savings, and brokerage accounts, a Roth IRA retirement account and various student loans.

### Miami CitiMortgage Pre-approval

11.    In July 2005, while studying for the Florida Bar Exam in Miami, Florida, Mr. Pluta applied for, and was granted, a pre-approved loan commitment from CitiMortgage for real property in Washington, D.C. ("D.C.").

12.    The pre-approval loan commitment was for a "5/1 TBill ARM" at 5.626% with .125 in points. The capital ratio of the pre-approval loan commitment was, as a percentage of the purchase price, 80% primary loan, 15% Home Equity Line of Credit ("HELOC"), and 5% down payment by Mr. Pluta. The pre-approval loan commitment was valid for 90-days from date of issue.

13.    An essential term of the pre-approval loan commitment was the relatively small 5% down payment. Mr. Pluta had recently graduated from school and had very limited savings.

14.    Mr. Pluta was advised by CitiMortgage Lending Agent Christina Kovacs not to seek pre-approval commitments from other lending institutions, because doing so would injure Mr.

Pluta's credit score.

15.    With a CitiMortgage pre-approval loan commitment in hand, over the next several months Mr. Pluta explored the D.C. housing market with the assistance of his real estate agent, Alison Farmer of Corus Home Realty.

16.    On September 12, 2005, Mr. Pluta placed an initial offer to purchase condominium unit number 414 located at 777 7th Street NW, Washington, D.C. 20001 (the "Condominium"). As part of the initial offer Mr. Pluta endorsed, but did not turn over, a $20,000 check for earnest money.

<u>Mr. Pluta Solicits Financing for the Condominium</u>

17.    With his initial offer to purchase the Condominium outstanding, Mr. Pluta sought to choose a lending institution to finance his home purchase. Mr. Pluta's first preference, as with the pre-approval loan, was his long-time personal bank, Citibank (through sister Citigroup subsidiary CitiMortgage).

18.    On the afternoon of September 12, 2005, Mr. Pluta walked to a local Citibank branch location -- located at 1000 Connecticut Avenue, N.W., Washington, D.C. 20036, (the "Farragut North Citibank Branch"). Within the main lobby of the Farragut North Citibank Branch was a hanging sign that read "Mortgages." CitiMortgage Lending Agent Osborne was seated at a desk below said sign when Mr. Pluta approached to discuss the possibility of CitiMortgage financing the Condominium. At all times Osborne represented himself as an agent of CitiMortgage.

19.    At that initial meeting, Mr. Pluta advised Osborne of Mr. Pluta's desire to purchase a home and apprised him of his relevant activities to date including, *inter alia*, Mr. Pluta's current pre-approval loan commitment from CitiMortgage, the outstanding offer on the Condominium, and Mr. Pluta's financial status.

20.    Osborne instructed Mr. Pluta that in order to continue with CitiMortgage on a

property located in D.C., Mr. Pluta would have to withdraw his pre-approval commitment (characterized by Osborne as Mr. Pluta's "application") with CitiMortgage Lending Agent Kovacs in Miami and apply for a new pre-approval commitment with Osborne.

21.     Osborne represented to Mr. Pluta that he would be able to secure the best possible terms for Mr. Pluta of any mortgage lender in D.C.  To support his claim, Osborne cited CitiMortgage and Citigroup's name and reputation, resources, size, and experience; Citigroup's CitiGold member benefits (of which Mr. Pluta was a member); and a discount on closing costs CitiMortgage offered on properties located in economically depressed areas in D.C.

22.     Based on Osborne's representations, Mr. Pluta contacted Kovacs and withdrew his pre-approval commitment.

23.     On September 12, 2005, under Osborne's professional care and observation, Mr. Pluta filled out and submitted a new mortgage loan application to CitiMortgage.

24.     As part of the mortgage loan application process, Mr. Pluta provided to CitiMortgage his social security number, date of birth, current address, previous addresses, current employer, previous employers, present income, previous income, present assets (bank account with balances and account numbers, brokerage accounts with balances and account numbers, and retirement accounts with account numbers) and liabilities (student loan balances and account numbers), and automobile owned (with market value).

25.     While completing the mortgage application Mr. Pluta informed Osborne that Mr. Pluta did not have a "permanent address" for purposes of filling out the mortgage application.  Since beginning work on September 6, 2005, Mr. Pluta had been residing at a friend's apartment near Union Station.  Mr. Osborne instructed Mr. Pluta that for the purpose of the mortgage application, and indirectly the credit report that CitiMortgage would request through Equifax Mortgage Services,

Mr. Pluta should use his most recent school address in Charlottesville, VA -- 1702 Rugby Ave.,

Charlottesville, VA 22903. Mr. Pluta also provided Osborne with his current work address, 1700 K

Street N.W., Washington, D.C. 20006. Osborne represented to Mr. Pluta that all communications

and correspondence regarding the loan process would be channeled through Osborne to Mr. Pluta

directly either in person, by phone, or by e-mail.

26.    On September 14, 2005, Mr. Pluta accepted a counteroffer for purchase of the

Condominium by its owner, Victor Vacanti (the "Condominium Seller"). Closing on the

Condominium was scheduled for noon on October 19, 2005.

27.    Also on September 14, 2005, at Osborne's request, Mr. Pluta provided Osborne with

a copy of Mr. Pluta's offer of employment letter and a copy of the $20,000 earnest money check.

28.    On or about September 19, 2005, Osborne informed Mr. Pluta that there was a delay

in finalizing his loan for the Condominium given a procedural credit issue that would have to be

resolved with Mr. Pluta's private student loan lender, CitiAssist (another subsidiary of Citigroup).

As Mr. Pluta had just recently graduated and his student loans had not yet entered the repayment

period, an amortization schedule for repayment had not been finalized. Until a monthly student loan

payment was established, CitiMortgage underwriters had to make aggressive assumptions on

monthly repayment that would result in Mr. Pluta's loan application being denied.

29.    On September 19, 2005, at the recommendation of Ms. Farmer,  and in light of the

CitiAssist issues, Mr. Pluta met with Scott Davis of Market Street Mortgage Corporation ("Market

Street"), a competitor of CitiMortgage in the mortgage lending industry. Mr. Pluta filled out and

submitted a mortgage application with Market Street. Mr. Pluta took this step to create additional

financing options from which to choose a mortgage with the most favorable terms.

30.    On September 20, 2005, Mr. Pluta delivered a check for $20,000 in "earnest money"

to Ms. Farmer.  Ms. Farmer informed Mr. Pluta that the earnest money check would be cashed and held in an account by Corus Realty but was not yet subject to the liquidated damages provision of the purchase agreement.

31.    Ms. Farmer repeated advice she had given Mr. Pluta on several occasions over the past few months -- that up to three days after the buyer receives the Condominium Documents (the "Condo Docs") from the seller, the buyer can walk away from a purchase agreement on a condominium in D.C. without cause and without breaching the purchase agreement (whereas breach would result in forfeiture of the $20,000 in earnest money).

32.    On September 22, 2005, Market Street provided Mr. Pluta with Good Faith Estimates on two different mortgage options.  Both mortgage options assumed a 5% down payment by Mr. Pluta, as requested.

33.    Also on September 22, 2005, Mr. Pluta informed Osborne that Market Street had provided Mr. Pluta with alternative lending options to CitiMortgage and that Mr. Pluta would be soliciting additional mortgage lending companies.  Mr. Pluta informed Osborne that Monday, September 26, 2005, would be the deadline for CitiMortgage to offer competing terms on financing the purchase of the Condominium.

<u>Mr. Pluta Accepts CitiMortgage's Offer to Finance the Condominium</u>

34.    Late in the afternoon of September 26, 2005, Mr. Pluta met with Osborne at the Farragut North Citibank Branch.  At that meeting Osborne presented to Mr. Pluta a Good Faith Estimate, titled "Truth in Lending Disclosure Statement Preliminary" (the "Sept. 26 GFE").  Ex. 1.

35.    By the time this meeting occurred, Osborne and CitiMortgage were aware of Mr. Pluta's annual income, assets, liabilities, credit history, and credit score.

36.    Osborne represented that CitiMortgage would finance the Condominium with a 30-

year fixed mortgage at an annual percentage rate of 5.775% with no "points"; however, in order to qualify for these terms, Mr. Pluta would have to increase his down payment to 10% of the purchase price of the Condominium to "get the deal done" (an additional $33,750 down payment) (the "Sept. 26 Loan").

37.    To support his offer, Osborne printed from his computer an e-mail from CitiMortgage underwriters Kevin Peterson and Tami Vaughn and handed it to Mr. Pluta.  Ex. 2.  In the e-mail, Peterson instructs Osborne that one "option would be [a financing ratio of] 80/10/10" primary loan to secondary loan to down payment.  *Id*; *see also* Ex. 6 at 13 ("this counteroffer was reworked as an approved 80/10/10") (Osborne, L.).  This represented the offer that Osborne presented to Mr. Pluta.

38.    On the back of this e-mail Mr. Pluta took contemporaneous notes of the loan terms offered by Osborne and CitiMortgage.  The notes indicate "I" for the primary loan, "5.75[%] 30 [year] fix[ed loan]" with a monthly payment of "[$]3,151.29", and "II" for the secondary loan, a HELOC at "Prime minus 1.5[%]" for "6 months" and then thereafter "[Prime] plus 2.5[%]."  *Id*. Under "Closing Costs" is written "no origination fee."  *Id*.  At the very top of the sheet of paper Mr. Pluta had written "80/10/10", consistent with Peterson's suggestion in Exhibit 2.

39.    As part of the Settlement Charges, Osborne represented that Title Insurance would be $1,195.00 through a company called "CapTitle," memorialized on Ex. 2 as "Title – Cap Title."

40.    Osborne represented that Mr. Pluta had until the close of business of the next day to "get locked in" to the terms of these loans.  Nevertheless at the conclusion of their meeting Mr. Pluta accepted the terms of the Sept. 26 Loan offered by CitiMortgage and Osborne.  Osborne gave Mr. Pluta a copy of the Sept. 26 GFE they had been discussing.

41.    Osborne thanked Mr. Pluta for choosing Osborne and CitiMortgage to finance the Condominium and indicated that he would begin processing the loan and that nothing further was

immediately required to be done on Mr. Pluta's end.  Out of an abundance of caution, Mr. Pluta advised that he would follow up with an e-mail later that night to confirm their agreement.

42.     On September 26, 2005, at 9:05 p.m. Mr. Pluta e-mailed Davis of Market Street, "Scott, [t]hank you for all your help and taking the time to get me a Market Street offer but CitiMortgage came with a doc loan at 5.75% (5.77 APR) without an origination fee, etc." Ex. 3.

43.     Nine minutes later Mr. Pluta emailed Osborne, "Larry, [y]ou can go ahead and lock me in for the rate we discussed today – I'll call tomorrow to follow up and discuss the next steps to take[.]"  Ex. 4.

44.     Reasonably believing that his financing as set forth in the Sept. 26 Loan was now secure, Mr. Pluta discontinued his search for alternative financing options.  Osborne was made aware of such by e-mail.

45.     On or about September 27, 2005, Mr. Pluta contacted his parents.  Mr. Pluta explained that in order to get a lower rate without any points on the mortgage Mr. Pluta had agreed to put down 10% of the purchase price.  Mr. Pluta asked each of his parents to loan and/or gift to him $20,000 each to assist Mr. Pluta in raising the additional $33,750 in down payment.  Mr. Pluta's parents both agreed to do so.  Mr. Pluta flew home to Wisconsin the weekend of October 14th in order to collect the money from his parents.

46.     On September 27, 2005, Davis of Market Street e-mailed Mr. Pluta that Davis "[found] it difficult to believe that [Defendants'] offer [sic] [Mr. Pluta] a 30 year fixed jumbo loan for that rate with no points."  Davis included in the same e-mail some "[q]uestions to ask" CitiMortgage regarding the terms of the Sept. 26 Loan to ensure that the CitiMortgage offer was transparent. Ex. 3.

47.     Mr. Pluta forwarded Davis' email to Osborne later that day and requested a response

to the concerns and questions Davis raised in his e-mail.  Ex. 5.

48.    Around noon on September 27, 2005, Mr. Pluta received the Condo Docs from the seller's real estate agent, Rita Stevens of Zip Realty ("Seller's Real Estate Agent"), thus triggering the 72-hour deadline for Mr. Pluta to walk away from the transaction for any reason at all without breaching the purchase agreement and forfeiting the $20,000 in earnest money.

49.    On September 28, 2005, Mr. Pluta delivered a large stack of documents to the Farragut North Citibank Branch that Osborne had instructed Mr. Pluta to collect for the CitiMortgage "underwriters" at their September 26, 2005, meeting.  Included within a red well full of documents was a copy of Mr. Pluta's law school diploma, a copy of his offer letter of employment, copies of bank records and pay stubs, a copy of the Condo Docs, a copy of his driver's license, a copy of the earnest money check, a copy of the purchase agreement, and copies of previous year's W-2 forms (collectively the "Closing Documents").

50.    Later that day, Ms. Farmer e-mailed Mr. Pluta informing him that Condominium Seller had found a new condominium to purchase with the proceeds of the sale from the Condominium.

51.    Between September 27, 2005, and September 30, 2005, on several occasions, Osborne confirmed independently to both Mr. Pluta and Ms. Farmer that the terms of the Sept. 26 Loan were in fact "locked in" and the loan was being processed.

52.    These exchanges assuaged any concerns Mr. Pluta may have had in connection with his September 27, 2005, forwarding of Mr. Davis' email to Mr. Osborne.  *See* Ex. 5.

53.    On September 29, 2005, Mr. Pluta reiterated to Osborne that Mr. Pluta had until September 30, 2005, at 9 p.m. to walk away from the purchase agreement without consequence and sought reassurance that Osborne had secured the terms of the loan.  Osborne confirmed that the

terms of the Sept. 26 Loan had been secured and represented to Mr. Pluta that the loan was processing normally.

54.     Unbeknownst to Mr. Pluta and Ms. Farmer at this time, was that Osborne had failed to take the necessary steps to accept the terms of the CitiMortgage offer communicated to Mr. Pluta on September 26, 2005, and was aware of his failing at all times -- including as he was representing to Mr. Pluta and Ms. Farmer on multiple occasions that the loan was secured and in process.

55.     The facts -- as Mr. Pluta would later learn from Osborne and as evidenced in internal CitiMortgage e-mails provided to Mr. Pluta by Osborne -- were that Osborne had completely neglected to "file the paperwork" for the loan.

56.     On September 30, 2005, at 9 p.m., Mr. Pluta allowed the deadline to pass for walking away from the purchase agreement, in total reliance on Osborne's representations.  From this point forward, if Mr. Pluta breached the purchase agreement for the Condominium he would forfeit the $20,000 in earnest money and expose himself to all damages flowing from that breach.

### Osborne Causes the Sept. 26 Loan to be Lost

57.     On October 3, 2005, Dan Formosa of CitiMortgage e-mailed Osborne to inform him that the Sept. 26 Loan had not been accepted within the window of time permitted and was thus being declined.  Formosa wrote, "Larry [Osborne] – Counter has not been accepted within standard. Loan is being plassed [sic] to uw for decline."  Ex. 6 at 14.

58.     On October 6, 2005, three full business days after the e-mail from Formosa, Osborne finally responded to Formosa's October 3rd e-mail in an attempt to save the loan, telling Formosa "[Mr. Pluta] has a contract on this property that has a 10/19/05 closing date!  This client also has a $20,000 earnest money deposit on the line on top of it.  This now puts me a [sic] grave disadvantage both with the client and his realtor for any future business as well.  It also puts the bank at a

disadvantage due to the client working for one of our Bank @ Work clients, and having a Citigold account and several other investment accounts with us.  Please advise on how to salvage the deal." *Id*. at 13.

59.    Formosa responded by e-mail, "This loan is declined.  Tony [Cato] should have advised you that you have 3-business days to respond to counter/noia's on a go [sic] forward bais [sic].  For future reference, if you do not respond by the end of day 3, the loan will be moved into uw by me for decline.  If there are special circumstances, you need to undate in the notes.  This is a change in procedure that was communicated by my boss to all of the regional managers.  In addition, Tami [Vaughan] sent you an email on 9/26 that you did not respond to.  I sent an email to you on 10/3 that went without response.  **That's why the loan has been declined**.  Lack of response effects my CIAPPR speed which I am measured by.  I would recommend that you check on your counters/noia's every morning to make sure they are being addressed properly.  You own this process."  *Id*. at 13. (emphasis added)

60.    Later that day Formosa reiterated his earlier position, "It can't be reinstaated [sic] because it has fed as a declined loan.  You will have to resub [sic]…there's no other option.  The only notes I see from Kevin [Peterson] is on 9/20 which was a suggestion to the UW.  Tami [Vaughn] issued counter after receipt of that email on 9/22.  From that point on, there is no communication from you regarding the acceptance or decline.  I emailed you on 10/3…It's now 10/6."  *Id*. at 12.

61.    Osborne wrote back, "Very well.  I hope this doesn't delay the processing of this loan, nor impact the tentative approval," *id*. at 17, to which Formosa replied, "there was no approval of this loan, it was in a counter status and therefore not approved.  Resubmit it and email me the account # upon release so I can prioritize.  There will be no special rush process granted on this

13

deal." *Id*.

62.    On October 7, 2005, Osborne resubmitted a loan application to Formosa (and without consulting Mr. Pluta). S*ee* ¶ 90, *infra*.

63.    On October 11, 2005, Barb Majors of CitiMortgage informed Osborne and Formosa via e-mail that the loan would be approved at "80% LTV with HELOC" and that the "[l]oan would be placed in Counter status for 3 days." *Id*. at 21.

64.    On October 13, 2005, Ms. Farmer again received assurances from Osborne that the Sept. 26 Loan was still intact.  After talking to Osborne, Ms. Farmer e-mailed Mr. Pluta, "[j]ust talked to Larry [Osborne] and **he said your loan is in underwriting**, so that's a good sign.  Said the appraisal came back at $675k, so we don't have any appraisal issues, which is great!  Otherwise, I think we're good…We'll get a final settlement statement the day before [closing] (Tuesday [October 18, 2005]) and I'll call to let you know what the bottomline [sic] number is for the cashier's check you'll need to bring."  Ex. 7. (emphasis added).

65.    Yet again Osborne not only failed to communicate the actual status of Mr. Pluta's loan to Mr. Pluta or Ms. Farmer, but Osborne continued to falsely represent to Mr. Pluta and Ms. Farmer that the Sept. 26 Loan was secure and in processing.

66.    When Osborne made these representations he knew that Mr. Pluta was under the belief that the Sept. 26 Loan had been secured and the terms of which would be those of his final loans.

67.    On the day before the latest "counteroffer" from CitiMortgage was to expire, October 14, 2005, and without any communication from Osborne in the interim, Formosa unilaterally e-mailed Osborne, "I need to know whether counter is accepted by end of business on this deal. Please advise.  If there is no resposne [sic], loan will be passed to uw for decline at end of day [sic].

14

*Also, this has 15-day lock as well.*" *Id*. at 22.

68.     At 3:15 p.m., an hour before the counteroffer was to expire, Osborne wrote to Majors and Formosa, "Good afternoon Barb, I am writing to ask if we can switch the 1st mortgage to an I/O product and still offer the 90% CLTV scenario (combo loan). I have the copy of the EMD check for verification purposes, the borrower does have at least 5% of [his] own funds, and is receiving a gift of about 5% as well. My assumption is that with an I/O 1st mortgage, the DTI will meet guides. At this late stage, asking the borrower to bring roughly $100,000 to closing is both unreasonable and unattainable. I am willing to work with you to work out <u>some sort of 90% financing</u> in order to retain this client, <u>but I know that the current counter is not an option</u>. Also, please be advised that the borrower actually had another offer on the table before coming to Citi, but since he has a banking relationship with us, **<u>he chose to go with our initial offer</u>**." (emphasis added). *Id*. at 23.

69.     Formosa countered, via e-mail at 3:38 p.m., "Larry – [we] don't look to restructure on the last day of a counter. Do you accept the counter or not?" *Id*.

70.     After the weekend, on Monday, October 17, 2005, Majors wrote to Osborne and Formosa, "Good afternoon Larry: I have discussed this file with Kevin Peterson (RME) and this is the Final Counter that will be issued for this loan. 1st @ $540,000.00 30 yr fix. 2nd at $50,000.00 fix rate 8.75% to keep DTI under 55%. Please advise if you wish to proceed with this Counter offer. if [sic] you need to speak with me I can be reached at 248-905-7287 or by e-mail. Thank you and have a good afternoon." *Id*. at 24.

<u>24-hours from Closing, Osborne Seeks an Additional $17,500 Down Payment</u>

71.     On the morning of October 18, 2005, approximately 24-hours to closing on the Condominium, Osborne called Mr. Pluta. Osborne told Mr. Pluta that CitiMortgage was "no longer willing" to do the financing with a 10% down payment. Osborne stated that Mr. Pluta would have to

put down an additional 2.5% of the purchase price ($17,500) to get CitiMortgage to finance the purchase of the Condominium.  Mr. Pluta was in absolute shock.

72.    Mr. Pluta asked Osborne, how, with approximately 24-hours to closing on the Condominium, that CitiMortgage could change the terms of the Sept. 26 Loan that Mr. Pluta had accepted over three weeks before.  Osborne did not offer an explanation nor did he reveal to Mr. Pluta that through Osborne's own nonfeasance Mr. Pluta's financing had been lost.

73.    Mr. Pluta explained to Osborne that Mr. Pluta had movers scheduled for October 20, 2005, and had reserved the loading dock at the condominium building for a nonrefundable $250.  More significantly, if Mr. Pluta did not close on the Condominium October 19, he would be in breach of the purchase agreement, causing Mr. Pluta to forfeit the $20,000 in earnest money and  be liable for any damages suffered by the Condominium Seller for the subsequent breach of his purchase agreement on the property that the Condominium Seller was to close on the day after Mr. Pluta's closing.

74.    At the time, the only near liquid assets Mr. Pluta had left were his Roth IRA and what little remained of his Citigroup brokerage account.  Osborne suggested that Mr. Pluta contribute those funds to the down payment.  Mr. Pluta told Osborne that he would try to secure the money in time but that he was now doubtful that he would have sufficient funds for closing.

75.    After the phone call Mr. Pluta immediately went to the Farragut North Citibank Branch.  Mr. Pluta met with a Citigroup Investment Services representative and discussed Mr. Pluta's situation.  Over the course of the afternoon Mr. Pluta oversaw the liquidation of his Roth IRA and Brokerage Account and the transfer of the sale proceeds to Mr. Pluta's checking account.  Mr. Pluta incurred substantial transaction fees not only to liquidate these assets but also to rush the transfer of proceeds into his checking account to be available for closing the next day.

16

76.    When Mr. Pluta realized that he was still short he called his law school roommate and asked him to lend Mr. Pluta $2,000 -- which his friend obliged.

77.    Mr. Pluta also learned on October 18, 2005, that Osborne had failed to deliver any of the Closing Documents required for closing to the underwriters.  At the direction of Formosa and Velma Woodward of CitiMortgage, Mr. Pluta scanned and e-mailed the required documents directly to the CitiMortgage underwriters, cutting Osborne out of the process.  Mr. Pluta was made aware by the CitiMortgage underwriters of several other required documents that Osborne had failed to instruct Mr. Pluta to collect and thus in haste and at his expense Mr. Pluta secured and e-mailed these documents directly to the underwriters as well.

78.    On October 18, 2005, at 2:54 p.m. Formosa emailed Osborne that "[a]t this point the closing is truly in jeopardy [sic] because I have no questionnaire and insurance.  I need both before I can get approval."

79.    The process of collecting and sending closing documents to the underwriters continued the morning of closing, October 19, 2005, when Woodward made Mr. Pluta aware of still more documents that Osborne had failed to collect and forward to the underwriters.

<u>The Day of Closing</u>

80.    Closing on the Condominium was scheduled for October 19, 2005, at 1:30 p.m. but did not actually occur until approximately 5:00 p.m.  The closing took place at District Title, located at 1025 Connecticut Avenue, N.W., Suite 1000, Washington, D.C. 20001.  The following persons attended: Mr. Pluta, Ms. Farmer, Condominium Seller, Seller's Real Estate Agent, Osborne, and Steven M. Sushner of District Title.

81.    At closing, Mr. Pluta was shown, for the very first time, the Settlement Statements containing the terms of loans numbered 002003249223 (the "Primary Loan"), Ex 8, and

002003272196 (the "Secondary Loan"). Ex 9.

82.    Mr. Pluta immediately recognized several inconsistencies between the terms of the Primary Loan and Secondary Loan and the terms Mr. Pluta had agreed to on September 26, 2005.

83.    Line 801 of the Primary Loan, "Loan Origination Fee," contained an origination fee of one-eighth of one point on the principal of the loan ($675). Ex. 8. The assessment of this fee was never discussed or disclosed with Mr. Pluta either verbally, in writing, or specifically in the Sept. 26 GFE or at any other point.

84.    When confronted about Line 801, Osborne admitted that a Loan Origination Fee had not been agreed to nor should it have been assessed on the Primary Loan, that it was his fault, and that after closing he would see to it that the fee was refunded.

85.    Line 1108 of the Primary Loan, indicated "Title Insurance" of $2,246.20. *Id*. Line 1108 of the Sept. 26 GFE listed $1,195.00 for "Title Insurance." Ex. 1. Between September 26, 2005, through the time of closing Mr. Pluta had confirmed this figure with Osborne; yet at closing the actual amount was $1,051.20 greater, nearly twice the "estimated" amount.

86.    Osborne had represented to Mr. Pluta that the subordinate financing, *i.e.* the Secondary Loan, would be a HELOC. *See* Ex. 2, ¶ 38, *supra*. Upon examining the Secondary Loan, Mr. Pluta discovered that, in fact, the loan was a Fixed Rate Home Equity Loan ("FRHEL"). At closing was the first time that Mr. Pluta was informed that the Secondary Loan on the Condominium would be a FRHEL. Likewise Mr. Pluta had not seen any documentation on the Secondary Loan nor been notified of the interest rate or fees associated with the Secondary Loan.

87.    Among the closing documents, the NOTE indicated a "yearly [interest] rate of 5.875". This interest rate differed significantly from the interest rate agreed to in the Sept. 26 Loan, which was 5.775% (or approximately $20,250 over the life of the loan). Ex. 10.

18

88.     When confronted with the discrepancy in the interest rates, Osborne stated that he was unaware of the terms of the Primary Loan.  When confronted with the Sept. 26 GFE Osborne stated that there was a period of time after closing in which adjustments can be made to the Primary and Secondary Loans and that Osborne would see to it that CitiMortgage revise Mr. Pluta's loans to match the terms of the Sept. 26 Loan.  Osborne made this statement in the presence of all parties in attendance at closing.

89.     Osborne spent several minutes on his cellular telephone and then returned to the closing room.  In front of all parties in attendance at the closing Osborne admitted fault for the discrepancies.

90.     Also among the settlement documents was a copy of a "Truth in Lending Disclosure Statement" that indicated an "Annual Percentage Rate" of 5.912% (the "Oct. 7 TILA").  Ex 11.  The statement was dated October 7, 2005 (*see* ¶ 62, *supra*), and indicated that "[t]his application was taken by:" to which Osborne had fraudulently checked "face-to-face interview."  In fact, no meeting between Mr. Pluta and Osborne had taken place that day, and Osborne never disclosed the existence of this document to Mr. Pluta.  Mr. Pluta had <u>never</u> seen this document before the closing.  *Id*.

91.     Mr. Pluta inquired with Sushner of District Title if Mr. Pluta could indicate his disagreement as to the discrepancies of the loans on the face of the closing documents.  Sushner stated definitively that Mr. Pluta could not.

92.     Faced with the prospect of breaching the purchase agreement, forfeiting $20,000 in earnest money, facing litigation initiated by the Seller, and with Osborne's promises of loan revision in mind, Mr. Pluta closed on the Condominium at or around 5:00 p.m. on October 19, 2005.

<u>The Aftermath</u>

93.     Beginning immediately after closing and continuing over the next two weeks, Mr.

19

Pluta made continuous attempts to schedule a meeting with Osborne to address and resolve the issues that had arisen before and during closing.

94.     After at least one cancelled meeting and many unreturned phone calls, Mr. Pluta finally tracked Osborne down at the Farragut North Citibank Branch by dropping by unannounced on November 16, 2005.

95.     Mr. Pluta asked Osborne to fully explain how the terms of his Primary and Secondary Loans differed from the terms of his Sept. 26 Loan

96.     Osborne took responsibility and blame for the entire situation.  Osborne admitted that he had failed to turn in Mr. Pluta's loan paperwork within the time allowed by CitiMortgage to secure the terms of the loan.

97.     Unsolicited, Osborne then printed directly from his computer 34-pages of internal CitiMortgage e-mails that Osborne stated more fully explained what had gone wrong.  Osborne turned those e-mails over to Mr. Pluta.  (Attached in full as Exhibit 6).

98.     Osborne reiterated that he would take the steps necessary to conform the terms of the Primary and Secondary Loan to those of the Sept. 26 Loan.

99.     Over the next several weeks Mr. Pluta left many unreturned phone calls with Osborne and stopped by the Farragut North Citibank Branch many times without success in an effort to check on Osborne's progress.

100.     Unable to reach Osborne, Mr. Pluta obtained the contact information for Osborne's manager at CitiMortgage, Reginald Moore.  During a phone conversation on or about December 13, 2005, Mr. Pluta recounted to Moore his experience with Osborne and the discrepancies with his loans.  Moore stated on the phone that he had "inherited that headache" (referring to Osborne) from another CitiMortgage manager (Tony Cato) and that Mr. Pluta was not the only CitiMortgage

customer that had complained about Osborne.  Moore made other comments that led Mr. Pluta to believe that Mr. Pluta's nightmarish experience with Osborne was not unique.

101.    Upon information and belief, Osborne was either fired or forced to resign from CitiMortgage within a month of Mr. Pluta's Condominium closing.

102.    Mr. Pluta spent the next five months patiently and in good faith attempting to settle the above-captioned matter with CitiMortgage without resorting to litigation.

103.    Finally, on March 23, 2006, Acting Southeast Regional Manager for CitiMortgage, Ron Bumgardner told plaintiff that as far as CitiMortgage was concerned, Mr. Pluta's appeal was "closed."

104.    On October 18, 2006, Mr. Pluta filed a Complaint in the above captioned matter seeking various forms of relief from this Court.

<u>Osborne Confirms Mr. Pluta's Allegations</u>

105.    On January 25, 2007, Mr. Pluta had a 45-minute conversation with Osborne over the telephone.  During that conversation, Osborne made the following representations:

a.  Osborne worked at CitiMortgage for approximately seventeen months ending in November 2005.

b.  After being hired, Osborne received one month of formalized lending agent training at a CitiMortgage training facility in St. Louis, Missouri.

c.  During Osborne's employment at CitiMortgage, he had two direct supervisors, Tony Cato ("Cato") (for the first sixteen and a half months including during Mr. Pluta's loan process) and Reginald Moore (for the final two weeks).

d.  Osborne stated that Cato "quit before he could be fired."  When Mr. Pluta inquired further, Osborne stated that there were allegations against Cato that on multiple

occasions Cato had failed to make "RESPA required disclosures"[1] to CitiMortgage customers.

e.   Osborne stated that on September 12, 2005, he entered Mr. Pluta's information collected from Mr. Pluta's Uniform Residential Loan Application (mortgage application) into a proprietary CitiMortgage underwriting computer program.

f.   The underwriting program automatically obtained Mr. Pluta's credit report from Equifax Mortgage Services.

g.   On or before September 26, 2005, the CitiMortgage underwriting program approved Mr. Pluta for a loan, the terms of which were those embodied in the Sept. 26 GFE.

h.   On September 26, 2005, Osborne and Mr. Pluta had a meeting to discuss the financing of the Condominium.

i.   Osborne admitted that by the close of the meeting, Osborne believed that Mr. Pluta had accepted the terms offered in the Sept. 26 GFE and that Mr. Pluta was under the same belief.

j.   When Mr. Pluta completed the mortgage loan application on September 12, 2005, Osborne was aware that Mr. Pluta had just moved to D.C. from Florida and had recently begun working as an attorney at a local law firm.  Osborne was also aware that Mr. Pluta had no permanent mailing address at the time and that Mr. Pluta was temporarily staying with a friend in D.C.

---

[1] *See* ¶ 162; The Real Estate Settlement Procedures Act prohibits kickbacks between lenders and third-party settlement service agents in the real estate settlement process, requires lenders to provide a good faith estimate for all the approximate costs of a particular loan and finally a HUD-1 (for purchase real estate loans) or a HUD-1A (for refinances of real estate loans) at the closing of the real estate loan.  The final HUD-1 or HUD-1A allows the borrower to know specifically the costs of the loan and to who the fees are being allotted.  12 U.S.C. 2601, *et seq*.

22

k.  Osborne was aware that Mr. Pluta had contacted Davis of Market Street and had received two competing Good Faith Estimates to finance the purchase of the Condominium. Osborne recalled that Mr. Pluta had e-mailed copies of Market Street's Good Faith Estimates to Osborne.

l.  Osborne stated that CitiMortgage took three to five business days to consider how it would compete with Market Street's Good Faith Estimates. Because of and in response to Market Street's Good Faith Estimates, CitiMortgage countered with the terms embodied within the Sept. 26 GFE.

m.  Osborne admitted that he knew that Mr. Pluta thought the Sept. 26 Loan had been secured. When Mr. Pluta inquired with Osborne as to the following question: "Over the roughly three week period from September 26, 2005, to the day before closing, October 18, 2005, did you know that [Mr. Pluta] was under the belief that the terms of the September 26, 2005, Loan had been secured or 'locked in'." -- to which Osborne replied "Yes".

n.  Osborne admitted that not until the day before closing did he inform Mr. Pluta that there was a problem with Mr. Pluta's loans. Osborne admitted that between September 26, 2005, and October 18, 2005, he did not "alert" Mr. Pluta to the fact that the terms of the Sept. 26 Loan had been lost.

o.  Osborne stated that the reason that he did not inform Mr. Pluta that the Sept. 26 Loan had been lost was that Osborne was working to recover the terms of that loan during those three weeks and he did not want to cause Mr. Pluta undue "alarm."

p.  The first instance in which Mr. Pluta was made aware that his loan terms might deviate from the Sept. 26 Loan was when Osborne called Mr. Pluta the morning of October 18, 2005, to demand an additional 2.5% down payment.

q.  Osborne admitted that Mr. Pluta had not seen nor agreed to the terms of the Primary or Secondary Loans until the very moment of closing on October 19, 2005.

r.  Osborne stated that CitiMortgage has a policy that allows for the revision of the terms of a loan after closing has occurred, but he did not recall the exact terms of that policy.

s.  Osborne admitted that he told Mr. Pluta at closing that after closing on the Condominium, Osborne would see to it that the terms of Mr. Pluta's loans be revised to those of the Sept. 26 Loan.

t.  Osborne affirmed that when he met with Mr. Pluta on November 16, 2005, to discuss what went wrong with Mr. Pluta's loans, that Osborne took full responsibility for losing Mr. Pluta's Sept. 26 Loan.

u.  However, Osborne stated on January 25, 2007, that he was in fact not the cause of the problem, and that it was the CitiMortgage "underwriters" that "didn't get back to [him] in time" that lead to the loss of Mr. Pluta's Sept. 26 Loan.

v.  Osborne stated that he "fell on the sword" because he was the individual that Mr. Pluta had been working with and was the "face" of CitiMortgage.

## COUNT I
## Fraud

106.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 - 105 of this Complaint as if fully restated herein.

24

107.    On many occasions Osborne made false representations to Mr. Pluta and Ms. Farmer, including but not limited to:

a.    Beginning on September 26, 2005, and again on many instances up until closing, Osborne represented that the terms of the Sept. 26. Loan were secure and the loan was in processing;

b.    On September 29, 2005, Osborne represented to Mr. Pluta that the Sept. 26 Loan was secure;

c.    On or about October 13, 2005, Osborne represented that Mr. Pluta's loan was secure and "in underwriting";

d.    On October 18, 2005, Osborne misrepresented the actual reason that Mr. Pluta would have to put an additional 2.5% down payment towards the purchase of the Condominium;

e.    Fundamentally, Osborne misrepresented the eventual terms of Mr. Pluta's Primary Loan including origination points, the interest rate, and the down payment;

f.    Osborne falsely represented on the Oct. 7 TILA that Mr. Pluta was aware of the document and had been at a "face-to-face" interview with Osborne regarding the document;  and

g.    Osborne represented to Mr. Pluta at closing that he could, and would, revise the terms of Mr. Pluta's Primary and Secondary Loans to those that had previously been agreed to on September 26, 2006 and embodied in the Sept. 26 Loan.

108.    Likewise, through his nondisclosure, omission and continuous silence from September 26, 2005, through closing on October 19, 2005, Osborne failed to inform Mr. Pluta that the terms of Mr. Pluta's loan would not be those of the Sept. 26 Loan that he had agreed to.

25

109. The false representations and omissions by Osborne were in reference to material facts. Those facts include but are not limited to:

a. The terms of the Sept. 26 Loan including the interest rate, points on the loan, the down payment, and the Title insurance;

b. The terms of the Primary Loan including the interest rate, points on the loan, the down payment, and the Title insurance; and

c. The financial product used for the Secondary Loan, a HELOC versus FRHEL;

d. Osborne's ability to effect a revision of Mr. Pluta's Primary and Secondary Loans;

e. An increase in Mr. Pluta's down payment the day before closing in the amount of $17,500, or 2.5% of the purchase price; and

f. the actual status of the Sept. 26 Loan.

110. Osborne was well aware of the falsity of his representations to Mr. Pluta. Osborne knew that he had failed to turn in the paperwork for the Sept. 26 Loan because he was the individual who actually failed to turn in the paperwork. Formosa made Osborne aware on October 3, 2005, that the Sept. 26 Loan had been declined yet Osborne continued to falsely represent -- as he tried over the next two weeks to clean up his mistake -- to Mr. Pluta and Ms. Farmer that the Sept. 26 Loan was secure and processing normally.

111. Osborne intentionally deceived Mr. Pluta and Ms. Farmer by making false representations regarding the terms of Mr. Pluta's loans. At the same time that Osborne was working behind the scenes with the CitiMortgage underwriters on securing inferior financing terms Osborne continued to misrepresent and omit the true nature of the situation to Mr. Pluta and Ms. Farmer. Osborne did so to avoid responsibility for the situation and avoid getting into further trouble with his superiors at CitiMortgage.

26

112.    Mr. Pluta believed that he had secured the terms of the Sept. 26 Loan on September 26, 2005, and acted in reliance on Osborne's misrepresentations from that day forward until closing. Mr. Pluta ceased looking for mortgage financing and the very evening of September 26, 2005 -- canceling his loan application with Davis of Market Street -- something Osborne was aware of.

113.    If Mr. Pluta had not secured the terms of the Sept. 26 Loan (or terms as favorable from another lender) Mr. Pluta would not have gone forward with the purchase of the Condominium, and instead would have "walked away" before the expiration of the 3-day Condo Docs window on September 30, 2005.

114.    Mr. Pluta also made numerous other arrangements in reliance on Osborne's statements and contingent on purchasing and moving into the Condominium, including but not limited to: an interstate move; a nonrefundable condominium building move-in fee; loss of other housing opportunities; setting up utilities and cable; taking time off from work; receiving money from his parents, and changing his mailing address.

115.    Mr. Pluta's reliance on Osborne's representations was reasonable. Citigroup is listed eighth on the list of Fortune 500 companies and is a widely respected banking institution. Relying on the Citigroup/CitiMortgage reputation in combination with a long personal banking relationship, Mr. Pluta solicited Citigroup's subsidiary CitiMortgage, located within a Citibank branch, for an offer to finance the purchase of Mr. Pluta's first home. Mr. Pluta trusted the Citigroup and CitiMortgage brand names and thus extended that trust to CitiMortgage Lending Agent Osborne, who was cloaked in the goodwill and reputation of Citigroup and CitiMortgage. Furthermore, Mr. Pluta was aware that Defendants had sufficient knowledge of Mr. Pluta's complete financial profile for evaluative purposes.

## COUNT II
### Negligent Misrepresentation

116.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

117.    On many occasions Osborne made false statements or omissions of fact to Mr. Pluta and Ms. Farmer, including but not limited to those detailed in ¶¶ 107-108.

118.    Osborne's false statement and/or omissions were in violation of his duty to exercise reasonable care.  The duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes.  Osborne was a CitiMortgage Lending Agent with special training and experience in the mortgage lending industry.  *See* ¶ 105(b), *supra*.

119.    Osborne violated his duty to Mr. Pluta to exercise reasonable care when he failed to process Mr. Pluta's Sept. 26 Loan.  Osborne further violated his duty to Mr. Pluta to exercise reasonable care when he knowingly made misleading representations, half truths, and material omissions of fact to Mr. Pluta in the course of their business relationship.

120.    CitiMortgage and Osborne violated their duty to make certain discloses required by federal and D.C. law.

121.    CitiMortgage violated the duty of care imposed by the licensing requirements of the D.C. Mortgage Lender and/or Broker Act of 1996, D.C. Code § 26-1103(a).

122.    CitiMortgage, as Osborne's employer, is vicariously liable for any of Osborne's tortious acts.

123.    Osborne's false statements and/or omissions involved material issues including but not limited to those detailed in ¶ 109.

28

124. Mr. Pluta reasonably relied on the false information from Osborne. *See* ¶¶ 112-115, *supra*.

125. Mr. Pluta relied to his detriment on Osborne's false information, changing his position in reliance on Osborne's statements and as a result suffering financial injury. *Id*.

126. Osborne's false statements and material omissions proximately caused injury to the Plaintiffs in the following ways, including but not limited to:

a. The loss of certain capital that was otherwise taken up by an additional 2.5% down payment;

b. Mr. Pluta has suffered and continues to suffer financial injury from a higher than bargained for interest rate on his Primary Loan, or approximately $20,250 in additional interest over the life of the loan;

c. Any loss in market value to the Condominium since the date of closing given that, in reliance of Osborne's false statement and/or omissions, Mr. Pluta would have walked away from the purchase of the Condominium had he not believed that the terms of the Sept. 26 Loan were secure;

d. Fees associated with the rushed liquidation of Mr. Pluta's Roth IRA and Citibank brokerage;

e. The investment loss of equities that were caused to be sold for an additional 2.5% down payment;

f. The investment and tax loss on the liquidation of Mr. Pluta's IRA;

g. The money it cost to secure documents for the CitiMortgage underwriters the day before and day of closing; and

h. Increased closing costs, namely Title Insurance over twice the estimate quoted by

Osborne in the Sept. 26 GFE.

127.    The harm resulting from Osborne's actions were reasonably able to be predicted, as Osborne could have foreseen that failing to secure Mr. Pluta's Sept. 26 Loan and subsequently failing to disclose that fact (and in fact misrepresenting just the opposite) would cause the Mr. Pluta harm.

128.    The harm resulting from Osborne's actions were reasonably able to be predicted, as Osborne could have foreseen that failing to secure Mr. Pluta's Sept. 26 Loan and subsequently failing to disclose that fact (and in fact misrepresenting just the opposite) would cause the Mr. Pluta harm.

## COUNT III
## Promissory Estoppel

129.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

130.    Osborne promised Mr. Pluta that the final terms of Mr. Pluta's loans would be those embodied in the Sept. 26 GFE.

131.    Osborne's promise reasonably induced reliance on that promise.  Mr. Pluta chose CitiMortgage as his lender and eventually consummated the purchase of the Condominium based on Osborne's promise.

132.    Osborne also promised Mr. Pluta at closing that CitiMortgage would revise the terms of Mr. Pluta's Primary Loan to match those embodied in the Sept. 26 GFE.

133.    Based in substantial reliance on Osborne's promise Mr. Pluta went ahead with closing on the Condominium on October 19, 2005.

30

134.    Mr. Pluta reasonably relied on Osborne's promises to Mr. Pluta's detriment, suffering great and continuing financial harm.

## COUNT IV
### Negligent Hiring, Training, Supervision, and/or Retention

135.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 - 105 of this Complaint as if fully restated herein.

136.    CitiMortgage has a duty to the public to use reasonable care in the selection, training, supervision, and retention of its employees.

137.    CitiMortgage knew or should have known that Osborne behaved in an incompetent manner.

138.    Moore, Osborne's direct supervisor, admitted to Mr. Pluta during a telephone conversation on or about December 13, 2005, that Osborne had been a "headache" for CitiMortgage and that Mr. Pluta was not he only one that had complained about Osborne.

139.    Internal CitiMortgage e-mails evidence that CitiMortgage was on notice that Osborne, by violating CitiMortgage policies and procedures, was behaving in an incompetent manner.  Despite this knowledge CitiMortgage chose to do nothing to punish Osborne or protect Mr. Pluta.  *See* ¶¶ 57-63, 65-69, *supra*.

140.    CitiMortgage was negligent in the training of its lending agents, as at least two CitiMortgage lending agents in close geographic and organizational proximity, Osborne and Cato, suffered from similar disclosure-related infirmities.  Osborne's direct supervisor during the operative period, Cato, "quit before he could be fired" for allegedly failing to make "RESPA required disclosures" to CitiMortgage customers.

31

141.    Upon information and belief, discovery will provide additional evidence of CitiMortgage's awareness of Osborne's incompetence, particularly through Osborne's employment file.

142.    Given the high-stakes nature of Osborne's position, the absolute trust home buyers are forced to place in the lending agent's hands, and the position of trust afforded their lending agents as employees under the "Citigroup umbrella," CitiMortgage should have more adequately trained Osborne, supervised his work product, responded to complaints and concerns, and when his incompetence became clear, terminated his employment.

143.    Armed with that actual and/or constructive knowledge of Osborne's incompetence, CitiMortgage failed to adequately train, supervise and/or terminate Osborne at the appropriately.

## COUNT V
## Professional Malpractice

144.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

145.    Osborne had a duty to use such skill, prudence, and diligence that other members of his profession commonly posses and exercise under similar circumstances, including the duty to process a loan application with reasonable care.

146.    Osborne received special training specific to lending agents while at CitiMortgage. *See* ¶ 105(b), *supra*.

147.    Osborne breached his duty to Mr. Pluta by defrauding, negligently misrepresenting, and omitting material facts relevant to Mr. Pluta's financing to purchase the Condominium.

148.    Osborne also violated his duty to make certain discloses required by federal and D.C. law.

149.    There exists a proximate causal connection between Osborne's negligent conduct and the resulting injury to the Mr. Pluta.  *See* ¶¶ 112-114, *supra*.

150.    CitiMortgage, as Osborne's employer, is vicariously liable for any of Osborne's tortious acts.

151.    Actual loss or damage resulted from Osborne's malpractice.

## COUNT VI
## Negligence

152.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

153.    CitiMortgage and Osborne violated their duty to make certain discloses required by federal and D.C. law.

154.    Osborne's conduct was in violation of his duty to exercise reasonable care with Mr. Pluta.

155.    The duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes.  *See* ¶ 105(b), *supra*.

156.    Osborne breached that duty of care through his various nonfeasances, false statements, and material omissions directed at Mr. Pluta, thus violating the applicable standard of care.

157.    Osborne's violation of his duty to exercise reasonable care with Mr. Pluta was causally related to the harm to Mr. Pluta complained of.

158.     CitiMortgage, as Osborne's employer, is vicariously liable for any of Osborne's tortious acts.

## COUNT VII
## Conversion

159.     Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

160.     The tort of conversion involves an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property.

161.     Defendants exercised ownership, dominion and control over a measure of Mr. Pluta's money though a series of unlawful acts.  These acts include:

a.   Surprising Mr. Pluta the day before the schedule to obtain a extract a larger down payment from Mr. Pluta in order to shift risk when they knew Mr. Pluta lacked meaningful choice or bargaining power;

b.   Extracting fees for the sale of securities that were necessitated by their own unlawful acts;

c.   Failing to refund, amend, or revise Mr. Pluta's Primary Loan to reflect the terms of the Sept. 26 Loan;

d.   Collecting interest or fees not contracted for under the terms of the Sept. 26 Loan.

## COUNT VIII
## Violations of the District of Columbia Consumer Protection Act ("CPPA")
## D.C. Code Section 28-3901, *et. seq*.

162.     Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

163.    The Defendants' acts of soliciting Mr. Pluta's business, brokering a loan to Mr. Pluta, lending Mr. Pluta money and taking a security interest in Mr. Pluta's property, constitute "trade practices" that are regulated by and are within the meaning of CPPA.

164.    It is a violation of D.C. Code Section 28-3904 for an person to:

Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have (subsection (a));

Represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have (subsection (b));

Represent that goods or services are of a particular standard, grade, style or model, if in fact they are of another (subsection (d));

Misrepresent a material fact which has a tendency to mislead (subsection (e));

Fail to state a material fact if such failure tends to mislead (subsection (f));

Fail to supply to a consumer a copy of a sales or service contract or other evidence of indebtedness which the consumer may execute (subsection (g));

Falsely state that services, replacement or repairs are needed (subsection (k));

Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not (subsection (u));

Misrepresent the authority of a salesmen, representative or agent to negotiate the final terms of a transaction (subsection (v)).

165.    Courts have also held that violations of other laws of the District of Columbia may be a violation of the CPPA (subsection (f)).

166.    The Defendants violated the CPPA in numerous ways, including, but not limited to, the following:

a.    With respect to subsection (a), Osborne represented to Mr. Pluta that the Sept. 26 Loan had approval or sanction -- by CitiMortgage -- that it did not;

b.    With respect to subsection (a), Osborne represented to Mr. Pluta that Mr. Pluta's Primary and Secondary Loans had characteristics and benefits -- the terms of the loans -- that it did not;

c.    With respect to subsection (b), Osborne represented to Mr. Pluta that Osborne had the approval of CitiMortgage to bind CitiMortgage to the terms of the Sept. 26 Loan, when in fact he did not;

d.    With respect to subsection (d), Osborne represented to Mr. Pluta that his Primary and Secondary Loans would embody the terms of the Sept. 26 Loan, when in fact, they did not and Osborne was aware that they would not;

e.    With respect to subsection (e), Osborne mislead Mr. Pluta as to material terms of Mr. Pluta's Primary and Secondary Loans, representing to Mr. Pluta that those loans would embody the terms of the Sept. 26 Loan, including *inter alia*, the interest rate, the down payment, points assessed on the loan principal, and the title insurance, to which Mr. Pluta reasonably relied;

f.    With respect to subsection (f), Osborne failed to disclose to Mr. Pluta the true status of the Sept. 26 Loan, even when prompted, until the day before and the day of closing, and even then made material false misrepresentations, all of which caused Mr. Pluta to change his position to his detriment and injury;

g.    With respect to subsection (f), Osborne admitted on January 25, 2007, that he knowingly

failed to alert Mr. Pluta of the true status of Mr. Pluta's Condominium financing;

h.  With respect to subsection (k), Osborne falsely represented that points and title insurance of a certain amount were needed when they were in fact not -- Osborne represented and Mr. Pluta had agreed to no points and Osborne had represented title insurance costing 88% less than demanded at closing;

i.  With respect to subsection (k), Osborne falsely represented that his Sept. 26 Loan required repairs (an additional $17,500 down payment) that it did not;

j.  With respect to subsection (q), the Defendants failed to provide Mr. Pluta with proper written disclosures as required by various state and federal laws;

k.  With respect to subsection (u), Osborne represented to Mr. Pluta that the Sept. 26 Loan had been secured, was in processing, and with the underwriters, when in fact, it was not;

l.  With respect to subsection (v), Osborne represented to Mr. Pluta through actions and words that Osborne had the authority to extend and negotiate the final terms of the loan transaction and ratify the acceptance of such negotiations.

167.  Specifically Defendant's violated the disclosure provisions of the Truth in Lending Act ("TILA") (discussed ¶¶ 170-174, *infra*) and the Real Estate Settlement Procedures Act ("RESPA") 12 USC 2601, *et. seq.* and the regulations promulgated hereunder, 24 C.F.R. §§ 3500, *et. seq.*

168.  CitiMortgage, as Osborne's employer, is vicariously liable for any of Osborne's tortious acts.

169.  Due to the Defendants' violations of the CPPA, Mr. Pluta is entitled to the statutory relief provided for in D.C. Code Section 28-3905(k)(1) of the CPPA including, *inter alia*,

compensatory damages, treble and punitive damages, reasonable attorney's fees, injunctive relief including rescission of the Loans, and any other relief this court deems proper.

### COUNT IX
### Violations of the Truth In Lending Act
### 15 U.S.C. § 1601, *et. seq.*

170.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

171.    15 U.S.C. 1638(b)(1) of TILA requires the following disclosures to be made before the credit is extended: the "amount financed," as described in 15 U.S.C. Section 1638(a)(2)(A); the "finance charge," as described in 15 U.S.C. Section 1638(a)(3) and Federal Reserve Board Regulation, 12 C.F.R. Sections 226.4 and 226.18(d) ("Regulation Z"), Sections 226.4; and the "annual percentage rate," as described in 15 U.S.C. Section 1638(a) and Regulation Z, Section 226.18(e).

172.    15 U.S.C. 1638(b)(2) of TILA requires that "good faith estimates of the disclosures required under subsection (a) of this section shall be made in accordance with regulations of the Board under section 1631(c) of this title before the credit is extended, or shall be delivered or placed in the mail not later than three business days after the creditor receives the consumer's written application, which ever is earlier. If the disclosure statement furnished within three days of the written application contains an annual percentage rate which is subsequently rendered inaccurate

within the meaning of section 1606(c) of this title, the creditor shall furnish another statement at the time of settlement or consummation," as applied and interpreted by Regulation Z."

173.    Defendants, through their agent Osborne, violated TILA by failing to comply with the disclosure requirements in numerous ways, including but not limited to the following:

a.    Providing inaccurate finance charge, amount financed and APR disclosures;

b.    Untimely disclosures of for the Primary and Secondary Loans;

c.    Insufficient disclosures and misrepresentations related to the Sept. 26 GFE; and

d.    Submission of the fraudulent Oct. 7 TILA and nondisclosure of such.

174.    Pursuant to 15 U.S.C. 1640, Mr. Pluta is entitled to recover the appropriate statutory penalty, plus costs and reasonable attorney's fees, and any other relief this Court deems proper.

## COUNT X
## Violations of the Usury Statute
## D.C. Code Section 28-3301, *et. seq.*

175.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

176.    D.C. Code Section 28-3301(f) of the Usury Statute states that a lender, in a loan or financial transaction which is secured by a deed of trust on residential property, must furnish the borrower a separate statement in writing which complies with the disclosure provisions of the TILA, as applied and interpreted by Regulation Z.

177.    At all terms relevant hereto, Defendants extended to or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of the

39

cause of action is initially payable, making these defendants a creditors within the meaning of TILA and Regulation Z, Section 226.2 (a)(17).

178.    Section 1638(b)(1) of the TILA requires the following disclosures to be made before the credit is extended: the "amount financed," as described in 15 U.S.C. Section 1638 (a) (2) (A); the "finance charge," as described in 15 U.S.C. Section 1638 (a) (3) and Regulation Z, Sections 226.4 and 226.18 (d); and the "annual percentage rate," as described in 15 U.S.C. Section 1638(a) and Regulation Z, Section 226.18 (e).

179.    CitiMortgage, though Osborne, violated the Usury Statute by failing to comply with its TILA disclosure requirements in numerous ways, including, but not limited to those detailed in ¶ 173 and elsewhere.

180.    The Defendants' failures to comply with D.C. Code Section 28-3301 were intentional, willful and wanton, and justify the imposition of punitive damages.

181.    Pursuant to D.C. Code Sections 28-3314, Mr. Pluta is entitled reasonable attorney's fees, actual and punitive damages, and any other relief this Court deems proper.

## COUNT XI
### Violations of the D.C. Mortgage Lender and/or Broker Act of 1996 ("MLBA") D.C. Code Section 26-1101, *et. seq.*

182.    Mr. Pluta realleges and incorporates by reference the allegations of paragraphs 1 – 105 of this Complaint as if fully restated herein.

183.    CitiMortgage, as required by D.C. Code Section 28-1103, is licensed by the D.C. Department of Insurance, Securities, and Banking to engage in business as a mortgage lender in the D.C.

184.    D.C. Code Section 28-1113(a)(1) of the MLBA states that a licensee who offers to make or procure a loan secured by a first or subordinate mortgage or deed of trust on a single to 4-family home to be occupied by the borrower shall provide the borrower with a financing agreement executed by the lender.

185.    D.C. Code Section 28-1113(b)(1) of the MLBA requires that the financing agreement executed by the lender shall be delivered to the borrower at least 72 hours before the time of settlement agreed to by the parties and shall include: (A) the effective fixed interest rate or initial interest rate that will be applied to the loan;  and (B) a restatement of all the remaining unchanged provisions of the financing agreement.

186.    CitiMortgage, though Osborne, violated the MLBA by failing to "deliver[] to the borrower at least 72 hours before the time of settlement agreed to by the parties" the "financing agreement executed by the lender."

187.    Mr. Pluta is entitled to the relief afforded under D.C. Code Section 28-1113(b)(3) of the MLBA which states that "[a] borrower aggrieved by any violation of this section shall be entitled to bring a civil suit for damages, including reasonable attorney's fees, against the lender."


WHEREFORE, Mr. Pluta requests judgment against the Defendants on all claims and award such damages appropriate to each and every claim as may be proved at trial; grant costs and expenses, including reasonable attorney's fees, compensatory, treble and punitive damages, statutorily available monetary damages, equitable revision of terms of the Primary Loan to those of the Sept. 26 Loan or rescission of both loans, and for such further relief as this Court deems just and proper.

JURY DEMAND


DATE:  APRIL 12, 2007



Respectfully submitted,


By: *Thomas C. Willcox*
    Thomas C. Willcox, Esq.
    D.C. Bar No. 445135
    1020 19th Street, N.W., Suite 400
    Washington, D.C. 20036
    Phone: (202) 223-0090
    Facsimile: (202) 452-0092
    E-Mail: tcw19@columbia.edu

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff Scott D. Pluta's

Amended Complaint was served by electronic and U.S. mail, as agreed, on this the 12th day of April,

2007, to:

Alec W. Farr (D.C. Bar No. 440046)
Kristin A. Hird (D.C. Bar. No. 497800)
BRYAN CAVE LLP
700 Thirteenth Street, NW, Suite 700
Washington, D.C. 20005

*Counsel for CitiMortgage, Inc. and Larry
Osborne*


_____
Thomas C. Willcox

43

**TRUTH IN LENDING DISCLOSURE STATEMENT PRELIMINARY**
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| Applicant: Scott D. Pluta<br>1702 Rugby Ave.<br>Charlottesville, VA 22903 | Lender: CitiMortgage, Inc. |
| --- | --- |

Loan No:  002003200631

| Property: Pre-Approval<br>Washington, DC 20599 | Type of Loan: Conventional<br>Date: September 26, 2005<br>Disclosure Type: Preliminary |
| --- | --- |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
| --- | --- | --- | --- |
| 5.775e% | $ 597,063.71e | $ 537,404.09e | $ 1,134,467.80e |

REPAYMENT: See Payment Schedule below.

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
| --- | --- | --- | --- | --- | --- |
| 359 | 3,151.29e | Monthly beginning 12/01/2005e | | | |
| 1 | 3,154.69e | Monthly beginning 11/01/2035e | | | |

DEMAND FEATURE: [X]  This loan does not have a Demand Feature.   [ ]  This loan has a Demand Feature as follows:

REQUIRED DEPOSIT: [X]  The annual percentage rate does not take into account your required deposit.

VARIABLE RATE FEATURE: [ ]  This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:  Pre-Approval<br>Washington, DC 20599

ASSUMPTION: Someone buying this property  [X] cannot assume the remainder of the mortgage on the original terms<br>[ ] may assume, subject to conditions, the remainder of the mortgage on the original terms.

NON-FILING INSURANCE: $ N/A

PROPERTY INSURANCE: [X] Homeowner's insurance, or fire and extended coverage, is a required condition of this loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. Borrower may purchase this insurance from any insurance company acceptable to lender.

LATE CHARGES: If a payment is more than  15  days late, you will be charged a late charge of ____5.000%_ of the payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may   [X] will not   have to pay a prepayment penalty.
[ ] may   [X] will not   have to pay a minimum finance charge.
[ ] may   [X] will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

e means an estimate - All dates and numerical disclosures except for late payment disclosures are estimates.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
BORROWER/DATE          Scott D. Pluta

_____
BORROWER/DATE

_____
BORROWER/DATE

_____
BORROWER/DATE

158003 - 07/22/2002   [002003200631]
CitiMortgage 2.9.1.30

00200320 0631

| VI. ASSETS AND LIABILITIES (cont.) | | | | | | | |
|---|---|---|---|---|---|---|---|

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|

| | | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| | | | | Yes | No | Yes | No |
| a. | Purchase price | $ 675,000.00 | | | | | |
| b. | Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | | X | | |
| c. | Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | | X | | |
| d. | Refinance (incl. debts to be paid off) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| e. | Estimated prepaid items | 1,855.91 | d. Are you a party to a lawsuit? | | X | | |
| f. | Estimated closing costs | 10,155.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| g. | PMI, MIP, Funding Fee | | | | | | |
| h. | Discount (if Borrower will pay) | | | | | | |
| i. | Total costs (add items a through h) | 687,010.91 | | | | | |
| j. | Subordinate financing | 67,500.00 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| k. | Borrower's closing costs paid by Seller | | | | | | |
| l. | Other Credits (explain) | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| | | | h. Is any part of the down payment borrowed? | | X | | |
| | | | i. Are you a co-maker or endorser on a note? | | X | | |
| | | | j. Are you a U.S. citizen? | X | | | |
| | | | k. Are you a permanent resident alien? | | X | | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 540,000.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| n. | PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | | X | | |
| o. | Loan amount (add m & n) | 540,000.00 | (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| p. | Cash from/ to Borrower (subtract j, k, l & o from i) | 79,510.91 | (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

| IX. ACKNOWLEDGEMENT AND AGREEMENT | |
|---|---|

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by the mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agent, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

| X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES | |
|---|---|

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | | | CO-BORROWER | ☐ I do not wish to furnish this information | |
|---|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | X Not Hispanic or Latino | | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaskan Native | ☐ Asian | ☐ Black or African American | Race: | ☐ American Indian or Alaskan Native | ☐ Asian ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | X White | | | ☐ Native Hawaiian or Other Pacific Islander | ☐ White |
| Sex: | ☐ Female | X Male | | Sex: | ☐ Female | ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Larry Osborne | CitiMortgage, Inc. |
| X face-to-face interview | Interviewer's Signature | Date |
| ☐ Mail | | 09/14/05 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | 1000 Technology Drive |
| ☐ Internet | (301) 537-9037 | O'Fallon, MO 63304- |

| 1003-NEW - 06/17/03 | Page 3 | Fannie Mae Form 1003 01/04 |
|---|---|---|
| | | Freddie Mac Form 65 01/04 |

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS
### (Continued)

**THIS SECTION TO BE COMPLETED BY LENDER ONLY IF
A PARTICULAR PROVIDER OF SERVICE IS REQUIRED**

Listed below are providers of service which we require you to use. The charges indicated in the Good Faith Estimate above are based upon the corresponding charges of the providers designated below.

**Appraiser**
We will select an Appraiser from our approved list of certified appraisers. The range of costs for this service is provided in the itemization of Estimated Loan Costs listed on the first page of your Good Faith Estimate.

**Attorney/Closing Agent**
We will select an Attorney/Closing Agent from our approved list of attorneys/closing agents. The range of costs for this service is provided in the itemization of Estimated Loan Costs listed on the first page of your Good Faith Estimate.

**Credit Bureaus**
Trans Union Corporation
Consumer Services Division 760 Sproul Road, P.O. Box 390
Springfield, PA  19064-0390
Phone No:(800) 916-8800

EXPERIAN
701 Experian Parkway P.O. Box 949
Allen, TX  76013-0949
Phone No:(800) 333-4930
Experian was a depositor of Citibank, F.S.B. in the past 12 months.

Equifax Credit Information Services
1150 Lake Hearn Drive, Suite 4
Atlanta, GA  30342
Phone No:(800) 685-1111

Equifax Mortgage Information Services
6 East Clementon Road
Gibbsboro, NJ  08026
Phone No:(800) 333-0037

**Mortgage Insurers**
We will select a Mortgage Insurer from our approved list of Mortgage Insurance Companies. The range of costs for this service is provided in the itemization of Estimated Loan Costs listed on the first page of your Good Faith Estimate.

---

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.

**PRIOR TO SIGNING BELOW, APPLICANT(S) READ THIS GOOD FAITH ESTIMATE OF SETTLEMENT COSTS AND UNDERSTOOD ITS CONTENTS.**

**APPLICANT(S):**

X _____          Date: _____
      Scott D. Fluta

X _____          Date: _____

X _____          Date: _____

X _____          Date: _____

X _____          Date: _____
      Authorized Official

GFECX - 03/01/2002    [002003200631]
CitiMortgage 2.9.1.30

## GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

| | |
|---|---|
| Applicant: Scott D. Pluta<br>1702 Rugby Ave.<br>Charlottesville, VA 22903 | Lender: CitiMortgage, Inc.<br>1000 Technology Drive<br>O' Fallon, MO 63368-2240 |

Application No: 002003200631

| | | |
|---|---|---|
| Property: Pre-Approval<br>Washington, DC 20599 | Loan Type: | Conventional |
| | Date: | 09/26/2005 |
| | Mortgage Amount: | $ 540,000.00 |
| | Estimated Interest Rate: | 5.750% |

The information provided below reflects estimates of the charges which you are likely to incur at settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement which you will be receiving at settlement. The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement. Items marked "(p.o.c.)" were or will be paid outside the closing, they are shown here for information purposes and are not included in the totals.

### Description of Settlement Charges

| | | BUYER | LENDER |
|---|---|---|---|
| 0205. | Lender Paid Credit | -500.00 | |
| 0808. | Commitment Fee | 565.00 | |
| 0812. | Application Fee | 500.00 | |
| 0901. | Interim Interest 13 days @ $85.07 per day | 1,105.91 | |
| 1004. | County Property Tax Escrow 3 payments @ $250.00 per payment | 750.00 | |
| 1101. | Settlement or Closing Fee | 425.00 | |
| 1102. | Abstract or Title Search | 300.00 | |
| 1104. | Title Insurance Binder | 45.00 | |
| 1108. | Title Insurance | 1,195.00 | |
| 1201. | Recording Fees | 150.00 | |
| 1202. | City/County Tax/Stamps | 7,425.00 | |
| 1302. | Pest Inspection | 50.00 | |
| | Total | $ 12,010.91 | $ |

## Osborne, Larry C

| | |
|---|---|
| **From:** | Peterson, Kevin |
| **Sent:** | Monday, September 26, 2005 1:29 |
| **To:** | Vaughan, Tami; Osborne, Larry C |
| **Subject:** | RE: Pluta #2003200631 |

Larry,

I agree with Tami's proposal. The only other option would be a 80/10/10 with ratios between 50 and 55%.

Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI  48304-8409

This information is the property of CitiGroup, considered Citigroup Confidential and is for Internal Use Only.

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Monday, September 26, 2005 1:26 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** Pluta #2003200631

Based on the additional information provided (including $407/mo Citi student loan(s) payments), borrower's qualifying total debt ratio = 52.01%. This ratio is high for 80/15/5, I/O financing. The BE ratio exceeds the guidelines for HELOC approval.

I can modify my original counteroffer to reflect 80/15/5 financing based on maximum sales price of $625,000, 1st mortgage of $500,000, and HELOC of $93,750, and request a BE ratio exception at 49.31% based on 799 FMCS.

Please advise,
Thank you.
Tami

8·0/10/10

I — 5.75  30 fr

⤷ 3,151.29

II — Prime minus 1.5 — 6 month
plus 2.5 — 10/30

Closing Costs

- No original fee

Title – Cap Title

20
30

**Pluta, Scott**

| | |
|---|---|
| **From:** | Scott Davis [Scott.Davis@msmcorp.com] |
| **Sent:** | Tuesday, September 27, 2005 9:01 AM |
| **To:** | Scott D. Pluta |
| **Subject:** | RE: Documents for Scott Pluta-30 Year Fixed Principle and Interest |

I would be very careful of that quote.  Did you get a GFE?  The conforming rates are not that low, I find it difficult to believe that they offer you a 30 year fixed jumbo loan for that rate with no points. Even if you have decided to go with them, feel free to call me with any questions.  The important thing is that you are getting the best rate and program.
Questions to ask:

1-is there a prepay penalty
2-is it a 30 year fixed loan
3-guaranteed closing costs
4-Do you have a GFE/TIL
5- Are you locked in is there a fee for doing so.

Scott, again, please do not hesitate to call me with any questions, or if you want me to take a look at the gfe for you.

Best,

Scott

Scott Davis
703.209.3138 cell
703.893.6900 ext.16 office
703.893.7733 Fax
Market Street Mortgage
Tyson's Corner, Virginia

This message and any attachments may contain confidential or privileged information and are only for the intended recipient of this message.  If you are not the intended recipient, please notify the sender by return e-mail or phone, and delete or destroy this and all copies of this message and all attachments.  Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

-----Original Message-----
From: Scott D. Pluta [mailto:sdpluta@hotmail.com]
Sent: Monday, September 26, 2005 9:05 PM
To: Scott Davis
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and Interest

Scott,
Thank you for all your help and taking the time to get me a Market Street offer but CitiMortgage came with a doc loan at 5.75% (5.77 APR) without an origination fee, etc.  Again, thanks for all your help - Scott

-----Original Message-----
From: Scott Davis [mailto:Scott.Davis@msmcorp.com]
Sent: Saturday, September 24, 2005 8:13 PM
To: Scott D. Pluta
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and Interest

No worries, Scott.  I figured that is what happened. Can Citi not send you a GFE via email?
I will follow up with you on Monday.

Have a great weekend!

Best,
Scott

Scott Davis
703.209.3138 cell
703.893.6900 ext.16 office
703.893.7733 Fax
Market Street Mortgage
Tyson's Corner, Virginia

This message and any attachments may contain confidential or privileged information and are only for
the intended recipient of this message.  If you are not the intended recipient, please notify the sender
by return e-mail or phone, and delete or destroy this and all copies of this message and all
attachments.  Any unauthorized disclosure, use, distribution, or reproduction of this message or any
attachments is prohibited and may be unlawful.


-----Original Message-----
From: Scott D. Pluta [mailto:sdpluta@hotmail.com]
Sent: Saturday, September 24, 2005 9:59 AM
To: Scott Davis
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and Interest

Scott, sorry I didn't call you yesterday - I was pretty busy all day at work and didn't have time to head
over to Citi and check out their proposal.  I called the lending agent there and told them we'd meet
first thing Monday morning.  After I meet with them I'll figure out who I'm going to go with.
Thanks a lot and have an enjoyable weekend - Scott


-----Original Message-----
From: Scott Davis [mailto:scott.davis@msmcorp.com]
Sent: Thursday, September 22, 2005 10:18 PM
To: Pluta, Scott - Borrower
Subject: Documents for Scott Pluta-30 Year Fixed Principle and Interest

Scott-

It was good to meet you this afternoon.
Here is the 2nd GFE.  Please call me with any questions.
1 more to follow.

Best,

Scott

Scott Davis
703.209.3138 cell
703.893.6900 ext.16 office
703.893.7733 Fax
Market Street Mortgage
Tyson's Corner, Virginia

This message and any attachments may contain confidential or privileged information and are only for the intended recipient of this message.  If you are not the intended recipient, please notify the sender by return e-mail or phone, and delete or destroy this and all copies of this message and all attachments.  Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.
----------------------------------------------------------------
To view the attached document you must have Adobe Acrobat Reader installed.  To download the Adobe Acrobat Reader, point your browser to:
http://www.adobe.com/products/acrobat/readstep2.html
----------------------------------------------------------------
----------------------------------------------------------------
You must extract the attached file using WinZip or PKZip.
To download an evaluation copy of WinZip or PKZip, point your browser to:
http://www.winzip.com/ddchomea.htm
http://www.pkware.com/downloads/
----------------------------------------------------------------

## Pluta, Scott

**From:**    Scott D. Pluta [sdpluta@hotmail.com]
**Sent:**    Monday, September 26, 2005 9:15 PM
**To:**      larry.c.osborne@citigroup.com
**Subject:** rate

Larry,
You can go ahead and lock me in for the rate we discussed today – I'll call tomorrow to follow up and discuss the next steps to take - thanks
Scott

**Pluta, Scott**

| | |
|---|---|
| **From:** | Scott D. Pluta [sdpluta@hotmail.com] |
| **Sent:** | Tuesday, September 27, 2005 7:47 PM |
| **To:** | larry.c.osborne@citigroup.com |
| **Subject:** | FW: Documents for Scott Pluta-30 Year Fixed Principle and Interest |

```
Larry -
I'll stop by first thing tomorrow morning with the docs you asked for.  Also, I'm
forwarding a reply I got from the other lending agent - any thoughts?  We'll discuss
briefly tomorrow - thanks
Scott


-----Original Message-----
From: Scott Davis [mailto:Scott.Davis@msmcorp.com]
Sent: Tuesday, September 27, 2005 9:01 AM
To: Scott D. Pluta
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and Interest

I would be very careful of that quote.  Did you get a GFE?  The
conforming rates are not that low, I find it difficult to believe that
they offer you a 30 year fixed jumbo loan for that rate with no points.
Even if you have decided to go with them, feel free to call me with any
questions.  The important thing is that you are getting the best rate
and program.
Questions to ask:

1-is there a prepay penalty
2-is it a 30 year fixed loan
3-guaranteed closing costs
4-Do you have a GFE/TIL
5- Are you locked in is there a fee for doing so.

Scott, again, please do not hesitate to call me with any questions, or
if you want me to take a look at the gfe for you.

Best,

Scott

Scott Davis
703.209.3138 cell
703.893.6900 ext.16 office
703.893.7733 Fax
Market Street Mortgage
Tyson's Corner, Virginia


This message and any attachments may contain confidential or privileged
information and are only for the intended recipient of this message.  If
you are not the intended recipient, please notify the sender by return
e-mail or phone, and delete or destroy this and all copies of this
message and all attachments.  Any unauthorized disclosure, use,
distribution, or reproduction of this message or any attachments is
prohibited and may be unlawful.




-----Original Message-----
From: Scott D. Pluta [mailto:sdpluta@hotmail.com]
Sent: Monday, September 26, 2005 9:05 PM
To: Scott Davis
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and
```

Interest

Scott,
Thank you for all your help and taking the time to get me a Market
Street offer but CitiMortgage came with a doc loan at 5.75% (5.77 APR)
without an origination fee, etc.  Again, thanks for all your help -
Scott

-----Original Message-----
From: Scott Davis [mailto:Scott.Davis@msmcorp.com]
Sent: Saturday, September 24, 2005 8:13 PM
To: Scott D. Pluta
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and
Interest

No worries, Scott.  I figured that is what happened. Can Citi not send
you a GFE via email?
I will follow up with you on Monday.

Have a great weekend!

Best,
Scott

Scott Davis
703.209.3138 cell
703.893.6900 ext.16 office
703.893.7733 Fax
Market Street Mortgage
Tyson's Corner, Virginia

This message and any attachments may contain confidential or privileged
information and are only for the intended recipient of this message.  If
you are not the intended recipient, please notify the sender by return
e-mail or phone, and delete or destroy this and all copies of this
message and all attachments.  Any unauthorized disclosure, use,
distribution, or reproduction of this message or any attachments is
prohibited and may be unlawful.

-----Original Message-----
From: Scott D. Pluta [mailto:sdpluta@hotmail.com]
Sent: Saturday, September 24, 2005 9:59 AM
To: Scott Davis
Subject: RE: Documents for Scott Pluta-30 Year Fixed Principle and
Interest

Scott, sorry I didn't call you yesterday - I was pretty busy all day at
work and didn't have time to head over to Citi and check out their
proposal.  I called the lending agent there and told them we'd meet
first thing Monday morning.  After I meet with them I'll figure out who
I'm going to go with.
Thanks a lot and have an enjoyable weekend - Scott

-----Original Message-----
From: Scott Davis [mailto:scott.davis@msmcorp.com]
Sent: Thursday, September 22, 2005 10:18 PM
To: Pluta, Scott - Borrower
Subject: Documents for Scott Pluta-30 Year Fixed Principle and Interest

Scott-

It was good to meet you this afternoon.

Here is the 2nd GFE.  Please call me with any questions.
1 more to follow.

Best,

Scott

Scott Davis
703.209.3138 cell
703.893.6900 ext.16 office
703.893.7733 Fax
Market Street Mortgage
Tyson's Corner, Virginia

This message and any attachments may contain confidential or privileged
information and are only for the intended recipient of this message.  If
you are not the intended recipient, please notify the sender by return
e-mail or phone, and delete or destroy this and all copies of this
message and all attachments.  Any unauthorized disclosure, use,
distribution, or reproduction of this message or any attachments is
prohibited and may be unlawful.
----------------------------------------------------------------
To view the attached document you must have Adobe Acrobat Reader
installed.  To download the Adobe Acrobat Reader, point your browser to:
http://www.adobe.com/products/acrobat/readstep2.html
----------------------------------------------------------------
----------------------------------------------------------------
You must extract the attached file using WinZip or PKZip.
To download an evaluation copy of WinZip or PKZip, point your browser
to:
http://www.winzip.com/ddchomea.htm
http://www.pkware.com/downloads/
----------------------------------------------------------------

## Osborne, Larry C

| | |
|---|---|
| **From:** | Peterson, Kevin |
| **Sent:** | Tuesday, September 20, 2005 1:05 PM |
| **To:** | Osborne, Larry C |
| **Subject:** | RE: New Surestart application, 002003200631 |

Did you provide this information to the Underwriter??

Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI  48304-8409

This information is the property of CitiGroup, considered Citigroup Confidential and is for Internal Use Only.

-----Original Message-----

| | |
|---|---|
| **From:** | Osborne, Larry C |
| **Sent:** | Tuesday, September 20, 2005 10:28 AM |
| **To:** | Peterson, Kevin |
| **Subject:** | FW: New Surestart application, 002003200631 |
| **Importance:** | High |

Good morning Kevin,

I wanted to follow up on this Surestart counteroffer that is in still in 2nd-level review.  The borrower's primary issue is his DTI, which is directly related to his student loans being deferred.  They are deferred until November 2005, and unfortunately, don't post a payment on his credit report.  The borrower is receiving documentation today from Citibank Student Loans to show his new loan payments of $460 covering all of his Citibank Student loans.  Can we rework the figures at the originally requested loan amounts upon receipt of this info to get him approved?  He does have an offer on a property on the table already ( I know - he jumped the gun ).  Please advise ASAP.  he has to have an answer today.

Thanks and regards,

*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----

| | |
|---|---|
| **From:** | Sidney, Jennifer |
| **Sent:** | Monday, September 19, 2005 6:32 AM |
| **To:** | Osborne, Larry C |
| **Subject:** | RE: New Surestart application, 002003200631 |

Counter offer is pending.  Getting 2nd signed.

1

CITI-PLUTA-000001

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Friday, September 16, 2005 5:29 PM
**To:** Sidney, Jennifer
**Subject:** FW: New Surestart application, 002003200631
**Importance:** High

Any news? Please advise. Thanks.

*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Friday, September 16, 2005 3:42 PM
**To:** Sidney, Jennifer; Vaughan, Tami
**Cc:** Tandoc, James
**Subject:** New Surestart application, 002003200631
**Importance:** High

Good afternoon ladies,

I am writing to attempt to expedite the processing and review of this Surestart application. The borrower in question has unfortunately jumped the gun and put an offer on a property and needed some kind of preapproval letter immediately. I need any/all assistance at this point to expedite this sudden request. Please advise. Thanks.

*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

CITI-PLUTA-000002

## Osborne, Larry C

| | |
|---|---|
| **From:** | Vaughan, Tami |
| **Sent:** | Thursday, September 22, 2005 11:07 |
| **To:** | Osborne, Larry C |
| **Subject:** | Pluta #2003200631 |

Above request has been counteroffered and is in the processing queue.
I counterred request for max sales price $450,000, $360,000 1st mortgage, and $67,500 HELOC 2nd for 80/15/5 financing as submitted.

Based on original request, borrower's income is insufficient for housing and total obligations, and based on 1003 assets, insufficient funds to close.

Thank you,
Tami

CITI-PLUTA-000003

## Osborne, Larry C

**From:** Vaughan, Tami

**Sent:** Friday, September 23, 2005 4:10

**To:** Osborne, Larry C

**Subject:** RE: Pluta #2003200631

How much is the new income amount?  It wasn't included in previous emails with the student loans info.
thanks

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Fri 9/23/2005 12:37 PM
**To:** Vaughan, Tami
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

Tami and Kevin,

Can you give me a call.  I'm trying to get this Counteroffer reversed in lieu of receiving new income and
debt info from the borrower.  The borrower ha finally provided me with his accurate student loan payments
that I can forward to you ASAP.  Also, he has another offer from a local competitor as well for the full sales
price of $675,000.  He was also preapproved with a LC from Miami previously for a sales price of $500,000
back in June.

Can we talk about this?  The borrower does want to have his new home purchase through
Citibank/Citimortgage and I would like to do all I can to assist.  Thanks.

*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Thursday, September 22, 2005 11:07 AM
**To:** Osborne, Larry C
**Subject:** Pluta #2003200631

Above request has been counteroffered and is in the processing queue.
I counterred request for max sales price $450,000, $360,000 1st mortgage, and $67,500 HELOC
2nd for 80/15/5 financing as submitted.

Based on original request, borrower's income is insufficient for housing and total obligations, and
based on 1003 assets, insufficient funds to close.

Thank you,
Tami

11/16/2005

CITI-PLUTA-000004

## Osborne, Larry C

| | |
|---|---|
| **From:** | Vaughan, Tami |
| **Sent:** | Friday, September 23, 2005 4:31 |
| **To:** | Osborne, Larry C |
| **Subject:** | RE: Pluta, 002003200631 |

Did Mr Pluta provide the new income amount? New BE ratio is 53.16% based on $526/mo Citibank student loans. We need to get BE ratio under 50% for I/O.

> -----Original Message-----
> **From:** Osborne, Larry C
> **Sent:** Fri 9/23/2005 2:24 PM
> **To:** Vaughan, Tami
> **Cc:**
> **Subject:** Pluta, 002003200631
>
> Hi Tami,
>
> I have Mr. Pluta in my office asking about the status of the loan. Please call me with any details. Thanks.

*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

CITI-PLUTA-000005

## Osborne, Larry C

| | |
|---|---|
| **From:** | Peterson, Kevin |
| **Sent:** | Friday, September 23, 2005 5:59 |
| **To:** | Osborne, Larry C; Vaughan, Tami |
| **Subject:** | RE: Pluta #2003200631 |

Tami,

Were you able to get ahold of Larry on this?


Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI  48304-8409

This information is the property of CitiGroup, considered Citigroup Confidential and is for Internal Use Only.

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Friday, September 23, 2005 12:37 PM
**To:** Vaughan, Tami
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631
**Importance:** High

Tami and Kevin,

Can you give me a call.  I'm trying to get this Counteroffer reversed in lieu of receiving new income and debt info from the borrower.  The borrower ha finally provided me with his accurate student loan payments that I can forward to you ASAP.  Also, he has another offer from a local competitor as well for the full sales price of $675,000.  He was also preapproved with a LC from Miami previously for a sales price of $500,000 back in June.

Can we talk about this?  The borrower does want to have his new home purchase through Citibank/Citimortgage and I would like to do all I can to assist.  Thanks.


*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**

11/16/2005

CITI-PLUTA-000006

Fax: (866) 414-9031
larry.c.osborne@citigroup.com

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Thursday, September 22, 2005 11:07 AM
**To:** Osborne, Larry C
**Subject:** Pluta #2003200631

Above request has been counteroffered and is in the processing queue.
I counterred request for max sales price $450,000, $360,000 1st mortgage, and $67,500 HELOC
2nd for 80/15/5 financing as submitted.

Based on original request, borrower's income is insufficient for housing and total obligations, and
based on 1003 assets, insufficient funds to close.

Thank you,
Tami

11/16/2005

CITI-PLUTA-000007

## Osborne, Larry C

**From:** Peterson, Kevin

**Sent:** Monday, September 26, 2005 1:29

**To:** Vaughan, Tami; Osborne, Larry C

**Subject:** RE: Pluta #2003200631

Larry,

I agree with Tami's proposal.  The only other option would be a 80/10/10 with ratios between 50 and 55%.

Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI  48304-8409

This information is the property of CitiGroup, considered Citigroup Confidential and is for Internal Use Only.

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Monday, September 26, 2005 1:26 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** Pluta #2003200631

Based on the additional information provided (including $407/mo Citi student loan(s) payments), borrower's qualifying total debt ratio = 52.01%.  This ratio is high for 80/15/5, I/O financing.  The BE ratio exceeds the guidelines for HELOC approval.

I can modify my original counteroffer to reflect 80/15/5 financing based on maximum sales price of $625,000, 1st mortgage of $500,000, and HELOC of $93,750, and request a BE ratio exception at 49.31% based on 799 FMCS.

Please advise,
Thank you.
Tami

11/16/2005

CITI-PLUTA-000008

## Osborne, Larry C

| | |
|---|---|
| **From:** | Vaughan, Tami |
| **Sent:** | Thursday, September 29, 2005 12:12 |
| **To:** | Osborne, Larry C |
| **Cc:** | Peterson, Kevin |
| **Subject:** | RE: Pluta #2003200631 |

Please advise how much and asset type for these funds, so that I can properly run through AUS
Thank you

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Thu 9/29/2005 7:21 AM
**To:** Vaughan, Tami
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

He informed me on Tuesday that he will have the necessary funds.  Please advise.


# *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Tuesday, September 27, 2005 4:17 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

Based on below scenario, housing ratio 45.32% and back end ratio at 55.12%.  Borrower would
need approximately $79,511 to close plus 2 months PITI $8740.08 in reserves, for a total of
$88,251.08.  1003 stated assets total $59,000.  Does he have additional verifiable source of funds?

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Tue 9/27/2005 9:31 AM
**To:** Peterson, Kevin; Vaughan, Tami
**Cc:**
**Subject:** RE: Pluta #2003200631

On the 80/10/10 option, can I use a 30-yr fixed as my 1st mortgage?  The borrower prefers
this product as opposed to an I/O.  Please advise ASAP.  He is ready to move forward so I
need answers today.

11/16/2005

CITI-PLUTA-000009

# *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Peterson, Kevin
**Sent:** Monday, September 26, 2005 1:29 PM
**To:** Vaughan, Tami; Osborne, Larry C
**Subject:** RE: Pluta #2003200631

Larry,

I agree with Tami's proposal.  The only other option would be a 80/10/10 with ratios between 50 and 55%.


Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI  48304-8409

This information is the property of CitiGroup, considered Citigroup Confidential and is for Internal Use Only.

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Monday, September 26, 2005 1:26 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** Pluta #2003200631

Based on the additional information provided (including $407/mo Citi student loan(s) payments), borrower's qualifying total debt ratio = 52.01%.  This ratio is high for 80/15/5, I/O financing.  The BE ratio exceeds the guidelines for HELOC approval.

I can modify my original counteroffer to reflect 80/15/5 financing based on maximum sales price of $625,000, 1st mortgage of $500,000, and HELOC of $93,750, and request a BE ratio exception at 49.31% based on 799 FMCS.

11/16/2005

CITI-PLUTA-000010

Please advise,
Thank you.
Tami

CITI-PLUTA-000011

## Osborne, Larry C

| | |
|---|---|
| **From:** | Formosa, Dan |
| **Sent:** | Thursday, October 06, 2005 3:34 |
| **To:** | Osborne, Larry C; Vaughan, Tami |
| **Cc:** | Krehling, Donna; Cato, Tony |
| **Subject:** | RE: counter for Pluta/2003200631 |

It can't be reinstaated because it has fed as a declined loan.  You will have to resub..there's no other option.  The only notes I see from Kevin is on 9/20 which was a suggestion to the UW.  Tami issued counter after receipt of that email on 9/22.  From that point on, there is no communication from you regarding the acceptance or decline.  I emailed you on 10/3...It's now 10/6..


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:    866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.

> -----Original Message-----
> **From:** Osborne, Larry C
> **Sent:** Thursday, October 06, 2005 3:27 PM
> **To:** Formosa, Dan; Vaughan, Tami
> **Cc:** Krehling, Donna; Cato, Tony
> **Subject:** RE: counter for Pluta/2003200631
> **Importance:** High
>
> Not responding to that email is an incorrect statement.  Again, I reiterate, Tami and I have been working on this proactively since the counter was issued.  E actually had a phone and email conversation on/about 9/29.  She needed to know exact funds to close form the borrower of which I didn't receive word back from the client until today.  So again, since both Ta I and I had been working this counter since it's issuance, then this loan should've never been declined.  in fact, on 9/27, Kevin Peterson approved the reversal of this counter as either a new 80/15/5 or an 80/10/10.  I have the emails from both individuals proving this if needed.
>
> Again, I ask, what do we do to either reinstate this loan?  Please advise.


*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

> -----Original Message-----

11/16/2005

CITI-PLUTA-000012

**From:** Formosa, Dan
**Sent:** Thursday, October 06, 2005 3:10 PM
**To:** Osborne, Larry C; Vaughan, Tami
**Cc:** Krehling, Donna; Cato, Tony
**Subject:** RE: counter for Pluta/2003200631

This loan is declined. Tony should have advised you that you have 3-business days to repond to counters/noia's on a go forward bais. For future reference, if you do not repond by the end of day 3, the loan will be moved into uw by me for decline. If there are special circumstances, you need to update in the notes.

This is a change in procedure that was communicated by my boss to all of the regional managers.

In addition, Tami sent you an email on 9/26 that you did not respond to. I sent an email to you on 10/3 that went without response. That's why the loan has been declined. Lack of response effects my CIAPPR speed which I am measured by. I would recommend that you check on your counters/noia's every morning to make sure they are being addressed properly. You own this process. Please refer to the notes.

Thanks,


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:     866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Thursday, October 06, 2005 3:04 PM
**To:** Formosa, Dan; Vaughan, Tami
**Cc:** Cato, Tony
**Subject:** RE: counter for Pluta/2003200631
**Importance:** High

This counteroffer was reworked as an approved 80/10/10 that Tami, Kevin Peterson and I had been working proactively on for a week. I don't appreciate these premature declinations on good business. The last issue was to verify where the borrower was getting his funds to close from. This borrower has a contract on this property that has a 10/19/05 closing date! This client also has a $20,000 earnest money deposit on the line on top of it. This now puts me a grave disadvantage both with the client and his realtor for any future business as well. It also puts the bank at a disadvantage due to the client working for one of our Bank @ Work clients, and having a Citigold account and several other investment accounts with us.

Please advise on how to salvage the current deal as-is. Thank you for your assistance.


*Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**

11/16/2005

CITI-PLUTA-000013

Citimortgage
1000 Connecticut Avenue NW, Washington, DC 20036
Cell: (301) 537-9037
Office: (202) 828-1089
Fax: (866) 414-9031
larry.c.osborne@citigroup.com

-----Original Message-----
**From:** Formosa, Dan
**Sent:** Monday, October 03, 2005 9:14 AM
**To:** Osborne, Larry C; Vaughan, Tami
**Subject:** counter for Pluta/2003200631

Larry-

Counter has not been accepted within standard.  Loan is being plassed to uw for
decline.

Thanks,


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:    866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.

11/16/2005

CITI-PLUTA-000014

## Osborne, Larry C

| | |
|---|---|
| **From:** | Hadid, Oriella |
| **Sent:** | Tuesday, October 11, 2005 10:23 |
| **To:** | Majors, Barb; Osborne, Larry C |
| **Cc:** | Formosa, Dan |
| **Subject:** | FW: Pluta #3249223 RESUB |
| **Importance:** | High |

Good morning Larry,
this loan was reassigned to UW Barb Majors....to help balance the UW Q's.
I have CC her on this email.


Barb, let me know if you need anything.  Hope all is well my friend : )


thanks
Ori


Oriella Rossi Hadid
Remote Underwriter
CBNA Retail Operations-East
Direct#: 1-513-791-1715
E-Fax#: 1-866-299-3453
(Hours: Mon-Fri 9:00-2:00)


***This information is considered Citigroup confidential and is for Citigroup use only***




-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Tuesday, October 11, 2005 7:20 AM
**To:** Hadid, Oriella; Formosa, Dan
**Cc:** Woodard, Velma
**Subject:** RE: Pluta #3249223 RESUB
**Importance:** High

The borrower will be receiving a gift from family this week to cover the remaining funds needed.  Please advise.


# *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**


11/16/2005

CITI-PLUTA-000015

larry.c.osborne@citigroup.com

-----Original Message-----
**From:** Hadid, Oriella
**Sent:** Monday, October 10, 2005 12:10 PM
**To:** Formosa, Dan; Osborne, Larry C
**Cc:** Woodard, Velma; Hadid, Oriella
**Subject:** FW: Pluta #3249223 RESUB
**Importance:** High

Larry,
Does this borrower have any additional assets??
Loan submitted as is, has back end ratios of 56%, with only 1 month reserves.
I need to justify higher ratios to 2nd level....especially is this well exceeds combo HELOC guides, non conforming loan amounts, payment shock, etc....

(I understand that this was a resub of a previous loan, which was countered due to excessive ratios on an i.o product.  I see that you have changed it to a fix rate option, which helps...but we still have high ratios).
Please advise.

Oriella Rossi Hadid
Remote Underwriter
CBNA Retail Operations-East
Direct#: 1-513-791-1715
E-Fax#: 1-866-299-3453
(Hours: Mon-Fri 9:00-2:00)

***This information is considered Citigroup confidential and is for Citigroup use only***

-----Original Message-----
**From:** Formosa, Dan
**Sent:** Monday, October 10, 2005 9:43 AM
**To:** Hadid, Oriella
**Subject:** FW: Pluta #200320i0631
**Importance:** High

This INPROC was assigned to you today...please note it is a resub

Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:     866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.
-----Original Message-----

11/16/2005

CITI-PLUTA-000016

**From:** Osborne, Larry C
**Sent:** Friday, October 07, 2005 5:38 PM
**To:** Formosa, Dan
**Cc:** Cato, Tony; Krehling, Donna
**Subject:** RE: Pluta #200320i0631
**Importance:** High

New loan application # is 002003249223.  Thanks for your assistance.


## Larry Osborne

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Formosa, Dan
**Sent:** Thursday, October 06, 2005 3:42 PM
**To:** Osborne, Larry C
**Cc:** Cato, Tony; Krehling, Donna
**Subject:** RE: Pluta #200320i0631

there was no approval on this loan, it was in a counter status and therefore not approved.
Resubmit it and email me the account # upon release so I can prioritize.  There will be no special
rush process granted on this deal.  Thank you,


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:    866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Thursday, October 06, 2005 3:39 PM
**To:** Formosa, Dan
**Cc:** Cato, Tony; Krehling, Donna
**Subject:** FW: Pluta #200320i0631
**Importance:** High

Very well.  I hope this doesn't delay the processing of this loan, nor impact the tentative
approval.  Also, the previous email communication for your reference.

CITI-PLUTA-000017

# Larry Osborne

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
larry.c.osborne@citigroup.com

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Thursday, September 29, 2005 12:12 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #200320i0631

Please advise how much and asset type for these funds, so that I can properly run through AUS
Thank you

-----Original Message-----
From: Osborne, Larry C
Sent: Thu 9/29/2005 7:21 AM
To: Vaughan, Tami
Cc: Peterson, Kevin
Subject: RE: Pluta #2003200631

He informed me on Tuesday that he will have the necessary funds. Please advise.

# Larry Osborne

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
larry.c.osborne@citigroup.com

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Tuesday, September 27, 2005 4:17 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

Based on below scenario, housing ratio 45.32% and back end ratio at 55.12%. Borrower would need approximately $79,511 to close plus 2 months PITI $8740.08 in reserves, for a total of $88,251.08. 1003 stated assets total $59,000. Does he have additional verifiable source of funds?

11/16/2005

CITI-PLUTA-000018

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Tue 9/27/2005 9:31 AM
**To:** Peterson, Kevin; Vaughan, Tami
**Cc:**
**Subject:** RE: Pluta #2003200631

On the 80/10/10 option, can I use a 30-yr fixed as my 1st mortgage?
The borrower prefers this product as opposed to an I/O. Please advise
ASAP. He is ready to move forward so I need answers today.


# *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Peterson, Kevin
**Sent:** Monday, September 26, 2005 1:29 PM
**To:** Vaughan, Tami; Osborne, Larry C
**Subject:** RE: Pluta #2003200631

Larry,

I agree with Tami's proposal. The only other option would be a
80/10/10 with ratios between 50 and 55%.


Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI 48304-8409

This information is the property of CitiGroup, considered Citigroup
Confidential and is for Internal Use Only.

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Monday, September 26, 2005 1:26 PM
**To:** Osborne, Larry C

CITI-PLUTA-000019

**Cc:** Peterson, Kevin
**Subject:** Pluta #2003200631

Based on the additional information provided (including $407/mo Citi student loan(s) payments), borrower's qualifying total debt ratio = 52.01%. This ratio is high for 80/15/5, I/O financing. The BE ratio exceeds the guidelines for HELOC approval.

I can modify my original counteroffer to reflect 80/15/5 financing based on maximum sales price of $625,000, 1st mortgage of $500,000, and HELOC of $93,750, and request a BE ratio exception at 49.31% based on 799 FMCS.

Please advise,
Thank you.
Tami

11/16/2005

CITI-PLUTA-000020

**Osborne, Larry C**

| | |
|---|---|
| **From:** | Majors, Barb |
| **Sent:** | Tuesday, October 11, 2005 4:13 PM |
| **To:** | Osborne, Larry C |
| **Cc:** | Formosa, Dan |
| **Subject:** | Counter Offer |

Good afternoon Larry: I have reviewed this transaction as submitted and due to the
layering of risk associated with this file I will approve loan at 80% LTV with no HELOC.
Borrower is new in Job market, Housing pmt Shock, Limited use of credit (Majority of trade
lines are student loans that must be counted) even if deferred, High Debt to income
ratio). Verification of sufficient assets will be required, as Assets listed will not
cover this transaction. To consider loan at 90% with Mortgage insurance, would put the DTI
back at 57% (with HELOC request) which is not approvable. To approve over 80%, borrower
would need to verify own 5% into transaction. E.M will need to be verified as well as
Income and additional assets to close loan. Please advise if borrower wishes to proceed
with this scenario other wise loan will be declined due to insufficient income for Housing
and total debt on loan terms requested. Loan will be placed in Counter status for 3 days.
IF I may be of further assistance, please feel free to contact me at 248-905-7287. Thank
you and have a good afternoon.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

CITI-PLUTA-000021

## Osborne, Larry C

| | |
|---|---|
| **From:** | Formosa, Dan |
| **Sent:** | Friday, October 14, 2005 10:56 |
| **To:** | Osborne, Larry C |
| **Cc:** | Catlett, Rom; Holden, Richard |
| **Subject:** | 2003249223/Pluta |
| **Importance:** | High |

Larry-

I need to know whether counter is accepted by end of business on this deal.  Please advise.  If there is no reposne, loan will be passed to uw for decline at end of day.

Also, this has a 15-day lock as well.

Thanks,


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:     866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.

CITI-PLUTA-000022

## Osborne, Larry C

| | |
|---|---|
| **From:** | Formosa, Dan |
| **Sent:** | Friday, October 14, 2005 3:38 PM |
| **To:** | Osborne, Larry C; Majors, Barb |
| **Subject:** | RE: Counter Offer |

Larry-

We don't look to restructure on the last day of a counter.  Do you accept the counter or not?


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:     866.205.9625
dan.formosa@citigroup.com <mailto:dan.formosa@citigroup.com>

This information is considered Citigroup confidential and is for internal use only.


-----Original Message-----
From: Osborne, Larry C
Sent: Friday, October 14, 2005 3:15 PM
To: Majors, Barb
Cc: Formosa, Dan
Subject: RE: Counter Offer
Importance: High


Good afternoon Barb,

I am writing to ask if we can switch the 1st mortgage to an I/O product and still offer the 90% CLTV scenario (combo loan).  I have the copy of the EMD check for verification purposes, the borrower does have at least 5% of own funds, and is receiving a gift of about 5% as well.  My assumption is that with an I/O 1st mortgage, the DTI will meet guides.  At this late stage, asking the borrower to bring roughly $100,000 to closing is both unreasonable and unattainable.  I am willing to work with you to work out some sort of 90% financing in order to retain this client, but I know that the current counter is not an option.

Also, please be advised that the borrower actually had another offer on the table before coming to Citi, but since he has a banking relationship with us, he chose to go with our initial offer.

Larry Osborne
Mortgage Loan Consultant
Citimortgage
1000 Connecticut Avenue NW, Washington, DC 20036
Cell: (301) 537-9037
Office: (202) 828-1089
Fax: (866) 414-9031
larry.c.osborne@citigroup.com


-----Original Message-----
From: Majors, Barb
Sent: Tuesday, October 11, 2005 4:13 PM
To: Osborne, Larry C
Cc: Formosa, Dan
Subject: Counter Offer

CITI-PLUTA-000023

Good afternoon Larry: I have reviewed this transaction as submitted and due to the layering of risk associated with this file I will approve loan at 80% LTV with no HELOC. Borrower is new in Job market, Housing pmt Shock, Limited use of credit (Majority of trade lines are student loans that must be counted) even if deferred, High Debt to income ratio). Verification of sufficient assets will be required, as Assets listed will not cover this transaction. To consider loan at 90% with Mortgage insurance, would put the DTI back at 57% (with HELOC request) which is not approvable. To approve over 80%, borrower would need to verify own 5% into transaction. E.M will need to be verified as well as Income and additional assets to close loan. Please advise if borrower wishes to proceed with this scenario other wise loan will be declined due to insufficient income for Housing and total debt on loan terms requested. Loan will be placed in Counter status for 3 days. IF I may be of further assistance, please feel free to contact me at 248-905-7287. Thank you and have a good afternoon.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for Internal use only.

CITI-PLUTA-000024

# Osborne, Larry C

**From:** Formosa, Dan
**Sent:** Friday, October 14, 2005 4:23
**To:** Osborne, Larry C
**Cc:** Majors, Barb
**Subject:** RE: Pluta #2003200631

And what was your last response to Tami?  how much and what type of funds?


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:    866.205.9625
dan.formosa@citigroup.com

This information is considered Citigroup confidential and is for internal use only.

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Friday, October 14, 2005 3:55 PM
**To:** Formosa, Dan
**Cc:** Majors, Barb
**Subject:** FW: Pluta #2003200631
**Importance:** High

counter email cont'd


## *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Thursday, September 29, 2005 12:12 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

Please advise how much and asset type for these funds, so that I can properly run through AUS
Thank you


11/16/2005

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Thu 9/29/2005 7:21 AM
**To:** Vaughan, Tami
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

He informed me on Tuesday that he will have the necessary funds.  Please advise.

# *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Tuesday, September 27, 2005 4:17 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** RE: Pluta #2003200631

Based on below scenario, housing ratio 45.32% and back end ratio at 55.12%.  Borrower would need approximately $79,511 to close plus 2 months PITI $8740.08 in reserves, for a total of $88,251.08.  1003 stated assets total $59,000.  Does he have additional verifiable source of funds?

-----Original Message-----
**From:** Osborne, Larry C
**Sent:** Tue 9/27/2005 9:31 AM
**To:** Peterson, Kevin; Vaughan, Tami
**Cc:**
**Subject:** RE: Pluta #2003200631

On the 80/10/10 option, can I use a 30-yr fixed as my 1st mortgage?  The borrower prefers this product as opposed to an I/O.  Please advise ASAP.  He is ready to move forward so I need answers today.

# *Larry Osborne*

**Larry Osborne**
**Mortgage Loan Consultant**
**Citimortgage**
**1000 Connecticut Avenue NW, Washington, DC 20036**
**Cell: (301) 537-9037**
**Office: (202) 828-1089**
**Fax: (866) 414-9031**
**larry.c.osborne@citigroup.com**

11/16/2005

CITI-PLUTA-000026

-----Original Message-----
**From:** Peterson, Kevin
**Sent:** Monday, September 26, 2005 1:29 PM
**To:** Vaughan, Tami; Osborne, Larry C
**Subject:** RE: Pluta #2003200631

Larry,

I agree with Tami's proposal.  The only other option would be a 80/10/10 with
ratios between 50 and 55%.

Kevin Peterson
Risk Manager
CBNA Lending Operations
248-905-7719
866-691-2096 efax

CitiMortgage, Inc
Mail Stop 0288
100 Galleria Officentre, Suite 300
Southfield, MI  48304-8409

This information is the property of CitiGroup, considered Citigroup Confidential
and is for Internal Use Only.

-----Original Message-----
**From:** Vaughan, Tami
**Sent:** Monday, September 26, 2005 1:26 PM
**To:** Osborne, Larry C
**Cc:** Peterson, Kevin
**Subject:** Pluta #2003200631

Based on the additional information provided (including $407/mo Citi
student loan(s) payments), borrower's qualifying total debt ratio =
52.01%.  This ratio is high for 80/15/5, I/O financing.  The BE ratio
exceeds the guidelines for HELOC approval.

I can modify my original counteroffer to reflect 80/15/5 financing based
on maximum sales price of $625,000, 1st mortgage of $500,000, and
HELOC of $93,750, and request a BE ratio exception at 49.31% based
on 799 FMCS.

Please advise,
Thank you.
Tami

CITI-PLUTA-000027

11/16/2005

## Osborne, Larry C

**From:**      Majors, Barb
**Sent:**      Monday, October 17, 2005 4:02 PM
**To:**        Osborne, Larry C
**Cc:**        Formosa, Dan
**Subject:**   PLUTA/3249223/Loan Terms


Good afternoon Larry: I have discussed this file with Kevin Peterson (RME) and this is the Final Counter that will be issued for this loan. 1st @ $540,000.00 30 yr fix. 2nd at $50,000.00 fix rate 8.75% to keep DTI under 55%. Please advise if you wish to proceed with this Counter offer. if you need to speak with me I can be reached at 248-905-7287 or by e-mail. Thank you and have a good afternoon.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for Internal use only.

1

CITI-PLUTA-000028

**Osborne, Larry C**

| | |
|---|---|
| **From:** | Majors, Barb |
| **Sent:** | Tuesday, October 18, 2005 8:39 AM |
| **To:** | Osborne, Larry C |
| **Cc:** | Formosa, Dan |
| **Subject:** | RE: PLUTA/3249223/Loan Terms |

Correct. was looking at HELOC rate

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

-----Original Message-----
From: Osborne, Larry C
Sent: Monday, October 17, 2005 5:56 PM
To: Majors, Barb
Cc: Formosa, Dan
Subject: RE: PLUTA/3249223/Loan Terms
Importance: High


2nd should be @ 7.01% correct?  (LTV is now below 90%)  Please advise.

Larry Osborne
Mortgage Loan Consultant
Citimortgage
1000 Connecticut Avenue NW, Washington, DC 20036
Cell: (301) 537-9037
Office: (202) 828-1089
Fax: (866) 414-9031
larry.c.osborne@citigroup.com


-----Original Message-----
From: Majors, Barb
Sent: Monday, October 17, 2005 4:02 PM
To: Osborne, Larry C
Cc: Formosa, Dan
Subject: PLUTA/3249223/Loan Terms


Good afternoon Larry: I have discussed this file with Kevin Peterson (RME) and this is the
Final Counter that will be issued for this loan. 1st @ $540,000.00 30 yr fix. 2nd at
$50,000.00 fix rate 8.75% to keep DTI under 55%. Please advise if you wish to proceed with
this Counter offer. if you need to speak with me I can be reached at 248-905-7287 or by e-
mail. Thank you and have a good afternoon.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

CITI-PLUTA-000029

## Osborne, Larry C

| | |
|---|---|
| **From:** | Majors, Barb |
| **Sent:** | Tuesday, October 18, 2005 11:43 AM |
| **To:** | Formosa, Dan |
| **Cc:** | Osborne, Larry C; Woodard, Velma |
| **Subject:** | RE: PLUTA/3249223/Loan Terms |

Full approval issued, Rider is now complete.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

-----Original Message-----
From: Formosa, Dan
Sent: Tuesday, October 18, 2005 10:51 AM
To: Majors, Barb
Cc: Osborne, Larry C; Woodard, Velma
Subject: RE: PLUTA/3249223/Loan Terms

Larry/Velma-

Please note...Barb needs to update rider.  Once conditions are identified, we need to get
docs over asap.  thanks,

Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:     866.205.9625
dan.formosa@citigroup.com <mailto:dan.formosa@citigroup.com>

This information is considered Citigroup confidential and is for internal use only.

-----Original Message-----
From: Majors, Barb
Sent: Tuesday, October 18, 2005 10:44 AM
To: Formosa, Dan
Subject: RE: PLUTA/3249223/Loan Terms

There is no rider yet, No decision on file. So Larry and Velma are looking at a rider that
does not exist yet.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

-----Original Message-----
From: Formosa, Dan
Sent: Tuesday, October 18, 2005 10:43 AM
To: Majors, Barb
Subject: RE: PLUTA/3249223/Loan Terms

CITI-PLUTA-000030

yes...


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:      866.205.9625
dan.formosa@citigroup.com <mailto:dan.formosa@citigroup.com>

This information is considered Citigroup confidential and is for internal use only.


-----Original Message-----
From: Majors, Barb
Sent: Tuesday, October 18, 2005 10:36 AM
To: Formosa, Dan
Subject: RE: PLUTA/3249223/Loan Terms


Dan I'm Curious what rider? The Conditions's rider?

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

-----Original Message-----
From: Formosa, Dan
Sent: Tuesday, October 18, 2005 10:33 AM
To: Osborne, Larry C; Majors, Barb
Cc: Woodard, Velma
Subject: RE: PLUTA/3249223/Loan Terms
Importance: High


Barb-

I'm moving this loan in your queue.  customer accepts counter-offer.  Please rush.
Customer is closing on purchases tomorrow.

Velma-

Rider looks clear.  If there are any issues and you need something on this insurance,
title,etc. please lett Larry know and he'll have to you within hour.

Thanks,


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:      866.205.9625
dan.formosa@citigroup.com <mailto:dan.formosa@citigroup.com>

This information is considered Citigroup confidential and is for internal use only.


-----Original Message-----
From: Osborne, Larry C
Sent: Monday, October 17, 2005 5:56 PM
To: Majors, Barb
Cc: Formosa, Dan

2

CITI-PLUTA-000031

Subject: RE: PLUTA/3249223/Loan Terms
Importance: High


2nd should be @ 7.01% correct?  (LTV is now below 90%)  Please advise.

Larry Osborne
Mortgage Loan Consultant
Citimortgage
1000 Connecticut Avenue NW, Washington, DC 20036
Cell: (301) 537-9037
Office: (202) 828-1089
Fax: (866) 414-9031
larry.c.osborne@citigroup.com


-----Original Message-----
From: Majors, Barb
Sent: Monday, October 17, 2005 4:02 PM
To: Osborne, Larry C
Cc: Formosa, Dan
Subject: PLUTA/3249223/Loan Terms


Good afternoon Larry: I have discussed this file with Kevin Peterson (RME) and this is the
Final Counter that will be issued for this loan. 1st @ $540,000.00 30 yr fix. 2nd at
$50,000.00 fix rate 8.75% to keep DTI under 55%. Please advise if you wish to proceed with
this Counter offer. if you need to speak with me I can be reached at 248-905-7287 or by e-
mail. Thank you and have a good afternoon.

Barb Majors CA
Branch Retail East
Property of Citigroup
Confidential document. This information is considered Citigroup Internal and is for
Internal use only.

CITI-PLUTA-000032

## Osborne, Larry C

| | |
|---|---|
| **From:** | Formosa, Dan |
| **Sent:** | Tuesday, October 18, 2005 2:57 PM |
| **To:** | Osborne, Larry C |
| **Cc:** | Holden, Richard; Sullivan, Julie |
| **Subject:** | RE: Scott Pluta Loan Information - diploma & pay history |
| | |
| **Importance:** | High |

We have a questionnaire on our system that can be faxed...

At this point the closing is truly in jeapordy because I have no questionnaire and insurance. I need both before I can get approval.


Dan Formosa
Operations Manager
CBNA Operations - East
Phone: 248.905.7942
Fax:     866.205.9625
dan.formosa@citigroup.com <mailto:dan.formosa@citigroup.com>

This information is considered Citigroup confidential and is for internal use only.

-----Original Message-----
From: Osborne, Larry C
Sent: Tuesday, October 18, 2005 2:44 PM
To: 'Pluta, Scott'; Formosa, Dan
Subject: RE: Scott Pluta Loan Information - diploma & pay history
Importance: High


Scott,

That's fine, I actually forwarded that over.  I do need, however, the Insurance Declarations Page from the condo association and the Condo Questionnaire.  When you were on CondoCerts.com to acquire the documents, you should have also seen an option to retrieve the lender Questionnaire form and the ins dec page.  If you could, please send these over ASAP to finalize condo approval.  Thank you for your patience and cooperation.

Larry Osborne
Mortgage Loan Consultant
Citimortgage
1000 Connecticut Avenue NW, Washington, DC 20036
Cell: (301) 537-9037
Office: (202) 828-1089
Fax: (866) 414-9031
larry.c.osborne@citigroup.com


-----Original Message-----
From: Pluta, Scott [mailto:SPluta@winston.com]
Sent: Tuesday, October 18, 2005 2:28 PM
To: Pluta, Scott; Formosa, Dan; Osborne, Larry C
Subject: RE: Scott Pluta Loan Information - diploma & pay history


Larry,
I just sent Dan everything still missing except:

1

CITI-PLUTA-000033

1 - my diploma (whcih you have); and

2 - my 12 months rental history (which you also have)
please make sure to send those asap
also, i am talking to payroll now about getting a 30 days payment history (since i only
sent the two of you my most recent 2 weekend pay stub)
Scott Pluta


The contents of this message may be privileged and confidential. Therefore, if this
message has been received in error, please delete it without reading it. Your receipt of
this message is not intended to waive any applicable privilege. Please do not disseminate
this message without the permission of the author.
****************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by
you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as
amended.

CITI-PLUTA-000034

## Pluta, Scott

**From:** Alison Farmer [alison.farmer@corushome.com]
**Sent:** Thursday, October 13, 2005 4:12 PM
**To:** 'Scott D. Pluta'
**Subject:** appraisal

Hi Scottie Brand Tissue,
Just talked to Larry and he said your loan is in underwriting, so that's a good sign. Said the appraisal came back at $675k, so we don't have any appraisal issues, which is great! Otherwise, I think we're good. Casey said you have utilities under control, so everything should be smooth. We'll get a final settlement statement the day before (Tuesday) and I'll call to let you know what the bottomline number is for the cashier's check you'll need to bring. Cool?
Talk to you soon,
Alison

A. Settlement Statement

form HUD-1 (3/86) rel Handbook 4305
U.S. Department of Housing and Urban Devel...
OMB Approval No. 2502-0265 (expires 9/30/2006)    FINAL

B. Type of Loan

| 1. ☐FHA | 2. ☐FmHA | 3. ☒Conv. Unins. | 6. File Number 05-496 | 7. Loan Number 002003249223 | 8. Mortgage Insurance Case Number |
| 4. ☐VA | 5. ☐Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 10/19/2005 at 15:39 JJC

D. NAME OF BORROWER: Scott Pluta
ADDRESS:

E. NAME OF SELLER: Victor L. Vacanti
ADDRESS:

F. NAME OF LENDER: CitiMortgage, Inc.
ADDRESS: 1000 Technology Drive, O'Fallon, MO 63368-2240

G. PROPERTY ADDRESS: 777 7th Street, N.W., #414, Washington, DC 20001
Lot 2019, Square 0455
☐ Principal Residence    ☐ Other Real Estate

H. SETTLEMENT AGENT: District Title, A Corporation, Phone 202-518-9300 Fax 202-518-9301
PLACE OF SETTLEMENT: 1025 Connecticut Avenue, NW, Suite 1000, Washington, DC 20036

I. SETTLEMENT DATE: 10/19/2005

## J. SUMMARY OF BORROWER'S TRANSACTION:

| 100. GROSS AMOUNT DUE FROM BORROWER | |
|---|---|
| 101. Contract sales price | 675,000.00 |
| 102. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 13,463.16 |
| 104. 11/05 Condo Fee | 600.69 |
| 105. New Owner Set Up Fee | 50.00 |
| Adjustments for items paid by seller in advance | |
| 106. Assessments 10/19/05 to 10/31/05 | 256.84 |
| 109. | |
| 110. | |
| 111. | |
| 112. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 689,370.69 |

| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | |
|---|---|
| 201. Deposit or earnest money | 20,000.00 |
| 202. Principal amount of new loans | 540,000.00 |
| 203. Existing loan(s) taken subject to | |
| 204. Second Mortgage Proceeds CitiMortgage, Inc. | 50,000.00 |
| 205. Misc. Credit CitiMortgage, Inc. | 1,500.00 |
| 206. | |
| 207. | |
| 208. | |
| 209. | |
| Adjustments for items unpaid by seller | |
| 210. City/town taxes 10/01/05 to 10/19/05 | 180.75 |
| 213. | |
| 214. | |
| 215. | |
| 216. | |
| 217. | |
| 218. | |
| 219. | |
| 220. TOTAL PAID BY/FOR BORROWER | 611,680.75 |

| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | |
|---|---|
| 301. Gross amount due from borrower (line 120) | 689,370.69 |
| 302. Less amounts paid by/for borrower (line 220) | 611,680.75 |
| 303. CASH FROM BORROWER | 77,689.94 |

## K. SUMMARY OF SELLER'S TRANSACTION:

| 400. GROSS AMOUNT DUE TO SELLER | |
|---|---|
| 401. Contract sales price | 675,000.00 |
| 402. Personal Property | |
| 403. | |
| 404. | |
| 405. | |
| Adjustments for items paid by seller in advance | |
| 408. Assessments 10/19/05 to 10/31/05 | 256.84 |
| 409. | |
| 410. | |
| 411. | |
| 412. | |
| 420. GROSS AMOUNT DUE TO SELLER | 675,256.84 |

| 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
|---|---|
| 501. Excess Deposit (see instructions) | |
| 502. Settlement charges to seller (line 1400) | 41,716.50 |
| 503. Existing loan(s) taken subject to | |
| 504. Payoff:6917367879 | 354,367.81 |
| Bank of America | |
| 505. | |
| 506. | |
| 507. | |
| 508. | |
| 509. | |
| Adjustments for items unpaid by seller | |
| 510. City/town taxes 10/01/05 to 10/19/05 | 180.75 |
| 513. | |
| 514. | |
| 515. | |
| 516. | |
| 517. | |
| 518. | |
| 519. | |
| 520. TOTAL REDUCTION AMOUNT DUE SELLER | 396,265.06 |

| 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
|---|---|
| 601. Gross amount due to seller (line 420) | 675,256.84 |
| 602. Less reduction amount due seller (line 520) | 396,265.06 |
| 603. CASH TO SELLER | 278,991.78 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent (Fed. Tax ID No: 01-0749193) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: 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    SELLER(S) SIGNATURE(S): _Victor L. Vacanti_

SELLER(S) NEW MAILING ADDRESS: 777 7th St NW #921 DC 2000l

SELLER(S) PHONE NUMBERS: 202-737-2435 (H) 202-708-0614x2808 (W)

Previous editions are obsolete

form HUD-1 (3/86) ref Handbook 43

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

CV-01600-RWR    Document 20-9    Title Number 05298

TitleExpress Settlement System   Printed 10/19/2005

Filed 04/13/2006

Page 2 of 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $675,000.00 @ 5.000 = 33,750.00 | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $    16,875.00    to  Corus Home Realty | | | |
| 702. $    16,875.00    to  Zip Realty | | | |
| 703. Commission paid at Settlement | | | |
| 704. $ 20,000.00 POC, Earnest Money retained as part of commission by Corus Home Realty | | | 13,750. |
| 705. Administrative Fee | | | 20,000. |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee    0.125 % CitiMortgage, Inc. | | 675.00 | |
| 802. Loan Discount    % | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Commitment Fee    to  CitiMortgage, Inc. | | 565.00 | |
| 806. Application Fee    to  CitiMortgage, Inc. | | 500.00 | |
| 807. Assumption Fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From    10/19/2005  to  11/01/2005    @$    86.9200 /day    13 Days | | 1,129.96 | |
| 902. Mortgage Insurance Premium for    to | | | |
| 903. Hazard Insurance Premium  for    to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance    mo. @ $    /mo | | | |
| 1002. Mortgage Insurance    mo. @ $    /mo | | | |
| 1003. City Property Taxes    mo. @ $    /mo | | | |
| 1004. County Property Taxes    mo. @ $    /mo | | | |
| 1005. Annual Assessments    mo. @ $    /mo | | | |
| 1009. Aggregate Analysis Adjustment | | 0.00 | 0.0 |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement Fee    to  District Title, A Corporation | | | |
| 1102. Abstract or title search    to  Executive Abstracting Company | | 295.00 | 155.0 |
| 1103. Title examination    to  District Title, A Corporation | | 250.00 | |
| 1104. Title insurance binder    to  District Title, A Corporation | | 65.00 | 35.0 |
| 1105. Document Preparation    to  District Title, A Corporation | | 75.00 | |
| 1106. Notary Fees | | | 75.0 |
| 1107. Attorney's fees | | | |
| (includes above items No: | ) | | |
| 1108. Title Insurance    to  Lawyers Title Insurance Corporation | | 2,246.20 | |
| (includes above items No: | ) | | |
| 1109. Lender's Policy    540,000.00  - 1,662.50 | | | |
| 1110. Owner's Policy    675,000.00  - 583.70 | | | |
| 1111. Courier/ Overnight    to  District Title, A Corporation | | 65.00 | 35.00 |
| 1112. Secured Release Fee    to  District Title, A Corporation | | | 100.00 |
| 1113. Deed Preparation    to  District Title, A Corporation | | | 100.00 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees Deed $ 26.50    ; Mortgage $ 145.50    ; Release $  26.50 | | 172.00 | 26.50 |
| 1202. City Transfer Tax    Deed $7,425.00    ; Mortgage $ | | 7,425.00 | |
| 1203. City Recordation Tax    Deed $7,425.00    ; Mortgage $ | | | |
| 1204.    Deed $    ; Mortgage $ | | | 7,425.00 |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1302. Tax Certificate    to  Department of Tax and Revenue | | | 15.00 |
| **1400. TOTAL SETTLEMENT CHARGES**    (enter on lines 103, Section J and 502, Section K) | | 13,463.16 | 41,716.50 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_Scott Plum_

_Victor L. Vacanti_
Victor L. Vacanti

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause funds to be disbursed in accordance with this statement.

_Settlement Agent_    Date    10-19-05

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U. S. Code Section 1001 and Section 1010.

# A. SETTLEMENT STATEMENT

U.S. Department of Housing
and Urban Development

| B. TYPE OF LOAN | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | OMB No. 2502-0265 |
| 1. ☐ FHA  2. ☐ FmHA  3. ☒ Conv. Unins. | | | 6. File No. | | 7. Loan No.<br>002003272196 | 8. Mortgage Insurance Case No. |
| 4. ☐ V.A.  5. ☐ Conv. Ins. | | | | | | |

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:** Scott Donald Pluta
1702 Rugby Ave.
Charlottesville, VA. 22903

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:** Citibank (West), F.S.B.
One Sansome Street
San Francisco, CA 94104

**G. PROPERTY LOCATION:**    777 7TH ST NW
#414
WASHINGTON, DC  20001

**H. SETTLEMENT AGENT:** District Title(Washington DC)
PLACE OF SETTLEMENT: Washington, DC.

**I. SETTLEMENT DATE:**    October 19, 2005

| J. | SUMMARY OF BORROWER'S TRANSACTION | | K. | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | | 400. GROSS AMOUNT DUE TO SELLER | | |
| 101. Contract sales price | | | 401. Contract sales price | | |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower (line 1400) | | 7,925.00 | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | |
| 106. City/town taxes | | | 406. City/town taxes | | |
| 107. County taxes | | | 407. County taxes | | |
| 108. Assessments | | | 408. Assessments | | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 120. GROSS AMOUNT DUE FROM BORROWER: | | 7,925.00 | 420. GROSS AMOUNT DUE TO SELLER: | | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | 50,000.00 | 502. Settlement charges to seller (line 1400) | | |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. | | | 504. Payoff of first mortgage loan | | |
| 205. | | | 505. Payoff of second mortgage loan | | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | |
| 210. City/town taxes | | | 510. City/town taxes | | |
| 211. County taxes | | | 511. County taxes | | |
| 212. Assessments | | | 512. Assessments | | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. TOTAL PAID BY/FOR BORROWER: | | 50,000.00 | 520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER: | | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | | |
| 301. Gross amount due from borrower (line 120) | | 7,925.00 | 601. Gross amount due to seller (line 420) | | |
| 302. Less amount paid by/for borrower (line 220) | | (50,000.00) | 602. Less reductions in amount due seller (line 520) | | ( ) |
| 303. CASH ( ☐ FROM)( ☒ TO) BORROWER: | | 42,075.00 | 603. CASH ( ☒ TO) ( ☐ FROM ) SELLER: | | |

HUD-1 (3/86)
RESPA, Handbook 4305.2

MB-3043- 08/2002

CitiMortgage 2.9.1.30 V3
Page 1 of 2

HUD-1 (Rev. 3/86)

L. SETTLEMENT CHARGES

OMB No. 2502-0265

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. | TOTAL SALES / BROKER'S COMMISSION: BASED ON PRICE $675,000.00 @ 0.000% = $0.00 | | |
| | DIVISION OF COMMISSION (LINE 700) AS FOLLOWS: | | |
| 701. | $ to | | |
| 702. | $ to | | |
| 703. | Commission paid at settlement | | |
| 704. | | | |
| 705. | | | |
| 706. | | | |
| 707. | | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | |
| 801. | Loan Origination Fee | | |
| 802. | Loan Discount | | |
| 803. | Appraisal Fee | | |
| 804. | Credit Report | | |
| 805. | Other Non-Prepaid/Allowable | | |
| 806. | Recertification/Final Inspection | | |
| 807. | Other Non-Prepaid/Allowable | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | |
| 901. | Interim Interest | | |
| 902. | Mortgage Insurance Premium (PMI/MIP) | | |
| 903. | Hazard Insurance Premium | | |
| 904. | Flood Insurance Premium | | |
| 905. | | | |
| 906. | | | |
| 907. | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER: | | |
| 1001. | Hazard Insurance Escrow | | |
| 1002. | Mortgage Insurance Escrow | | |
| 1003. | City Property Tax Escrow | | |
| 1004. | County Property Tax Escrow | | |
| 1005. | Annual Assessments | | |
| 1006. | Flood Insurance Escrow | | |
| 1007. | | | |
| 1008. | | | |
| 1009. | | | |
| 1100. | TITLE CHARGES: | | |
| 1101. | Settlement or Closing Fee to District Title(Washington DC) | | |
| 1102. | Abstract or Title Search | 400.00 | |
| 1103. | Title Examination | | |
| 1104. | Title Insurance Binder | | |
| 1105. | Title Company Document Preparation | | |
| 1106. | Notary Fees | | |
| 1107. | Attorney Fees | | |
| | (includes item numbers ) | | |
| 1108. | Title Insurance | | |
| | (includes item numbers ) | | |
| 1109. | Lender Coverage | | |
| 1110. | Owner Coverage (Optional) | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. | Recording Fees / Deed | | |
| 1201. | Recording Fees | | |
| 1202. | City/County Tax/Stamps | 100.00 | |
| 1203. | State Tax/Stamps | 7,425.00 | |
| 1204. | | | |
| 1205. | | | |
| 1206. | | | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES: | | |
| 1301. | Survey | | |
| 1302. | Pest Inspection | | |
| 1303. | | | |
| 1304. | | | |
| 1400. | TOTAL SETTLEMENT CHARGES (Enter on line 103, Section J and line 502, Section K) | 7,925.00 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower:_____ Date:_____ Seller:_____ Date:_____

Borrower:_____ Date:_____ Seller:_____ Date:_____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____ Date:_____ Settlement Agent:_____ Date:_____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

MB-3043- 08/2002

# FUNDING REQUEST FORM

**LOAN INFORMATION:**

| | |
|---|---|
| LOAN NUMBER: | 002003272196 |
| BORROWER NAME(S): | Scott Donald Pluta |

ADDRESS:  777 7TH ST NW
#414
WASHINGTON, DC  20001-

CLOSING AGENT: District Title(Washington DC)
ADDRESS: 1025 Connecticut Ave Northwest
10th Floor
Washington, DC 20036-

PHONE NUMBER: (202) 327-5460
FAX NUMBER:

OLD LOAN NUMBER:
APPLICATION DATE: 10/19/2005
ISN: 24282 (DC BR 904 FARRAGUT NORTH)

ISL: 00001 (Washington)
REQUESTOR: Velma Woodard
REQUESTOR'S PH #: (800) 403-3069 Ext. 89535
REQUESTOR'S TEAM: Branch Retail East Team 4

MARKETING TYPE:
PROMOTION TYPE:

**FUNDING TYPE:** Wire Transfer - Instructions Attached

ENTITY: CitiMortgage, Inc.
BRANCH #: 88888 (CitiMortgage, Inc.)
CLOSING DATE: **OCTOBER 19, 2005**
FUNDING DATE: **OCTOBER 19, 2005**

LOAN AMOUNT: $ 50,000.00
TOTAL LOAN AMOUNT:$ 50,000.00

BASE POINTS: 0.000000
TOTAL POINTS: 0.000000

SALES PRICE: $ 675,000.00
APPRAISED VALUE: $ 675,000.00
INTEREST RATE: 7.010%

PURPOSE: Purchase
PROPERTY TYPE: Condominium
PROPERTY USAGE: Primary Residence
PRODUCT: 2nd Mortgage FRHEL
REFI TYPE:
PROGRAM: 0010 (Default)
SUB-PROGRAM:

CHANNEL: MPR (Branch Referrals)
SUB-CHANNEL: RFLA (Florida)
PROCESSING CTR: Retail Southfield

**SUMMARY OF LOAN CHARGES:**

| HUD# | DESCRIPTION | POC | BUYER | SELLER |
|---|---|---|---|---|
| | | $ | $ | $ |
| **TOTAL** | | $    0.00 | $    0.00 | $    0.00 |

PARTIAL NET FUNDING AMOUNT: $ 50,000.00
LESS PREVIOUS FUNDING AMOUNT:
PLUS MORTGAGE RECORDING TAX: 0.00
OTHER ADJUSTMENT:
OTHER ADJUSTMENT:

FINAL NET FUNDING AMOUNT: $ 50,000.00

Comments to Accounting:

_____

_____

_____

_____

APPROVED SIGNER(S): _____    _____

| For Acconting Use Only: | | | | |
|---|---|---|---|---|
| | Date | Initials | Status | Entity |

# NOTE

October 19, 2005
[Date]

Washington
[City]

Dist. of Columbia
[State]

777 7TH ST NW, #414, WASHINGTON, DC 20001
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 540,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First day of each month beginning on December 1, 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO 63368-2240

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,194.30

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

002003249223

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207)
Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials: SP

CitiMortgage 2.9.1.30 V2

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

002003249223

-5N (0207)

Page 2 of 3

Form 3200 1/01
Initials: _____
CitiMortgage 2.9.1.30 V2

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____

_____                    _____ (Seal)
                                                  Scott Donald Platts              -Borrower

                                                         *(Sign Original Only)*

002003249223

VMP®-5N (0207)                          Page 3 of 3                    Form 3200 1/01
                                                                CitiMortgage 2.9.1.30 V2

## TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Applicant: Scott Donald Pluta
1702 Rugby Ave.
Charlottesville, VA  22903

Lender: CitiMortgage, Inc.

Loan No: 002003249223

Property: 777 7TH ST NW
#414
WASHINGTON, DC  20001

Type of Loan: Conventional
Date: October 19, 2005
Disclosure Type: Final

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.912 % | $ 613,246.65 | $ 536,705.04 | $ 1,149,951.69 |

REPAYMENT: See Payment Schedule below.

| 359 | 3,194.30 | Monthly beginning 12/01/2005 | | | | |
|---|---|---|---|---|---|---|

DEMAND FEATURE: [X] This loan does not have a Demand Feature.  [ ] This loan has a Demand Feature as follows:

REQUIRED DEPOSIT: [X] The annual percentage rate does not take into account your required deposit.

VARIABLE RATE FEATURE: [ ] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 777 7TH ST NW
#414
WASHINGTON, DC  20001

ASSUMPTION: Someone buying this property  [X] cannot assume the remainder of the mortgage on the original terms
[ ] may assume, subject to conditions, the remainder of the mortgage on the original terms.

NON-FILING INSURANCE: $ N/A

PROPERTY INSURANCE: [X] Homeowner's insurance, or fire and extended coverage, is a required condition of this loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. Borrower may purchase this insurance from any insurance company acceptable to lender.

LATE CHARGES: If a payment is more than 15 days late, you will be charged a late charge of  5.000% of the payment.

PREPAYMENT: If you pay off your loan early, you
[ ] may  [X] will not  have to pay a prepayment penalty.
[ ] may  [X] will not  have to pay a minimum finance charge.
[ ] may  [X] will not  be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____    10-19-05
BORROWER/DATE                       Scott Donald Pluta                  BORROWER/DATE

_____    _____
BORROWER/DATE                                                           BORROWER/DATE

## Uniform Residential Loan Application

00200324922

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

| Mortgage Applied for: | ☐ V.A. | ☒ Conventional | ☐ Other: | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | ☐ FHA | ☐ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☒ Fixed Rate | Other (explain): |
|---|---|---|---|---|---|
| $ 540,000.00 | 5.875 % | 360 | | ☐ GPM | ☐ ARM (type): |

**Subject Property Address** (street, city, state, ZIP)
777 7TH ST NW, #414, WASHINGTON, DC 20001-    County: DISTRICT OF COL

No. of Units
1

**Legal Description of Subject Property** (attach description if necessary)
See Schedule A Attached Hereto And Made A Part Hereof

Year Built
2004

| Purpose of Loan | ☒ Purchase | ☐ Construction | ☐ Other (explain): | Property will be: |
|---|---|---|---|---|
| | ☐ Refinance | ☐ Construction-Permanent | | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

**Title will be held in what Name(s)**
Scott Pluta And James Wynn

**Manner in which Title will be held**
Joint Tenants

**Estate will be held in:**
☒ Fee Simple
☐ Leasehold (show expiration date)

**Source of Down Payment, Settlement Charges and/or Subordinate Financing** (explain)
Checking/Savings,Secured Borrower Funds,Deposit on Sales Contract TOTAL : $135,000.00

| **Borrower's Name** (include Jr. or Sr. if applicable) | **Co-Borrower's Name** (include Jr. or Sr. if applicable) |
|---|---|
| Scott Donald Pluta | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (434) 242-1615 | 1/22/1978 | 18 | | | | |

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. ___ ages ___ | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no. ___ ages ___ |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☐ Own ☒ Rent  1y 0m  No. Yrs.<br>1702 Rugby Ave.<br><br>Charlottesville, VA 22903- | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☒ Rent  1y 0m  No. Yrs.<br>1917 Lewis Mountain Road<br><br>Charlottesville, VA 22903- | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Name & Address of Employer ☐ Self Employed<br>Winston & Strawn LLP<br>1799 K Street NW<br>Washington, DC 20005-3817 | Yrs. on this job<br>0y 2m<br>Yrs. employed in this line of work/profession<br>0y 2m | Name & Address of Employer ☐ Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business<br>Associate Attorney/Attorneys At Law | Business Phone (incl. area code)<br>(202) 282-5922 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed<br>University Of Virginia<br><br>Charlottesville, VA 22903- | Dates (from - to)<br>8/4/1997 - 5/2/2005<br>Monthly Income<br>$ | Name & Address of Employer ☐ Self Employed | Dates (from - to)<br>Monthly Income<br>$ |
|---|---|---|---|

| Position/Title/Type of Business<br>Full Time Law Student/College/university | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to)<br>Monthly Income<br>$ | Name & Address of Employer ☐ Self Employed | Dates (from - to)<br>Monthly Income<br>$ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Borrower's Signature<br>X | Date<br>10-19-05 |
|---|---|
| Co-Borrower's Signature<br>X | Date |

1003-MEW - 06/13/06 CitiMortgage 2.9.1.30 V2
CitiMortgage 2.9.1.30 V2

Page 1

Fannie Mae Form 1003 01/04
Freddie Mac Form 65 01/04

00200324922

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 10,416.67 | $ | $ 10,416.67 | Rent | $ 450.00 | |
| Overtime | | | | First Mortgage (P&I) | | $ 3,194.3 |
| Bonuses | | | | Other Financing (P&I) | | 292.0 |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | 152.6 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | 772.7 |
| | | | | Other: | | |
| Total | $ 10,416.67 | $ | $ 10,416.67 | Total | $ 450.00 | $ 4,411.7 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|---|
| (B) | Other | | $ |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly [X] Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Description | | LIABILITIES | | | |
| Cash deposit toward purchase held by: Citibank Chk#387 | $ 20,000.00 | Name and address of Company US DEPT OF EDUCATION | | $ Pmt./Mos. 397.00 94 | $ 37,000.00 |
| List checking and savings accounts below | | | | | |
| Name and address of Bank, S&L, or Credit Union Citibank Citigold | | Acct. no. 3978420181 | | | |
| | | Name and address of Company ACS/B OF A | | $ Pmt./Mos. 200.00 92 | $ 18,315.00 |
| Acct. no. 3196040399 Name and address of Bank, S&L, or Credit Union Citibank Citigold Insured MMA | $ 2,366.41 | Acct. no. -3978420181 | | | |
| | | Name and address of Company ACS/BANK OF AMERICA (i) | | $ Pmt./Mos. 200.00 92 | $ 18,315.00 |
| Acct. no. 3196040339 Name and address of Bank, S&L, or Credit Union Bank Of America Express | $ 5,080.59 | Acct. no. 3978420181 | | | |
| | | Name and address of Company CITIBANK N A | | $ Pmt./Mos. 105.00 117 | $ 12,215.00 |
| Acct. no. 003125439675 Name and address of Bank, S&L, or Credit Union Citibank Roth IRA | $ 1,001.81 | Acct. no. 39784201820 | | | |
| | | Name and address of Company CITIBANK STU (i) | | $ Pmt./Mos. 105.00 117 | $ 12,215.00 |
| Acct. no. 32C34632 Stocks & Bonds (Company name/number & description) | $ 31,027.69 $ | Acct. no. 3978420 | | | |
| | | Name and address of Company CITIBANK N A | | $ Pmt./Mos. 104.00 117 | $ 12,072.00 |
| Life insurance net cash value Face amount: $ | $ | Acct. no. 39784201821 | | | |
| Subtotal Liquid Assets | $ 59,476.50 | Name and address of Company CITIBANK STU (i) | | $ Pmt./Mos. 104.00 117 | $ 12,072.00 |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. 3978420 | | | |
| Vested interest in retirement fund | $ 10,000.00 | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) 2000 Jeep Cherokee | $ 7,000.00 | Job Related Expense (child care, union dues, etc.) | | $ | |
| Other Assets (itemize) | $ | | | | |
| | | Total Monthly Payments | | $ 1,205.00 | |
| Total Assets a. | $ 76,476.50 | | $ -123,444.50 | Total Liabilities b. | $ 199,921.00 |

Borrower's Signature:
X _____ Date 10-19-05

Co-Borrower's Signature:
X _____ Date

1003-NEW - 06/17/06 CitiMortgage 2.9.1.30 V2
CitiMortgage 2.9.1.30 V2

Page 2

Fannie Mae Form 1003 01/04
Freddie Mac Form 65 01/04

00200324922

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| | | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| | | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. | Purchase price | $ 675,000.00 | | | | | |
| b. | Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | | X | | |
| c. | Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | | X | | |
| d. | Refinance (incl. debts to be paid off) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| e. | Estimated prepaid items | 1,129.96 | d. Are you a party to a lawsuit? | | X | | |
| f. | Estimated closing costs | -40,845.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or V.A. case number, if any, and reasons for the action.) | | X | | |
| g. | PMI, MIP, Funding Fee | | | | | | |
| h. | Discount (if Borrower will pay) | 675.00 | | | | | |
| i. | **Total costs (add items a through h)** | 635,959.96 | | | | | |
| j. | Subordinate financing | 50,000.00 | | | | | |
| k. | Borrower's closing costs paid by Seller | 3,787.50 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| l. | Other Credits (explain) | | | | | | |
| | Citibank Chk#387 | 20,000.00 | g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| | | | h. Is any part of the down payment borrowed? | | X | | |
| | | | i. Are you a co-maker or endorser on a note? | | X | | |
| | | | j. Are you a U.S. citizen? | X | | | |
| | | | k. Are you a permanent resident alien? | | X | | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 540,000.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| n. | PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | | X | | |
| o. | Loan amount (add m & n) | 540,000.00 | (1) What type of property did you own - - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| p. | Cash from/ to Borrower (subtract j, k, l & o from i) | 22,172.46 | (2) How did you hold title to the home - - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agent, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 10-15-05 | X | |

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| **Ethnicity:** ☐ Hispanic or Latino ☒ Not Hispanic or Latino | **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| **Race:** ☐ American Indian or Alaskan Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White | **Race:** ☐ American Indian or Alaskan Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| **Sex:** ☐ Female ☒ Male | **Sex:** ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Larry Osborne | Name and Address of Interviewer's Employer CitiMortgage, Inc. |
|---|---|---|
| ☒ face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Signature | 1000 Technology Drive O'Fallon, MO 63304- |
| | Date 10/07/05 | |
| | Interviewer's Phone Number (incl. area code) (301) 537-9037 | |

**Continuation Sheet/Residential Loan Application**

00200324922

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Scott Donald Pluta | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

**[Additional Liabilities]**

(B) Name:     CITIBANK N A (i)
 Addr:
 CSZ:
 Acct #:     39784201826
 Mths Remn: 116
 Mth Pymnt: $   93.00
 Amt:       $10,750.00

(B) Name:     CITIBANK STU
 Addr:
 CSZ:
 Acct #:     3978420
 Mths Remn: 116
 Mth Pymnt: $   93.00
 Amt:       $10,750.00

(B) Name:     CITIBANK N A
 Addr:
 CSZ:
 Acct #:     39784201824
 Mths Remn: 117
 Mth Pymnt: $   65.00
 Amt:       $7,604.00

(B) Name:     CITIBANK STU (i)
 Addr:
 CSZ:
 Acct #:     3978420
 Mths Remn: 117
 Mth Pymnt: $   65.00
 Amt:       $7,604.00

(B) Name:     CITIBANK N A (i)
 Addr:
 CSZ:
 Acct #:     39784201827
 Mths Remn: 116
 Mth Pymnt: $   63.00
 Amt:       $7,295.00

(B) Name:     CITIBANK STU
 Addr:
 CSZ:
 Acct #:     3978420
 Mths Remn: 116
 Mth Pymnt: $   63.00
 Amt:       $7,295.00

(B) Name:     CITIBANK N A
 Addr:
 CSZ:
 Acct #:     39784201822
 Mths Remn: 116
 Mth Pymnt: $   51.00
 Amt:       $5,901.00

**[Additional Liabilities Cont'd]**

(B) Name:     CITIBANK STU (i)
 Addr:
 CSZ:
 Acct #:     3978420
 Mths Remn: 116
 Mth Pymnt: $   51.00
 Amt:       $5,901.00

(B) Name:     CITIBANK N A
 Addr:
 CSZ:
 Acct #:     39784201825
 Mths Remn: 119
 Mth Pymnt: $   32.00
 Amt:       $3,798.00

(B) Name:     CITIBANK STU (i)
 Addr:
 CSZ:
 Acct #:     3978420
 Mths Remn: 119
 Mth Pymnt: $   32.00
 Amt:       $3,798.00

(B) Name:     CITIBANK N A
 Addr:
 CSZ:
 Acct #:     39784201823
 Mths Remn: 122
 Mth Pymnt: $   9.00
 Amt:       $1,094.00

(B) Name:     CITIBANK STU (i)
 Addr:
 CSZ:
 Acct #:     3978420
 Mths Remn: 122
 Mth Pymnt: $   9.00
 Amt:       $1,094.00

(B) Name:     CHASE
 Addr:
 CSZ:
 Acct #:     4640188001496828
 Mths Remn: 51
 Mth Pymnt: $   59.00
 Amt:       $2,989.00

(B) Name:     CITI
 Addr:
 CSZ:
 Acct #:     412800366919672
 Mths Remn: 69
 Mth Pymnt: $   27.00

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
| X | 10-19-05 | X | |

1003-NEW - 06/17/05  CitiMortgage 2.9.1.30 V2
CitiMortgage 2.9.1.30 V2

Page 4

Fannie Mae Form 1003 01/04
Freddie Mac Form 65 01/04

**Continuation Sheet/Residential Loan Application**

00200324922

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Scott Donald Pluta | Agency Case Number:<br>002003249223 |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

[Additional Liabilities Cont'd]
   Amt:    $1,844.00



I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date<br>10 79-05 | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

1003-NEW - 06/17/05  CitiMortgage 2.9.1.30 V2
CitiMortgage 2.9.1.30 V2

Page 5

Fannie Mae Form 1003 01/04
Freddie Mac Form 65 01/04